UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CALVIN L. BULLUCK,

                          Plaintiff,

                                                            3:24-CV-0750
v.                                                          (AMN/ML)

BROOME COUNTY SECTOR DEP'T OF CORR.
AND SUPERVISION, New York State Dep't of Corr.
and Cmty. Supervision; DAVID M. STANTON,
Administrative Law Judge; LESLIE STRYKOWSKI,
Parole Revocation Specialist; and MARIE MANGINO,
Parole Officer,

                          Defendants.

_____

APPEARANCES:                                         OF COUNSEL:

CALVIN L. BULLUCK
  Plaintiff, *Pro Se*
Washington Correctional Facility
Post Office Box 180
72 Lock 11 Lane
Comstock, New York 12821


MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent a *pro se* complaint in the above captioned action together with an

application to proceed *in forma pauperis* and inmate authorization filed by Calvin L. Bulluck

("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2, 3.)  For the reasons discussed below, I

grant Plaintiff's *in forma pauperis* application and recommend that Plaintiff's Complaint be

dismissed in its entirety without prejudice but without leave to amend.  (Dkt. Nos. 1, 2.)

## I.     BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that defendants Broome

County Sector Department of Corrections and Supervision, David M. Stanton, Leslie

Strykowski, and Marie Mangino (collectively "Defendants") violated his civil rights.  (*See*

*generally* Dkt. No. 1.)

More specifically, the Complaint alleges that Plaintiff was released from Fishkill

Correctional Facility in November 2020.  (Dkt. No. 1 at 5.)  The Complaint alleges that on

August 23, 2021, Plaintiff was arrested and satisfied a parole violation from August 23, 2021,

until August 23, 2022.  (*Id*.)  The Complaint alleges that Plaintiff was wronged by Defendants

when he was held to his maximum expiration because there was no new charge of a non-

technical nature and he satisfied the previous violation on the same charge.  (*Id*.)

Based on these factual allegations, Plaintiff appears to assert a claim that his due process

rights were violated by Defendants.  (*See generally* Dkt. No. 1.)  As relief, Plaintiff seeks

$1,700,000.00 in damages.  (Dkt. No. 1 at 5.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-

CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although an indigent,

---

[1]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

[2]     Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a
showing of "imminent danger of serious physical injury," a prisoner has filed three or more
actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon
which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's
litigation history on the Federal Judiciary's Public Access to Court Electronic Records
("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III.    LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. § 1915A(a) ("The court

---

that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

shall review . . . as soon as practicable . . . a complaint in a civil action in which a prisoner seeks redress

from a governmental entity or officer or employee of a governmental entity.").[3]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of

Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which

sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim

showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8

"is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity

to file a responsive answer, prepare an adequate defense and determine whether the doctrine of

res judicata is applicable."  *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)

(McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007), *rev'd on other grounds*, 682 F. App'x 30.  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the court should construe the factual allegations in the light most favorable to the plaintiff,

"the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions."  *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

(citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned the-defendant-

unlawfully-harmed-me accusation."  *Id.*  Thus, a pleading that contains only allegations which

---

[3]     To determine whether an action is frivolous, a court must look to see whether the
complaint "lacks an arguable basis in either law or in fact."  *Neitzke v. Williams*, 490 U.S. 319,
325 (1989).

"are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed.

"An individual convicted of a crime may not bring a section 1983 suit for damages that 'necessarily impl[ies] the invalidity of his conviction or sentence . . . unless [he] can demonstrate that the conviction or sentence has already been invalidated.'" *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 454 (E.D.N.Y. 2018) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)) (additional citations omitted). "*Heck's* limitation of section 1983 claims has come to be known as the 'favorable-termination' rule and applies to revocations of parole." *Opperisano*, 286 F. Supp. 3d at 454 (citing, *inter alia, Lee v. Donnaruma*, 63 Fed. Appx. 39, 41 (2d Cir. 2003) ("Courts have applied *Heck* to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside.")). "A parolee challenging a parole revocation must therefore demonstrate that his parole revocation has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Id.* at 455 (quoting *Heck*, 512 U.S. at 486-87) (additional citations omitted).

Plaintiff's assertions that (1) Defendant Mangino offered false testimony, and (2) the parole revocation sentence was improperly based on a conviction that Plaintiff had already

satisfied, implies the invalidity of his parole revocation determination. *Robinson v. Wright*, 21-CV-1098, 2023 WL 6122882, at *2-3 (N.D.N.Y. Sept. 19, 2023) (McAvoy, J.) (citing *Harris v. City of New York*, 01-CV-6927, 2023 WL 554745, at *3 (S.D.N.Y. 2003) (dismissing the plaintiff's section 1983 claim pursuant to *Heck* insofar as he challenged "the basis" for the parole revocation)).

The Complaint does not allege that Plaintiff's parole revocation determination has been invalidated, or that his underlying conviction has been set aside. (*See generally* Dkt. No. 1.) Instead, the Complaint alleges that the sentence imposed included incarceration for the maximum expiration of Plaintiff's sentence, and as a result, he missed time with his family that included becoming a grandfather and the death of his wife. (Dkt. No. 1 at 5-6.)

"*Heck* acknowledged that a plaintiff can bring a § 1983 claim to seek damages for a defendant's use of the 'wrong procedures, not for reaching the wrong result' so long as such a claim does not call into question the lawfulness of plaintiff's continued confinement." *McAdoo v. Jagiello*, 10-CV-0355, 2011 WL 1577236, at *2 (N.D.N.Y. Apr. 26, 2011) (Hurd, J.) (citing *Heck*, 512 U.S. at 482-83). "In other words, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the [§ 1983] complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *McAdoo*, 2011 WL 1577236, at *2 (quoting *Heck*, 512 U.S. at 487). "The Supreme Court has clarified that 'the proper inquiry is whether 'victory for the prisoners [would] necessarily [mean] immediate release or a shorter period of incarceration.'" *Id.* at *3 (quoting *McKithen v. Brown,* 481 F.3d 89, 102 (2d Cir. 2007)); *see Chung v. Stanford*, 22-CV-1236, 2023 WL 3073497, at *3 (N.D.N.Y. Apr. 25, 2023)

(Suddaby, J.);[4] *Baker v. New York State Dep't of Corr. & Cmty. Supervision*, 17-CV-1270, 2018 WL 357297, at *4 (N.D.N.Y. Jan. 10, 2018) (Suddaby, C.J.) (quoting *Wilkinson*, 544 U.S. at 83-84) (other citation omitted)) ("'*Heck* uses the word 'sentence' interchangeably with . . . 'continuing confinement' and 'imprisonment,' thus, any shortening of a term of confinement will be subject to the rule in *Heck*.").

---

[4]    In *Chung,* Judge Suddaby concluded that:

> Although *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily imply the invalidity of the *conviction*," 512 U.S. at 487 (emphasis added), the Supreme Court subsequently clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate the underlying conviction or sentence. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis in original)); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (finding that a prisoner's claim for money damages alleging that he was deprived of good-time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits); *Baker v. New York State Dep't of Corr. & Cmty. Supervision*, 17-CV-1270, 2018 WL 357297, at *4 (N.D.N.Y. Jan. 10, 2018) (Suddaby, C.J.) ("While the Complaint does not include any specific request for immediate release, in the motion for injunctive relief, Plaintiff seeks to overturn the Panel's decision and moves for immediate release . . . . To the extent that the Complaint could be construed as seeking release, Plaintiff's claims are dismissed without prejudice pursuant to *Heck*, on the ground that habeas corpus is his sole federal remedy."); *McAllister v. Alexandra*, 09-CV-0664, 2009 WL 10675934, at *5 (N.D.N.Y. July 28, 2009) (Suddaby, J.) ("Any claim by Plaintiff that he is entitled to damages resulting from the denial of parole release is barred by the doctrine of *Heck v. Humphrey*[.]"); *Grant v. Ahern*, 03-CV-0539, 2005 WL 1936175, at *5 n.3 (N.D.N.Y. Aug. 2, 2005) (Magnuson, J.) (quoting *Lampkin v. N.Y. City Dep't of Probation*, 00-CV-7165, 2001 WL 210362, at *2 (S.D.N.Y. Mar. 1, 2001)) ("*Heck* has been held to apply to 'suits contesting the rejection of parole release.'").

2023 WL 3073497, at *3.

Plaintiff's victory on his claims—alleging that (1) his parole revocation determination was "caused" by Defendant Mangino's false testimony, and (2) that the revocation determination and sentence imposed improperly considered a criminal charge that was previously satisfied— would necessarily mean his release or a shorter period of incarceration for his parole violations. Stated differently, Plaintiff's allegations that the parole violations were sustained and he was reincarcerated because of the false testimony of Defendant Mangino and improper consideration of his previous arrest, Plaintiff necessarily implies the invalidity of his conviction and sentence based on Defendants' conduct at his parole revocation hearing.  Because Plaintiff has not alleged that his parole revocation determination or subsequent sentence have been invalidated, his due process claims should be barred by *Heck*.  *See, e.g., Sumter v. Marion*, 98-CV-2744, 1999 WL 767426, at *5 (S.D.N.Y. Sept. 28, 1999) (dismissing § 1983 claim because to find in the plaintiff's favor would require finding that the defendants falsified evidence at the revocation hearing, thus invalidating the result); *Sealey v. Fishkin*, 96-CV-6303, 1998 WL 1021470, at *5 (E.D.N.Y. Dec. 2, 1998) (dismissing § 1983 claim alleging police officer made false statements to parole officials, ultimately leading to parole revocation).

As a result, I recommend that Plaintiff's claims be dismissed pursuant to the doctrine set forth in *Heck*.[5]

---

[5]    In the alternative, I recommend that Plaintiff's claims against Defendants Broome County Sector Department of Corrections and Supervision, Stanton, and Strykowski be dismissed based on immunity.  First, Defendant Broome County Sector Department of Corrections and Supervision, which Plaintiff alleges is part of the New York State Department of Corrections and Community Supervision (Dkt. No. 1 at 2) is immune from suit pursuant to the Eleventh Amendment.  *Booker v. NYS DOCCS*, 22-CV-2355, 2022 WL 1239592, at *1-2 (S.D.N.Y. Apr. 27, 2022) ("DOCCS is an agency of the State of New York; it is, thus, an arm of that State and enjoys Eleventh Amendment immunity.").  Second, Defendant Stanton is immune from suit pursuant to the doctrine of quasi-judicial immunity, which extends immunity to administrative officials performing discretionary acts of a judicial nature and "bars claims against administrative law judges and hearing examiners performing judicial functions[.]"  *Harrison v.*

## V.     OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding

L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

---

*Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist.*, 22-CV-6086, 2024 WL 2978242, at *9
(W.D.N.Y. June 13, 2024) (citing *DeMerchant v. Springfield Sch. Dist.*, 05-CV-0316, 2007 WL
495240, at *3 (D. Vt. Feb. 9, 2007); *Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y.
1996), *aff'd* 122 F.3d 1057 (2d Cir. 1997)).  Third, Defendant Strykowski is likely immune
pursuant to the doctrine of quasi-judicial immunity because the Complaint appears to allege that
she "formaliz[ed]" his parole violation and thus was performing a task which was judicial in
nature and an integral part of the judicial process.  *See Campbell v. City of Binghamton, NY*, 24-
CV-0067, 2024 WL 1701980, at *4-5 (N.D.N.Y. Apr. 19, 2024) (Lovric, M.J.) (recommending
dismissal of claims against the clerk of the court for her acts that assist a judge in the
performance of his or her judicial duties based on the doctrine of quasi-judicial immunity),
*report and recommendation adopted* 2024 WL 3063674 (N.D.N.Y. June 20, 2024) (Nardacci,
J.).

[6]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be

Here, leave to amend would be futile. *See Robinson*, 2023 WL 6122882, at *5 (citing *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (dismissing the plaintiff's due process claims without prejudice but without leave to amend and stating that the plaintiff may bring a new action if he can establish that his parole revocation determination or subsequent sentence have been invalidated). "[T]he *Heck* rule bars [a] plaintiff's claims until the underlying conviction is invalidated, and thus providing the plaintiff with an opportunity to amend the complaint is futile until such time that the state court conviction is reversed, invalidated by a federal writ of habeas corpus, or otherwise expunged or declared invalid." *Cruz v. Reilly*, 08-CV-1245, 2009 WL 2567990, at *7 (E.D.N.Y. Aug. 18, 2009). Here, "[b]ecause the defects in Plaintiff's complaint [arising from the *Heck* bar] cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his [amended] complaint." *Traore v. New York State Div. of Parole*, 22-CV-1431, 2023 WL 207920, at *3 (S.D.N.Y. Jan. 13, 2023). The undersigned recommends dismissal of Plaintiff's claims without prejudice to being brought in a new action if he can establish that his parole revocation determination or subsequent sentence have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

---

successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's office; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Complaint (Dkt. No. 1) **WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

---

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: October  29 , 2024
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

### I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

### II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

### III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,

malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson* [3] *v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status

on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

 *3 As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury,

or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 5185047

---

## Footnotes

1    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

2    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

3    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

4    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

> *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

> Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

---

**End of Document**        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6122882
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher E. ROBINSON, Plaintiff,

v.

Michael WRIGHT, New York State Parole
Officer; Matthew Mullen, New York State
Parole Officer; and Tonia Zimmerman,
New York State Parole Officer, Defendants.

5:21-CV-1098
|
Signed September 19, 2023

**Attorneys and Law Firms**

Christopher E. Robinson, Moravia, NY, Pro Se.

Aimee Cowan, New York State Attorney General - Syracuse
Regional Office, Syracuse, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

*1 Plaintiff Christopher E. Robinson commenced this civil
rights action *pro se* against defendants Michael Wright,
Matthew Mullen, and Tonia Zimmerman (collectively
"Defendants"). Defendants are all New York State parole
officers. The operative pleading is Plaintiff's Amended
Complaint. ECF No. 11. The Court *sua sponte* dismissed
several causes of action without leave to replead from
the Amended Complaint. ECF No.17. The sole remaining
claims are Fourteenth Amendment due process claims against
Defendants in their individual capacities, brought pursuant to
42 U.S.C. § 1983. *Id.*

In these claims, Plaintiff alleges that Defendants violated
his civil rights by submitting perjured testimony against
him, and by making "omissions of material facts," at
his parole revocation hearing. *See generally* ECF No. 11.
Plaintiff contends that the parole violations against him were
sustained, and he was reincarcerated, "due to the perjured
statements and omissions of material facts" by Defendants.
*Id.* at p. 4. Plaintiff seeks three million dollars ($3,000,000)

in monetary damages against Defendants. *Id.* Plaintiff is
presently in New York State custody. [1]

Defendants move pursuant to Federal Rule of Civil Procedure
12(b)(6) to dismiss the action on the grounds that Plaintiff's
due process claims are barred by *Heck v. Humphrey*, 512 U.S.
477, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994). ECF No. 31.
Plaintiff opposes the motion, ECF No. 32, and Defendants file
a reply. ECF No. 33.

After the dismissal motion was fully briefed, Plaintiff filed
a motion for summary judgment. ECF No. 39. Defendants
responded in opposition to that motion, ECF No. 40, and
Plaintiff filed a reply. ECF No. 41.

For the following reasons, Defendants' motion to dismiss
is granted and Plaintiff's motion for summary judgment is
denied as moot.

**II. STANDARD OF REVIEW – Rule 12(b)(6) Motion**

On a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept
"all factual allegations in the complaint as true, and draw[ ]
all reasonable inferences in the plaintiff's favor." *Holmes
v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal
quotation marks omitted). This tenet does not apply to legal
conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
Similarly, "[t]hreadbare recitals of the elements of a cause
of action, supported by mere conclusory statements ... are
not entitled to the assumption of truth." *Id.; see also Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that
a court is "not bound to accept as true a legal conclusion
couched as a factual allegation"). "To survive a motion to
dismiss, a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on
its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.
at 570).

"The Court is obligated to construe *pro se* pleadings broadly
and liberally, interpreting them so as to raise the strongest
arguments they suggest." *Daniels v. Kijakazi*, No. 22-
CV-6297 (LJL), 2023 WL 3901987, at *3 (S.D.N.Y. June
8, 2023)(citing *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.
2007); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d
138, 146 (2d Cir. 2002); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d
Cir. 2000)). "However, this does not relieve *pro se* plaintiffs
of the requirement that they plead enough facts to 'nudg[e]
their claims across the line from conceivable to plausible.' "
*Id.* (quoting *Twombly*, 550 U.S. at 570). "Nor does it relieve

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 18 of 129

**Robinson v. Wright, Not Reported in Fed. Supp. (2023)**

them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure." *Id.* (citing *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007)).

### III. DISCUSSION

#### a. Application of *Heck v. Humphrey*

**\*2** "An individual convicted of a crime may not bring a section 1983 suit for damages that 'necessarily impl[ies] the invalidity of his conviction or sentence ... unless [he] can demonstrate that the conviction or sentence has already been invalidated.' " *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 454 (E.D.N.Y. 2018)(quoting *Heck*, 512 U.S. at 487) (additional citations omitted). "*Heck's* limitation of section 1983 claims has come to be known as the 'favorable-termination' rule and applies to revocations of parole." *Id.* (citing, *inter alia, Lee v. Donnaruma*, 63 Fed. Appx. 39, 41 (2d Cir. 2003) ("Courts have applied *Heck* to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside.")). "A parolee challenging a parole revocation must therefore demonstrate that his parole revocation has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Id.* at 455 (quoting *Heck*, 512 U.S. at 486–87) (additional citations omitted).

Defendants contend that Plaintiff's Fourteenth Amendment due process claims are barred by *Heck* because, by alleging that Defendants gave perjured testimony and made material omissions during his parole revocation hearing resulting in his conviction and reincarceration, he is implying the invalidity of his parole revocation determination. ECF No. 31-1 at 4 (citing *Harris v. City of New York*, 2003 WL 554745, at *3 (S.D.N.Y. 2003)(dismissing the plaintiff's section 1983 claim pursuant to *Heck* insofar as he challenged "the basis" for the parole revocation determination)). Further, Defendants correctly point out that nowhere in Plaintiff's Amended Complaint does he establish that his parole revocation determination has been invalidated, or that his underlying conviction has been set aside. Rather, as Defendants indicate, Plaintiff's Amended Complaint states that his parole violations "were sustained and I have been reincarcerated due to the perjured statements and omission of material facts by each and every named defendant." ECF No. 11 at 4. Thus,

Defendants contend, Plaintiff's sole remaining § 1983 claims are barred by *Heck* and must be dismissed.

In his opposition, Plaintiff states that he does not "dispute the facts contained in the [Defendants'] PRELIMINARY STATEMENT, STANDARD OF REVIEW or even it's [sic] argument." ECF No. 32, at 6. Plaintiff argues that if he was in fact "using an [sic] § 1983 as the vehicle to argue against his conviction, then dismissal under *Heck* would be the proper remedy." *Id. see also id.* ("The plaintiff does concede to the fact that in his amended complaint it states that his parole violations 'were sustained and I have been reincarcerated due to the perjured statements and omissions of material facts by each and every named defendant.' "). However, Plaintiff argues, he is not using § 1983 as a vehicle to attack his conviction or disturb the final outcome of the hearing, but is only contending that he was injured because Defendants violated his constitutional rights by their conduct at the parole revocation hearing. *Id.* To the extent Plaintiff makes this argument to avoid the application of *Heck*, the argument is rejected.

Plaintiff seeks three million dollars ($3,000,000) in monetary damages as a result of Defendants' alleged constitutional violations. Section 1983 provides the mechanism by which Plaintiff may bring his constitutional claims in federal court. *See Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 127 (W.D.N.Y. 2022). As Defendants argue, Plaintiff's remaining Fourteenth Amendment due process claims must be brought pursuant to § 1983 and he cannot base his constitutional claims directly on the Fourteenth Amendment. *See Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 89, n. 12 (N.D.N.Y. 2013)("While Plaintiff explicitly states that her equal-protection claim is brought pursuant to § 1983, she does not state the specific procedural mechanism upon which her due-process and First Amendment claims rest. These claims, to the extent they seek damages, must be brought pursuant to § 1983 as well.")(citing *Koumantaros v. City Univ. of N.Y.*, 2007 WL 840115, at *5 (S.D.N.Y. Mar. 19, 2007)("Plaintiff claims defendant violated the due process and equal protection clauses of the Fourteenth Amendment.... [B]ecause § 1983 provides a remedy for plaintiff's causes of action, plaintiff cannot base her constitutional claims directly on the Fourteenth Amendment"), in turn citing *Pauk v. Bd. of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981)); *see also Pauk*, 654 F.2d at 865 ("[W]hen § 1983 provides a remedy, a ... cause of action grounded on the Constitution is not available."); *Turpin v. Mailet*, 591 F.2d 426, 427 (2d Cir. 1979) (rejecting cause of action against

municipality grounded directly on Constitution because of the availability of § 1983).

 **\*3**  Plaintiff's argument that he is not attempting to "attack" his conviction "nor to even disturb the final outcome of the hearing," ECF No. 32, at 6, is belied by the assertions in the Amended Complaint. There, Plaintiff asserts that his parole violations were sustained, and he was reincarcerated, "*due to* the perjured statements and omission of material facts by each and every named defendant." ECF No. 11 at 4 (emphasis added). Further, the Amended Complaint states that "Officer's [sic] Wright, Mullen and Zimmerman has [sic] violated the claiment's [sic] 14th amendment right for [sic] due process for [sic] making perjured statement's [sic]," and that these officers violated Plaintiff's "5 <sup>th</sup> , 8 <sup>th</sup> , and 14 <sup>th</sup> Amendment rights for [sic] malicious prosecution for [sic] making perjured testimony *to ensure* the claiment [sic] be remanded back to prison." *Id.* at 6 (emphasis added).

"*Heck* acknowledged that a plaintiff can bring a § 1983 claim to seek damages for a defendant's use of the 'wrong procedures, not for reaching the wrong result' so long as such a claim does not call into question the lawfulness of plaintiff's continued confinement." *McAdoo v. Jagiello,* No. 9:10-CV-355, 2011 WL 1577236, at \*2 (N.D.N.Y. Apr. 26, 2011) (citing *Heck,* 512 U.S. at 482–83). "In other words, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the [§ 1983] complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.' " *Id.* (quoting *Heck,* 512 U.S. at 487). "The Supreme Court has clarified that 'the proper inquiry is whether 'victory for the prisoners [would] necessarily [mean] immediate release or a shorter period of incarceration.' " *Id.* at \*3 (quoting *McKithen v. Brown,* 481 F.3d 89, 102 (2d Cir. 2007), in turn quoting *Wilkinson v. Dotson,* 544 U.S. 74, 80, 125 S. Ct. 1242, 1247 (2005)); *see Chung v. Stanford,* No. 9:22-CV-1236 (GTSDJS, 2023 WL 3073497, at \*3 (N.D.N.Y. Apr. 25, 2023);[2] *Baker v. New York State Dep't of Corr. & Cmty. Supervision,* No. 9:17-CV-1270 (GTS/TWD), 2018 WL 357297, at \*4 (N.D.N.Y. Jan. 10, 2018)(" '*Heck* uses the word 'sentence' interchangeably with ... 'continuing confinement' and 'imprisonment,' thus, any shortening of a term of confinement will be subject to the rule in *Heck.*") (quoting *Wilkinson,* 544 U.S. at 83–84, in turn quoting *Heck,* 512 U.S. at 483, 486) (other citation omitted)).

 **\*4**  Here, by contending that his parole revocation determination and subsequent sentence were "due to" Defendants' perjury and material omissions at the parole revocation hearing, Plaintiff's victory on this due process claims would invalidate the results of his parole revocation hearing and would necessarily mean his release or a shorter period of incarceration for his parole violations. Put another way, by alleging that Plaintiff's parole violations were sustained and he was reincarcerated "due to the perjured statements and omissions of material facts" by Defendants, Plaintiff necessarily implies the invalidity of his conviction and sentence based on Defendants' conduct at his parole revocation hearing. For this reason, and because Plaintiff has not alleged that his parole revocation determination or subsequent sentence have been invalidated, Plaintiff's due process claims are barred by *Heck. See, e.g., Sumter v. Marion,* No. 98 Civ. 2744, 1999 WL 767426, at \*5 (S.D.N.Y. Sept. 28, 1999) (dismissing § 1983 claim because to find in plaintiff's favor would require finding that defendants falsified evidence at the revocation hearing, thus invalidating the result); *Sealey v. Fishkin,* No. 96 CV 6303, 1998 WL 1021470, at \*5 (E.D.N.Y. Dec. 2, 1998) (dismissing § 1983 claim alleging police officer made false statements to parole officials, ultimately leading to parole revocation).

Plaintiff also appears to argue that he is entitled to proceed on his Fourteenth Amendment due process claims despite *Heck* because the Court adopted Judge Lovric's recommendation that a response to these claims was required. This argument is without merit. On an initial review of the Amended Complaint, Judge Lovric recommended, *inter alia,* that Plaintiff's malicious prosecution and false arrest claims be dismissed because Plaintiff had "not obtained a favorable termination of the underlying proceeding to state a malicious prosecution or false imprisonment claim." *See* ECF No. 13 at 8. In making this recommendation, Judge Lovric cited to two cases, one of which quoted from *Heck. See id.* (citing *Aragon v. New York,* 14-CV-9797, 2017 WL 2703562, at \*5 (S.D.N.Y. June 22, 2017))("Thus, to recover damages for a false imprisonment claim under Section 1983, a prisoner must demonstrate that his conviction 'has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' ")(quoting *Heck,* 512 U.S. at 486-87)). In addressing Plaintiff's Fourteenth Amendment due process claims, Judge Lovric reviewed the rights that an accused parolee is entitled to at a parole revocation hearing, *id.* 8-9, but he did not address whether *Heck* would bar the due process claims. *See*

Robinson v. Wright, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 20 of 129

*id.* Rather, in recommending that these claims be allowed to proceed, Judge Lovric merely stated:

> Here, Plaintiff alleges that his constitutional rights were violated during his parole revocation hearing based on false statements made by Defendants. Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff,* 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourteenth Amendment claims against Defendants in their individual capacities.

*Id.* at 9.

Plaintiff filed a letter indicating he had no objection to Judge Lovric's recommendations, *see* ECF No. 14, and no other objections were lodged. The Court adopted Judge Lovric's recommendations because it found that the recommendations were not subject to attack for plain error or manifest injustice. ECF No. 17 at 2. The fact that the Court agreed with Judge Lovric that the due process claims should be allowed to proceed does not mean that Court reached any conclusion on whether the claims were barred by *Heck*. Indeed, Judge Lovric indicated that he was not expressing any opinion as to whether Plaintiff's due process claims could survive a motion to dismiss. Plaintiff cannot avoid the application of *Heck* by arguing that this issue has already been resolved in his favor when, in fact, it has not.

**\*5** For the reasons discussed here, the Court finds that Plaintiff's due process claims are barred by *Heck*. Accordingly, Defendants' motion to dismiss is granted and Plaintiff's due process claims are dismissed.

**b. Leave to Amend**

While district courts generally grant *pro se* plaintiffs an opportunity to amend a complaint to cure its defects, leave to amend is not required where it would be futile. *See Hill v. Curcione,* 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988). "[T]he *Heck* rule bars [a] plaintiff's claims until the underlying conviction is invalidated, and thus providing the plaintiff with an opportunity to amend the complaint is futile until such time that the state court conviction is reversed, invalidated by a federal writ of habeas corpus, or otherwise expunged or declared invalid." *Cruz v. Reilly,* No. 08-CV-1245 JFB AKT, 2009 WL 2567990, at \*7 (E.D.N.Y. Aug. 18, 2009). Here, "[b]ecause the defects in Plaintiff's complaint [arising from the *Heck* bar] cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his [amended] complaint." *Traore v. New York State Div. of Parole,* No. 22-CV-1431 (LTS), 2023 WL 207920, at \*3 (S.D.N.Y. Jan. 13, 2023). The Court dismisses Plaintiff's due process claims without prejudice to being brought in a new action if he can establish that his parole revocation determination or subsequent sentence have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

**c. Plaintiff's Motion for Summary Judgment**
Inasmuch as the only remaining claims in this action are Plaintiff's Fourteenth Amendment due process claims against Defendants in their individual capacities, which are now dismissed without leave to amend, Plaintiff's motion for summary judgment is denied as moot.

**IV. CONCLUSION**
For the reasons discussed above, Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process claims against Defendants, ECF No. 31, is **GRANTED**. These claims are **DISMISSED without prejudice** to being brought in a new action if Plaintiff can establish that his parole revocation determination or subsequent sentence have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Because Plaintiff's Fourteenth Amendment due process claims against Defendants are the only remaining claims

**Robinson v. Wright, Not Reported in Fed. Supp. (2023)**

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 21 of 129

in this action, the Amended Complaint, ECF No. 11, is **DISMISSED**.

That being the case, Plaintiff's motion for summary judgment, ECF No. 39, is **DENIED as moot.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6122882

---

## Footnotes

1    *See* https://nysdoccslookup.doccs.ny.gov/ (last accessed 09/13/2023).

2    In *Chung,* Judge Suddaby wrote:

   Although *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily imply the invalidity of the *conviction,*" 512 U.S. at 487 (emphasis added), the Supreme Court subsequently clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate the underlying conviction or sentence, *see Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred ... *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis in original)); *Edwards v. Balisok,* 520 U.S. 641, 648 (1997) (finding that a prisoner's claim for money damages alleging that he was deprived of good-time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits); *Baker v. New York State Dep't of Corr. & Cmty. Supervision,* No. 9:17-CV-1270 (GTS/TWD), 2018 WL 357297, at *4 (N.D.N.Y. Jan. 10, 2018) ("While the Complaint does not include any specific request for immediate release, in the motion for injunctive relief, Plaintiff seeks to overturn the Panel's decision and moves for immediate release .... To the extent that the Complaint could be construed as seeking release, Plaintiff's claims are dismissed without prejudice pursuant to *Heck,* on the ground that habeas corpus is his sole federal remedy."); *McAllister v. Alexandra,* No. 9:09-CV-0664 (GTS/DRH), 2009 WL 10675934, at *5 (N.D.N.Y. July 28, 2009) ("Any claim by Plaintiff that he is entitled to damages resulting from the denial of parole release is barred by the doctrine of *Heck v. Humphrey*[.]"); *Grant v. Ahern,* No. 03-CV-0539 (FJS/RFT), 2005 WL 1936175, at *5 n.3 (N.D.N.Y. Aug. 2, 2005) ("*Heck* has been held to apply to 'suits contesting the rejection of parole release.' ") (quoting *Lampkin v. N.Y. City Dep't of Probation,* No. 00-CV-7165, 2001 WL 210362, at *2 (S.D.N.Y. Mar. 1, 2001)).

   2023 WL 3073497, at *3.

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 554745
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Raymond HARRIS a/k/a Chauncey Harris, Plaintiff,
v.
THE CITY OF NEW YORK; Bernard Kerik, Police
Commissioner N.Y.C.; New York City Police
Department (28th Precinct); 28th Precinct Narcotics
Division (C.H.I.); Detective Calvin Green, Shield #
02809; Undercover Officer, Shield # 7416; Defendants.

No. 01 Civ. 6927(LAP)
|
Feb. 26, 2003.

**Synopsis**
Arrestee brought § 1983 action alleging, inter alia, false imprisonment, use of excessive force, and perjury at parole revocation hearing. On defendants' motion for summary judgment, the District Court, Preska, J., held that: (1) parole revocation determination could not be collaterally challenged; (2) arresting officers did not use excessive force; and (3) strip searches were not unreasonable.

Motion granted.

West Headnotes (6)

**[1]    Civil Rights** 🔑 **Parole**

Former prisoner whose parole was revoked could not bring § 1983 action alleging perjury by government witness at revocation hearing, or false imprisonment as result of revocation, absent showing that revocation had been invalidated; both claims constituted collateral attack on revocation determination. 42 U.S.C.A. § 1983.

8 Cases that cite this headnote

**[2]    Search, Seizure, and Arrest** 🔑 **Physical contact; chokehold**

Officers who "tussled" with arrestee who was resisting restraint did not use excessive force. U.S.C.A. Const.Amend. 4.

**[3]    Search, Seizure, and Arrest** 🔑 **Scope of Search**

Neither strip search of person arrested on drug charges, nor multiple additional strip searches of him during his subsequent seven-month pre-trial detention, were violative of his constitutional right to be free from unreasonable searches, absent evidence officers used excessive force or acted in inappropriate manner. U.S.C.A. Const. Amend. 4.

**[4]    Civil Rights** 🔑 **Criminal law enforcement; prisons**

**Civil Rights** 🔑 **Criminal law enforcement; prisons**

Supervisor of arresting officers could not be held liable to arrestee for officers alleged use of excessive force absent evidence of his personal involvement in misconduct; conclusory allegations of deliberate indifference to prior misconduct were insufficient. U.S.C.A. Const. Amend. 4; 42 U.S.C.A. § 1983.

1 Case that cites this headnote

**[5]    Civil Rights** 🔑 **Criminal law enforcement; prisons**

City could not be held liable for arresting officers alleged use of excessive force absent evidence that harm resulted from municipal policy, custom, or practice. U.S.C.A. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[6]    Civil Rights** 🔑 **Criminal law enforcement; prisons**

Arrestee's § 1983 suit against police department, alleging officers' use of excessive force, was effectively suit against city; police department could not be sued independently of city. U.S.C.A. Const. Amend. 4; 42 U.S.C.A. § 1983.

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 23 of 129

Harris v. City of New York, Not Reported in Fed. Supp. (2005)

*MEMORANDUM AND ORDER*

PRESKA, J.

**\*1** Plaintiff Raymond Harris, who is proceeding *pro se,* brings this 42 U.S.C. § 1983 action for monetary relief against the City of New York, Bernard Kerik, the former Police Commissioner, the New York City Police Department, the 28th Precinct Narcotics Division, Detective Calvin Green, and Undercover Officer, Shield # 7416. Plaintiff alleges that defendants' conduct—including, *inter alia,* false arrest, unlawful imprisonment and detention, excessive force, cruel and unusual punishment, perjury, and parole revocation— violated the Fourth and Fourteenth Amendments. By notice of motion filed August 21, 2002, defendants moved for summary judgment as to all of plaintiff's claims. For the reasons stated below, defendants' motion (docket no. 19) is granted.

*BACKGROUND*

The allegations in the complaint arise from plaintiff's arrest on November 28, 2000. (Compl. at 3; Defendants' Revised Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Rule 56.1 Statement") ¶ 2). On that date, defendant Detective Green arrested plaintiff as part of a "buy and bust" operation in which the unnamed defendant undercover officer took part. (Compl. at 3; Rule 56.1 Statement ¶ 5). Plaintiff was charged with criminal sale of a controlled substance in the third degree, but he was never indicted, and the charge was eventually dismissed in May 2001. (Compl. at 3). In connection with his arrest, plaintiff claims that Detective Green and "others of the 28th Precinct Narcotics Division" subjected him to excessive force by "punching and slapping" him in the "face and body area." (*Id.*) After plaintiff's arrest, he was "strip-searched, fingerprinted, [and] taken downtown" to the 25th Precinct. (Deposition of Raymond Harris dated June 21, 2002 ("Harris Dep.") at 84, 85, Ex. B to the Declaration of Zachary A. Cunha ("Cunha Decl.")).

Because of his status as a parolee, plaintiff knew he had an obligation to notify his parole officer of his arrest. For that reason, plaintiff states that he asked his brother to call his parole officer the same day he was arrested. (*Id.* at 105). However, plaintiff also states he was not offered the chance to make a phone call at the Precinct, nor did he ask to make a phone call. (*Id.* at 94). Defendants claim that plaintiff had the opportunity to make a phone call and that he declined to do so. (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment at 6).

Plaintiff was charged with violating the conditions of his release for failing to notify his parole officer of his arrest within the allowable time. On December 14, 2000, a preliminary hearing on plaintiff's alleged violation was held. Plaintiff testified at the hearing and was represented by counsel. Plaintiff's parole officer testified that plaintiff's brother contacted him on November 30, two days after plaintiff's arrest. (Preliminary Hearing Transcript at 25, Ex. C to Cunha Decl.). The Hearing Officer found probable cause to support the violation charge based on the testimony of plaintiff's parole officer and Detective Green; specifically, testimony to the effect that plaintiff was given the opportunity to make a phone call, which he refused. (*Id.* at 27). On April 17, 2001, a final hearing was held before an administrative law judge, where plaintiff also testified and was represented by counsel. (Final Hearing Transcript, Ex. D to Cunha Decl.). Again, the judge credited the testimony of Detective Green and sustained the charge against plaintiff for violation of his release conditions. (Parole Revocation Decision, Ex. E to Cunha Decl.). Consequently, plaintiff was assessed a 36 month hold. (*Id.*).

**\*2** Plaintiff alleges that Detective Green gave perjurious testimony in the parole revocation hearings and that, as a result, his imprisonment resulting from the parole revocation is unlawful. The complaint also contains allegations of "cruel and unusual punishment" in the form of the "constant harrassment [sic] of strip searches," (Compl. at 3–4), which occurred while plaintiff was detained at Rikers Island while awaiting trial on the criminal charge, (Harris Dep. at 157). [1]

*DISCUSSION*

I. Summary Judgment Standard

Under Rule 56, summary judgment shall be rendered if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby,* 477

Harris v. City of New York, Not Reported in Fed. Supp. (2005)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 24 of 129

U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. *Anderson,* 477 U.S. at 248.

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law determines the facts which are material to the outcome of a particular litigation. *See Anderson,* 477 U.S. at 250; *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. Proc. 56(e).* The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U .S. at 586. Only when it is apparent, however, that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994).

Because plaintiff is proceeding *pro se,* I must consider the pleadings under a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *accord Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) ("[W]e read [the pro se party's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) (referring to the "special solicitude" afforded *pro se* litigants when confronted with motions for summary judgment); *Hanlin v. Mitchelson,* 794 F.2d 834, 838–39 (2d Cir.1986) (citing *Haines* to support the principle that *pro se* pleadings are given a liberal construction).

**\*3** Nevertheless, proceeding *pro se* does not otherwise relieve plaintiff from the usual requirements of summary judgment. *See Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (holding that a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment" (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991))); *Kadosh v. TRW Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at \*5 (S.D.N.Y. Dec. 5, 1994) ("The work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*'s] failure to allege either specific facts or particular laws that have been violated, renders his attempt to oppose defendant's motion ineffectual.").

## II. Section 1983 Claim

### A. Revocation of Parole

**[1]** In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

512 U.S. at 486–87. *Heck* also applies to Section 1983 actions that challenge the fact or duration of confinement based on the revocation of parole, as plaintiff does here. *See Davis v. Cotov,* 214 F.Supp. 310, 316 (E.D.N.Y.2002) (collecting cases); *Dallas v. Goldberg,* 13 F.Supp.2d 312, 322 (S.D.N.Y.2001). To the extent that plaintiff seeks monetary damages relating to the revocation of his parole, his claim is foreclosed by *Heck* because plaintiff has not established, as he must, that his parole revocation has been invalidated. Indeed, plaintiff

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 25 of 129

Harris v. City of New York, Not Reported in Fed. Supp. (2005)

acknowledges, both in his deposition and his opposition papers, that his challenge to the parole revocation is presently pending in the New York State Appellate Division, Fourth Department. (Harris Dep. at 120; Plaintiff's Response and Objections to Defendant(s) Request for Summary Judgment ("Pl.'s Response") at 7). Thus, plaintiff's claim that he was falsely imprisoned or detained as a result of the parole revocation must be dismissed. [2]

Furthermore, plaintiff's claim based on Detective Green's alleged perjurious testimony during the parole revocation hearing also must be dismissed as necessarily implying the invalidity of his parole revocation, since Detective Green's testimony formed the basis for the administrative law judge's decision. *See Heck,* 512 U.S. at 487 ("when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated"); *Dallas,* 13 F.Supp.2d at 322 (plaintiff foreclosed from proceeding under *Heck* because "damages claim, to the extent it is focused on the parole violation confinement, constitutes 'a collateral attack on the [parole violation finding] through the vehicle of a civil suit' ") (quoting *Heck,* 512 U.S. at 484) (internal quotation marks and citation omitted) (alteration in original)). Accordingly, because plaintiff has not put forth evidence that the parole revocation has already been invalidated, plaintiff's damages claims both for the period of incarceration resulting from the revocation of his parole and regarding the allegedly perjurious testimony of Detective Green are dismissed without prejudice to refiling if plaintiff satisfies the conditions set forth in *Heck v. Humphrey.* [3]

### B. Excessive Force

**\*4** **[2]** The standard to be applied to a claim of excessive force during an arrest is well-settled. "The Supreme Court has made it clear that excessive force that is used by officers arresting a suspect ought to be characterized as invoking the protections of the Fourth Amendment, which guarantee citizens the right to be free from unreasonable seizures of the person." *Hemphill v. Schott,* 141 F.3d 412, 416–17 (2d Cir.1998) (citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In determining whether the force used violated the Fourth Amendment, I must make "an exclusively objective" inquiry and examine the following factors: "the severity of the crime at issue, whether the suspect

poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill,* 141 F.3d at 417 (citing *Graham,* 490 U.S. at 396). The Court of Appeals and the Supreme Court have made clear that " 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

Here, the complaint contains allegations that Detective Green and "others of the 28th Precinct Narcotics Division" subjected plaintiff to excessive force by "punching and slapping" him in the "face and body area." (Compl. at 3). When plaintiff described the incident at his deposition, however, he characterized the altercation as "tussling," (Dep. at 69), and admitted that when an officer grabbed him and pushed him against the wall, he "pushed him back," (*id.* at 70). Plaintiff also admitted that he was "resisting" being restrained by the officers. (*Id.* at 73). Even considering the evidence in the light most favorable to plaintiff, I find that there are no material issues as to whether any of the defendants violated plaintiff's Fourth Amendment rights during his arrest and that, accordingly, defendants are entitled to summary judgment on plaintiff's excessive force claim.

### C. Strip Searches

**[3]** The Fourth Amendment's reasonableness standard governs strip searches of pre-trial detainees. [4] This reasonableness test "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 560, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Larocco v. New York City Dep't of Corrections,* No. 99 Civ. 9759, 2001 U.S. Dist. LEXIS 13839, at \*9–\*10 (S.D.N.Y. Aug. 31, 2001). A prisoner possesses only a limited right of bodily privacy. *See Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir.1992). "Moreover, 'visual body-cavity searches are permitted if reasonably related to a significant and legitimate penological goal and conducted in a reasonable manner." ' *Larocco,* 2001 U.S. Dist. LEXIS 138939, at \*10 (quoting *Troy v. Kuhlmann,* No. 96 Civ. 7190, 1999 U.S. Dist. LEXIS 16027, at \*26 (S.D.N.Y. Oct. 15, 1999)). For instance, routine visual body cavity searches of prisoners after contact visits with people from outside the institution are not per se

Case 3:24-cv-00750-AMN-ML   Document 5   Filed 10/29/24   Page 26 of 129

Harris v. City of New York, Not Reported in Fed. Supp. (2005)

unreasonable if they are conducted in a reasonable manner. *See Bell,* 441 U.S. at 558.

 **\*5**  Plaintiff alleges that he was subjected to "cruel and unusual punishment" in the form of the "constant harrassment [sic] of strip searches ... approximately 3 to 4 times weekly." (Compl. at 4). At his deposition, plaintiff stated that he was strip searched "about seven [or eight] times a month" during the seven month period he spent at Rikers. (Harris Dep. at 156–57). Plaintiff also states that he was strip searched at the 25th Precinct after his arrest. With respect to the strip searches at both Rikers and the 25th Precinct, plaintiff stated that other inmates or arrestees were also searched in the same manner. (Harris Dep. at 85, 156). Plaintiff does not allege that the officers conducting the searches used excessive force or acted in an inappropriate manner. Since plaintiff was arrested on drug charges, the search at the 25th Precinct was a reasonable way to determine if plaintiff had any contraband on his person. The complaint does not contain allegations that the strip searches at Rikers were conducted without a reasonable purpose; however, in his moving papers plaintiff contends that "it is not within penological goals, when the individual is subjected to visual body-cavity searches in excess of four or five times daily without justification or probable cause...." (Pl.'s Response at 16). Plaintiff then speculates as to what records at Rikers Island would reveal, but presents no evidence to support these new allegations.

Plaintiff does state that he felt "humiliated" by the strip search process at Rikers. (Harris Dep. at 155). Under certain circumstances, the manner in which a search is conducted may give rise to an Eighth Amendment claim. *See Frazier v. Ward,* 426 F.Supp. 1354, 1366 (N.D.N.Y.1977) (body cavity search "conducted in a debasing manner and not for any genuine security purposes" violates the Eighth Amendment) (*cited in Show v. Patterson,* 955 F.Supp. 182, 191 (S.D.N.Y.1997)). In this case, however, plaintiff has adduced no facts indicating that the conduct of the officers during the searches on Rikers rises to the level of an Eighth Amendment violation.[5] Even construing the evidence in plaintiff's favor, as I must, I find no issue of material fact as to whether the strip searches of plaintiff at Rikers Island or at the 25th Precinct were reasonable. Accordingly, plaintiff's claim based on the strip searches is dismissed.

D. Defendant Kerik

 **[4]**  It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Liability under Section 1983 cannot be based on the doctrine of respondeat superior or vicarious liability. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Bass,* 790 F.2d at 263. Similarly, the fact that a defendant may have been in a "high position of authority is an insufficient basis for the imposition of personal liability" under Section 1983. *McKinnon,* 568 F.2d at 934; *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)).

 **\*6**  Plaintiff alleges that defendant Kerik had Detective Green, the undercover officer and others of the 28th Precinct Narcotics Division "under [his] control." (Compl. at 3). In plaintiff's opposition papers, he expands on this allegation, contending that defendant Kerik "as the supervisor in charge had the duty and responsibility to oversee and investigate into allegations of misconduct by any of those under him, and through deliberate indifference chose to ignore the pattern of behavior exhibited by those in his charge...." (Pl.'s Response at 1–2). In support of these assertions, plaintiff speculates that "the files within the Civilian Complaint Review Board" and "the Internal Affairs Division contains [sic] evidence that [defendant Kerik] was on notice of ... prior misconduct ... and such misconduct was left unchecked." (*Id.* at 13). However, plaintiff has put forth no evidence pointing to defendant Kerik's personal involvement in plaintiff's alleged deprivation of rights and admitted at his deposition that defendant Kerik did not play any personal part the events underlying his claims. (Harris Dep. at 148–49). Plaintiff's conclusory allegations regarding defendant Kerik's alleged supervisory role, without more, cannot withstand summary judgment. Accordingly, the claims against defendant Kerik are dismissed.

E. Municipal Liability[6]

 **[5]**  **[6]**  To hold the City of New York liable for the acts of their employees pursuant to § 1983, the plaintiff must demonstrate that any constitutional harm suffered was the result of municipal policy or custom. *See Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff need not point to a formal, officially adopted policy if he is able to show

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 27 of 129

Harris v. City of New York, Not Reported in Fed. Supp. (2003)

an established custom or practice. *See id.* at 690–91; *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119 (2d Cir.1991); *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986). Although, as noted above with respect to defendant Kerik, plaintiff speculates in his opposition papers about evidence that might exist, and alleges that the City failed to "rectify what they [sic] know to be wrong," (Pl.'s Response at 15), plaintiff has presented no evidence indicating the existence of any policy, custom or practice. Accordingly, plaintiff's claims against defendant City of New York are dismissed.

*CONCLUSION*

Based on the foregoing reasons, defendants' motion for summary judgment (docket no. 19) is granted. Plaintiff's claims based on the revocation of parole are dismissed without prejudice to refiling upon satisfaction of the conditions set forth in *Heck v. Humphrey.* Plaintiff's remaining claims are dismissed with prejudice. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED

**All Citations**

Not Reported in Fed. Supp., 2003 WL 554745

---

## Footnotes

1    In my discussion of this claim, *infra,* I also consider the constitutionality of the strip search conducted at the 25th Precinct after plaintiff's arrest, (Harris Dep. at 85), although this search is not specifically referenced in the complaint.

2    Because plaintiff cannot challenge the period of incarceration following his parole revocation, plaintiff cannot establish any injury from his arrest. Even taking plaintiff's allegation of false arrest as true—although I note there is no evidence in the record to support that allegation other than the fact that the charge was eventually dismissed—the violation for which he was subsequently incarcerated stemmed from his failure to notify his parole officer of his arrest in a timely manner. Thus, plaintiff suffered no additional injury as a result of his arrest, because his 36 month period of incarceration followed from the revocation of his parole. Accordingly, plaintiff's claim on the basis of false arrest is dismissed.

3    In this regard, however, I note that the record here indicates that plaintiff had a full and fair opportunity to litigate his claim at both the preliminary hearing and the final hearing before an administrative law judge. Furthermore, "plaintiff should not be allowed to relitigate adverse factual findings by the Board of Parole." *Flowers v. Wincelowicz,* No. 96 Civ. 3276, 1999 U.S. Dist. LEXIS 8003, at *14 (S.D.N.Y. May 26, 1999) ("When an administrative body acts in a judicial capacity and makes factual findings, the federal courts must accord the same preclusive effect as a state court would to the agency's determinations."); *see also University of Tennessee v. Elliott,* 478 U.S. 788, 797–98, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

4    As noted in the background section, *supra,* the strip searches plaintiff challenges occurred at the 25th Precinct after his arrest and at Rikers Island while he was awaiting trial on the criminal charge of sale of a controlled substance. (Harris Dep. at 85, 157).

5    Furthermore, I note that plaintiff has not alleged, nor provided any evidence of, a connection between the strip searches on Rikers and the conduct of any of the defendants named in the complaint. Plaintiff does not allege that any of the defendants conducted the strip searches, or even that any of the defendants were present when the strip searches occurred at Rikers.

6    Plaintiff names both the City of New York and the New York City Police Department (28th Precinct) as defendants in this action. Because the New York City Police Department cannot be sued independently of

the City, plaintiff's claims against the Police Department and the 28th Precinct are hereby dismissed. *See McAllister v. New York City Police Dep't,* No. 97 Civ. 7420, 1998 U.S. Dist. LEXIS 8847, at *2–*3 (S.D.N.Y. June 15, 1998) (collecting cases).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1577236
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Emanuel McADOO, also known
as Emmanuel Smith, Plaintiff,
v.
Mary Ann JAGIELLO, in her
individual capacity, Defendant.

No. 9:10–CV–355.
|
April 26, 2011.

**Attorneys and Law Firms**

Emanuel McAdoo, Brooklyn, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of
New York, Justin C. Levin, Esq., Asst. Attorney General, of
Counsel, Albany, NY, for the Defendant.

*MEMORANDUM–DECISION and ORDER*

DAVID N. HURD, District Judge.

## I. *INTRODUCTION*

  **\*1**  Plaintiff Emanuel McAdoo ("plaintiff" or "McAdoo"),
a former New York state prison inmate and current parolee
proceeding *pro se* and *in forma pauperis,* commenced
this action on March 26, 2010, pursuant to 42 U.S.C. §
1983. Plaintiff alleges that defendant Mary Ann Jagiello
("defendant" or "Jagiello"), a senior parole officer with
the New York State Division of Parole ("NYDOP"),
violated his due process rights guaranteed by the Fourteenth
Amendment to the United States Constitution. Plaintiff
seeks monetary damages. Defendant has moved to dismiss
plaintiff's complaint in its entirety pursuant to Federal Rule of
Civil Procedure 12(b)(6). Defendant also requests a protective
order, pursuant to Federal Rule of Civil Procedure 26(c),
staying discovery pending the ultimate resolution of this
motion. Plaintiff opposes the motion.

## II. *FACTUAL BACKGROUND*

The following pertinent facts, taken from the complaint, are
accepted as true for purposes of this motion to dismiss.

On September 16, 1999, plaintiff was released from the
custody of the New York State Department of Correctional
Services and placed on parole supervision. Thereafter,
plaintiff's parole supervision was transferred from New York
to Florida pursuant to New York Executive Law section 259–
m. On January 25, 2000, while on parole, McAdoo was
arrested on drug charges in Florida. The NYDOP issued a
warrant, lodged as a detainer, against plaintiff on January 18,
2001. On February 8, 2001, plaintiff was found guilty of the
Florida drug charges after a jury trial.

Also in February 2001, plaintiff waived his right to a
preliminary parole revocation hearing in New York. While
incarcerated in Florida at some point in 2001, plaintiff
requested that the NYDOP hold a final revocation hearing in
his absence. Defendant sent plaintiff a letter, dated December
10, 2003, informing McAdoo that his final revocation hearing
could not be held in absentia. This letter further advised:
"[Y]ou must be physically present within New York to have a
Final Hearing. Therefore, no decision can be made regarding
your violation and the remaining time you have on your
sentence, until you are returned to New York." Plaintiff's
sentence was subsequently "extended" by five years. [1]

## III. *DISCUSSION*

Plaintiff asserts that defendant's failure to conduct a final
parole revocation hearing within 90 days of his request to
have such a hearing proceed in his absence constitutes a
deprivation of his due process rights. Defendant argues that
McAdoo's claim is barred by Heck v. Humphrey, 512 U.S. 477,
114 S.Ct. 2364 (1994), as well as the statute of limitations and
fails to state a claim upon which relief can be granted. Jagiello
further maintains that she is entitled to qualified immunity.

### A. *Motion to Dismiss—Legal Standard*

To survive a 12(b)(6) motion to dismiss, the "[f]actual
allegations must be enough to raise a right to relief above the
speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544,
555, 127 S.Ct. 1955, 1965 (2007). Although a complaint need
only contain "a short and plain statement of the claim showing
the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), more
than mere conclusions are required. Indeed, "[w]hile legal
conclusions can provide the framework of a complaint, they
must be supported by factual allegations." Ashcroft v. Iqbal,
—— U.S. ——, 129 S.Ct. 1937, 1950 (2009).

 **\*2** Dismissal is appropriate only where plaintiff fails to provide some basis for the allegations that support the elements of his claims. *See Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). Additionally, particular deference should be given to a *pro se* litigant's complaint when applying the above standard. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007).

### B. *Plaintiff's Response to Defendant's Motion to Dismiss*

Defendant argues that plaintiff's response to the motion to dismiss should not be considered as it was filed late and without a proper affidavit of service. Indeed, on October 21, 2010, United States Magistrate Judge Baxter granted plaintiff an extension of time to file his response by November 1, 2010. However, plaintiff's response was not filed until November 15, 2010. *See* Dkt. No. 15.

Rule 7.1(b) (3) of the Local Rules for the Northern District of New York states: "The Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown." However, it is well-established that *pro se* plaintiffs are "entitled to certain latitude," especially when facing a dispositive motion. *Jemzura v. Pub. Serv. Comm'n,* 961 F.Supp. 406, 415 (N.D.N.Y.1997) (McAvoy, C.J.); *see also Murray v. Goord,* 668 F.Supp.2d 344, 353 (N.D.N.Y.2009) (Scullin, S.J. & Peebles, M.J.).

The docket sheet indicates that there was difficulty sending documents to McAdoo. Mail was returned as undeliverable in May and September 2010. Dkt. Nos. 5, 12. Further, plaintiff changed addresses three times between April and October 2010. Dkt. Nos. 4, 11, 14. Moreover, although defendant complains about the completeness of the affidavit of service, she clearly received plaintiff's response and was afforded an opportunity to reply to same. Indeed, attached to defendant's reply is a copy of the envelope-postmarked November 12, 2010—in which McAdoo mailed his response to defense counsel. Dkt. No. 16. Given the latitude owed to *pro se* litigants, and in an abundance of caution, plaintiff's response will be considered.

### C. *Applicability of Heck v. Humphrey*

Defendant argues that McAdoo's claim is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994). In *Heck,* the Supreme Court held that a plaintiff cannot use a § 1983 action to expressly or implicitly challenge the validity of a conviction or sentence unless such conviction or sentence had already been reversed, called into doubt by the issuance of a habeas corpus petition, or otherwise invalidated. *Id.* at 486–87, 114 S.Ct. at 2372. A plaintiff seeking to challenge the legality of his conviction or sentence must do so via a habeas petition after exhausting available state remedies. *Id.* at 489, 114 S.Ct. at 2373. However, *Heck* acknowledged that a plaintiff can bring a § 1983 claim to seek damages for a defendant's use of the "wrong procedures, not for reaching the wrong result" so long as such a claim does not call into question the lawfulness of plaintiff's continued confinement. *Id.* at 482–83, 114 S.Ct. at 2370. In other words, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the [§ 1983] complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487, 114 S.Ct. at 2372.

 **\*3** Importantly, *Heck* "does not bar a § 1983 action that, at most, increases the *likelihood* that a plaintiff will eventually be able to overturn a still-outstanding conviction, but which does not go so far as to *necessarily* demonstrate the conviction's invalidity." *McKithen v. Brown,* 481 F.3d 89, 102 (2d Cir.2007). The Supreme Court has clarified that "the proper inquiry is whether 'victory for the prisoners [would] necessarily [mean] immediate release or a shorter period of incarceration.' " *Id.* (quoting *Wilkinson v. Dotson,* 544 U.S. 74, 80, 125 S.Ct. 1242, 1247 (2005)). That a victory in a § 1983 suit may be helpful in a subsequent challenge to the plaintiff's conviction or confinement is "irrelevant." *Id.*

The principles detailed in *Heck* and its progeny have been applied to parole revocation cases. *See, e.g., Sumter v. Marion,* No. 98 Civ. 2744, 1999 WL 767426, at \*5 (S.D.N.Y. Sept. 28, 1999) (dismissing § 1983 claim because to find in plaintiff's favor would require finding that defendants falsified evidence at the revocation hearing, thus invalidating the result); *Sealey v. Fishkin,* No. 96 CV 6303, 1998 WL 1021470, at \*5 (E.D.N.Y. Dec. 2, 1998) (dismissing § 1983 claim alleging police officer made false statements to parole officials, ultimately leading to parole revocation).

McAdoo alleges that defendant followed improper procedure, not that the ultimate revocation of his parole was wrong. [2] Indeed, he seeks monetary damages for "emotional injury" as opposed to declarative relief invalidating his revocation or an injunction preventing his continued parole supervision. Moreover, a finding that Jagiello violated McAdoo's due process right to a timely final revocation hearing does not necessarily imply that his subsequent parole revocation was invalid. This is noticeably different from a claim that the revocation hearing itself was tainted by the reliance on false evidence as in *Sumter* or a claim that the revocation was based on false statements made by an arresting police officer as in *Sealey.* A finding in favor of the *Sumter* and *Sealey* plaintiffs obviously invalidates the determination made at their final revocation hearings. McAdoo does not allege that the decision to revoke his parole was based on faulty evidence or inaccurate information relating to his Florida drug charges. His sole claim is that defendant refused to conduct a timely revocation hearing in his absence. A finding in his favor, therefore, would not undermine the validity of his revocation nor necessitate an immediate change to his current sentence.

Accordingly, defendant's assertion that *Heck v. Humphrey* mandates dismissal of McAdoo's § 1983 action is rejected.

#### D. *Statute of Limitations for § 1983 Claims*

Jagiello next argues that plaintiff's cause of action is time-barred. The statute of limitations for § 1983 claims is equivalent to the applicable state law statute of limitations for personal injury tort claims. *Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 1094 (2007). The statute of limitations period for a § 1983 claim in New York is three years. *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004). This period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington v. City of New York,* 171 F.3d 117, 121 (2d Cir.1999) (internal quotation marks omitted).

 **\*4** Making all reasonable inferences in plaintiff's favor, it is assumed that he first learned of his alleged injury upon receipt of defendant's letter in December of 2003. The statute of limitations for any associated § 1983 claim thus expired in December of 2006. As McAdoo did not file this action until March of 2010, it is clearly untimely. In response, plaintiff asserts that the statute of limitations "is not applicable" because he suffered from mental illness —including schizoaffective disorder, bipolar disorder, post-traumatic stress disorder, and drug addiction—since 1986.

The tolling of the statute of limitations for § 1983 claims is governed by state law tolling provisions. *Wallace,* 549 U.S. at 394, 127 S.Ct. at 1098. New York law tolls the statute of limitations for persons suffering from "insanity at the time the cause of action accrues." N.Y.C.P.L.R. § 208. If the disability of insanity ceases, the party has three years thereafter to file a cause of action. *Id.* This tolling statute is to be "narrowly interpreted." *McCarthy v. Volkswagen of Am.,* 55 N.Y.2d 543, 548 (N.Y.1982). [3] In order to benefit from section 208, plaintiff must establish that he was "unable to protect [his] legal rights because of an over-all inability to function in society." *Id.*

When determining whether a party suffered from insanity within the meaning of this statute, a court is to consider "all surrounding facts and circumstances relevant to the claimant's ability to safeguard his or her legal rights." *Cerami v. City of Rochester Sch. Dist.,* 82 N.Y.2d 809, 812 (N.Y.1993). "Apathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom, or mental illness alone are insufficient to invoke the tolling provisions of § 208; the mental disability must be severe and incapacitating." *McEachin v. City of New York,* No. 03–CV–6421, 2007 WL 952065, at \*4 (E.D.N.Y. Mar. 29, 2007) (internal quotation marks omitted). Nor is an allegation that plaintiff was "mentally ill" when the claim accrued sufficient to trigger section 208. *Murphy v. West,* 533 F.Supp.2d 312, 316 (W.D.N.Y.2008). Moreover, there is no "*per se* toll for psychiatric hospitalization" under New York law. *Joseph S. v. Hogan,* 561 F.Supp.2d 280, 315 (E.D.N.Y.2008). Finally, plaintiff must also demonstrate that the disability of insanity continued throughout the relevant statutory period. *Libertelli v. Hoffman–La Roche, Inc.,* 565 F.Supp. 234, 237 (S.D.N.Y.1983).

It cannot be determined whether McAdoo suffered from the disability of insanity within the meaning of section 208 in December 2003 or, if so, how long this condition persisted to prevent him from pursuing his legal rights. McAdoo submitted medical records—dated April 2009—indicating that he was diagnosed with schizoaffective and bipolar disorders in 2006. Dkt. No. 15, Ex. B. These records further document a history of drug addiction and hospitalizations for depression in 2006. *Id.* What these records fail to reveal, however, is how plaintiff's functioning was impacted by these conditions. Moreover, plaintiff maintains that he suffered from mental illness and drug addiction since 1986. It is unknown what part these conditions played in plaintiff's

failure to pursue this action in a timely fashion. Nothing in the complaint or plaintiff's memorandum of law indicates what level of functioning he was capable of between the time he received defendant's letter in December 2003 and when the statute of limitations ended three years later. Nor is it clear when plaintiff's alleged insanity ceased. [4] In the absence of such information, it cannot be determined, as a matter of law, whether plaintiff's condition during the relevant time period met the high standard of "insanity" for purposes of section 208's tolling provision.

**\*5** Courts often conduct evidentiary hearings to determine whether a plaintiff's condition constitutes insanity. *See, e.g., Shonowsky v. City of Norwich,* No. 3:10–CV–745, 2010 WL 4609305, at \*2–3 (N.D .N.Y. Nov. 4, 2010) (McAvoy, S.J.) (reserving decision pending a hearing on whether plaintiff's mental condition warrants tolling under section 208); *Kelly v. Solvay Union Free Sch. Dist.,* 116 A .D.2d 1006, 1006 (N.Y.1986) ("[U]nless the proof of insanity is conclusive, the court should conduct a fact-finding hearing to determine the extent of plaintiff's disability."). Such a hearing may be necessary in this case if not for the fact that plaintiff's claim can, and will, be dismissed on the merits.

Accordingly, the statute of limitations issue need not be decided for purposes of this motion.

### E. *Due Process Claim*

McAdoo's due process claim is simply that defendant refused to hold a final parole revocation hearing in New York within 90 days of his request for such a hearing to occur in his absence. [5]

In order to survive a motion to dismiss a due process claim under § 1983, a plaintiff "must allege the deprivation of a constitutionally protected interest." *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir.2002). The Supreme Court has held that parole revocation impacts a protected liberty interest. *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2601 (1972). Parolees must be provided both a preliminary hearing to determine the existence of probable cause that a violation has occurred and a final revocation hearing— affording the parolee notice, an opportunity to be heard and confront witnesses, and an impartial hearing officer—within "a reasonable time" thereafter. *Id.* at 488, 92 S.Ct. at 2603–04.

New York law dictates that final parole revocation hearings generally must be held within 90 days of the probable cause

determination or, as in this case, the date on which the parolee waived his right to a preliminary hearing. N.Y. EXEC. LAW § 259–i(3)(f)(i). However, New York parolees who are supervised in other states—and subsequently incarcerated in such other states on new criminal charges—are not entitled to a final revocation hearing until they return to New York. *Id.* § 259–o(4); *see also People ex rel. Freeman v. Warden of Anna M. Kross Ctr.,* 208 A.D.2d 478, 478 (N.Y.App. Div. 1st Dep't 1994) (interpreting section 259–o(4) "to mean that *all* New York parole violators who [have] been released to other States pursuant to Executive Law § 259–m, and who [are] later incarcerated in such States, [are] not entitled to final parole revocation hearings until within 90 days after their return to New York" (internal quotation marks and alterations omitted)).

Therefore, McAdoo was not entitled to a final revocation hearing while he remained in custody in Florida. *See Noble v. N.Y. Div. of Parole,* 35 A.D.3d 979, 980 (N.Y.App. Div.3d Dep't 2006) (holding that the DOP "is not obligated to provide petitioner with a preliminary or final parole revocation hearing until he completes his sentence in [another state] and that state relinquishes custody of him"). Plaintiff does not allege that defendant failed to conduct a final revocation hearing within 90 days of his return to New York. Indeed, as noted above, plaintiff does not provide any facts concerning his return to New York, how his parole was formally revoked, or when his sentence was "extended."

**\*6** Accordingly, plaintiff's due process claim will be dismissed.

### F. *Qualified Immunity*

Defendant argues that she is entitled to qualified immunity, which generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). However, if no constitutional right would have been violated were the allegations established, "there is no necessity for further inquiries concerning qualified immunity." *Los Angeles Cnty. v. Rettele,* 550 U.S. 609, 616, 127 S.Ct. 1989, 1994 (2007) (internal quotation marks omitted).

Accordingly, the issue of qualified immunity need not be addressed because, as discussed above, plaintiff fails to allege a plausible constitutional claim against Jagiello.

### G. *Defendant's Request for a Protective Order*

Finally, defendant requests an order pursuant to Federal Rule of Civil Procedure 26(c) staying discovery pending the outcome of this motion to dismiss. Rule 26(c) authorizes a court to issue an order protecting a party from, *inter alia,* "undue burden or expense." Fed.R.Civ.P. 26(c)(1). Further, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 2209 (1984).

As the complaint will be dismissed in its entirety, good cause exists to protect Jagiello from further undue burden and expense. Accordingly, discovery will be stayed in the event an appeal of this order is taken.

### IV. *CONCLUSION*

Accepting plaintiff's allegations as true and making all reasonable inferences in his favor, he fails to state a plausible claim on which relief can be granted. Defendant's refusal to conduct a final parole revocation hearing in plaintiff's absence within 90 days of his request for such a hearing did not amount to a deprivation of McAdoo's due process rights. Indeed, McAdoo was not entitled to a final revocation hearing until he returned to New York.

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss is GRANTED;

2. Plaintiff's complaint is DISMISSED in its entirety; and

3. Defendant's motion for a stay of discovery pending the ultimate outcome of this motion is GRANTED.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 1577236

---

### Footnotes

1    Plaintiff does not explain how his sentence was extended. Also noticeably missing from the complaint are the terms of his Florida sentence, how long he remained incarcerated in Florida, when he returned to New York, when—if ever—a final parole revocation hearing was held, and whether he was reincarcerated in New York.

2    Nor could McAdoo succeed on a claim that his parole revocation was improper. McAdoo admits in his complaint that he was found guilty of the drug charges following a jury trial in Florida. Compl ., Dkt. No. 1, ¶ 6(4). As it is well-established that a parolee's conviction of another crime "is adequate, in and of itself, to support a revocation" of parole, a challenge to the actual revocation of plaintiff's parole would fail. *People ex rel. Maggio v. Casscles,* 28 N.Y.2d 415, 418 (N.Y.1971).

3    The *McCarthy* Court noted that the term "insanity" was intentionally used instead of the phrase "mental illness" to prevent "unwarranted extensions of the time within which to commence an action." *Id.*

4    McAdoo's alleged insanity obviously ended as he was able to file this action in March 2010 as a *pro se* plaintiff.

5    In support of this claim, plaintiff cites *White v. N.Y. Div. of Parole,* 60 N.Y.2d 920 (N.Y.1983). In *White,* the New York Court of Appeals held that Executive Law section 259–i "required" the Division of Parole to proceed with a final revocation hearing in plaintiff's absence within 90 days of his knowing and intelligent waiver of his right to be present at the hearing. *Id.* at 922. Case law at the time of this holding required strict compliance with the 90–day time limit—even if the parole violator was imprisoned in a different state. *See People ex rel. Gonzales v. Dalsheim,* 52 N.Y.2d 9, 14–15 (N.Y.1980) (cited and relied on by the *White* Court).

In response to these strict holdings, the legislature amended the Executive Law in 1984 "to bring New York law into congruence with the broader Federal due process requirements." *People ex rel. Brown v. N.Y. Bd. of Parole,* 139 A.D.2d 548, 550 (N.Y.App. Div.2d Dep't 1988); *see also People ex rel. Matthews v. N.Y. Div. of Parole,* 95 N.Y.2d 640, 645 (N.Y.2001) (noting that the law was amended "to facilitate the prosecution of parole violators held in out-of-state facilities"). As explained below, the amendments provided for the tolling of the 90–day requirement until the parole violator returned to New York. *See* N.Y. EXEC. LAW § 259–o(4) (effective November 1, 1984). Therefore, McAdoo's reliance on *White* is misplaced.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Chung v. Stanford, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 35 of 129

2023 WL 3073497
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sean M. CHUNG, Plaintiff,
v.
Tina STANFORD, et al., Defendants.

9:22-CV-1236 (GTS/DJS)
|
Signed April 25, 2023

**Attorneys and Law Firms**

SEAN M. CHUNG, 16-A-1495, Plaintiff, pro se, Marcy
Correctional Facility, P.O. Box 3600, Marcy, NY 13403.

**DECISION AND ORDER**

GLENN T. SUDDABY, United States District Judge

**I. INTRODUCTION**

 **\*1** Plaintiff Sean M. Chung commenced this action pro se by
filing a civil rights complaint asserting claims pursuant to 42
U.S.C. § 1983 ("Section 1983"), together with an application
to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl.");
Dkt. No. 5 ("IFP Application"). By Decision and Order
entered on January 17, 2023, the Court granted plaintiff's IFP
Application and, following review of the complaint pursuant
to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b),
dismissed plaintiff's claims without prejudice for failure
to state a claim upon which relief may be granted. Dkt. No. 7
("January 2023 Order"). In light of his pro se status, plaintiff
was afforded an opportunity to submit an amended complaint.
*Id.* at 14-15.

Presently before the Court is plaintiff's amended complaint.
Dkt. No. 11 ("Am. Compl.").

**II. SUFFICIENCY OF THE AMENDED COMPLAINT**

Because plaintiff is an inmate suing one or more government
employees, his amended complaint must be reviewed in
accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C.
§ 1915A(b). The legal standard governing the review of a
pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C.
§ 1915A(b) was discussed at length in the January 2023 Order

and it will not be restated herein. *See* January 2023 Order at
2-4.

**A. The Original Complaint and January 2023 Order**
In his original complaint, plaintiff asserted claims against
the New York State Board of Parole and Board of Parole
Chairwoman Tina Stanford based on the denial of his
parole in July, 2022, and his continued confinement in the
custody of the New York State Department of Corrections
and Community Supervision ("DOCCS") thereafter. *See
generally* Compl.

The complaint was construed to assert Eighth and Fourteenth
Amendment claims based on plaintiff's denial of parole and
continued incarceration, and Fourteenth Amendment claims
based on Panel Members denying plaintiff the process to
which he was entitled at his parole hearing. *See* January
2023 Order at 6.

After reviewing the complaint pursuant to 28 U.S.C. §
1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court dismissed
plaintiff's Section 1983 claims without prejudice for failure
to state a claim upon which relief may be granted, based
on a determination that (1) plaintiff's Section 1983 official
capacity claims for money damages were barred by the
Eleventh Amendment, (2) plaintiff's Section 1983 claims
were barred under *Heck v. Humphrey,* 512 U.S. 477
(1994) and its progeny insofar as plaintiff sought immediate
release from prison or other relief based on his continued
incarceration following the denial of parole, and (3) the
complaint failed to adequately allege that the procedures
associated with plaintiff's parole review were constitutionally
deficient. *See* January 2023 Order at 7-14.

**B. Overview of the Amended Complaint**
Plaintiff's amended complaint is materially similar to his
original complaint, except that the amended complaint names
Elsie Segarra and Eric Berliner, the two Board of Parole
Commissioners who denied him parole, as defendants in
addition to the Board of Parole, and in place of Chairwoman
Stanford, and provides additional allegations in support of
the previously dismissed claims. *See generally,* Am. Compl.
Plaintiff also submitted several exhibits with his amended
complaint, including the Parole Board Release Decision
Notice dated July 27, 2022, denying plaintiff parole. *See
generally,* Am. Compl.; Dkt. No. 11-1.

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 36 of 129

Chung v. Stanford, Not Reported in Fed. Supp. (2023)

**\*2** While none of plaintiff's new allegations or exhibits are material to the Court's analysis below, the following relevant facts are set forth as alleged in the amended complaint or indicated in documents attached thereto.

On July 21, 2020, plaintiff appeared before Board of Parole Commissioners Smith and Crangle (not parties) for a parole release interview. *See* Dkt. No. 11-1 at 30-32. Following the interview, plaintiff was denied parole, and his next parole hearing was scheduled for two years later. *Id.* at 32-33.

On or about July 27, 2022, plaintiff attended his second parole release interview, which was conducted by Segarra and Berliner. *See* Am. Compl. at 4-5; Dkt. No. 11-1 at 24-28. Following the interview, plaintiff was denied parole. Dkt. No. 11-1 at 25.

The written "Release Decision Notice" states that plaintiff was denied parole based on a determination, following a review of the record and plaintiff's personal interview, that "there is a reasonable probability that [plaintiff] would not live and remain at liberty without again violating the law, and that [his] release would be incompatible with the welfare of society." Dkt. No. 11-1 at 25. The document also offers the following in further support of the Parole Board's determination.

Plaintiff was convicted of second degree criminal possession of a weapon and second degree conspiracy, admitted to the panel that he possessed a revolver and shot five rounds at another person,[1] made posts on Facebook "advertising taking revenge on a rival gang member in retaliation for the murder of a fellow gang member[,]" admitted during his interview that he conspired to kill someone, acknowledged that he was a gang member prior to his incarceration and has remained "heavily involved in gangs" during his incarceration, has a youthful offender adjudication before his current incarceration, and has an extensive prison disciplinary record, which includes discipline for "violent and aggressive behaviors towards others even after [his] last appearance before the [Parole] Board." Dkt. No. 11-1 at 25-26.

The document expressly references plaintiff's completion of vocational programming, enhanced education, employment as a library clerk, and participation in certain programs and receipt of certain certificates, commends plaintiff for these achievements, and notes that plaintiff's resume, letters of support, and certifications were also considered as part of the parole review. *Id.* at 26. In addition, the document states that plaintiff's "COMPAS risk and needs assessment" was reviewed, and shows that he "presents ... as a high risk of felony violence, low risk of arrest[,] and low risk to abscond[,]" and "scores [plaintiff's] prison misconduct" as demonstrating a continued "disregard [for] the safety and well-being of others[.]" *Id.* at 25-26. The document explains that plaintiff's continued participation in the programs in which he is enrolled, as well as his participation in ART, "could ... help [him] obtain [his] case plan goal to decrease [his] aggressive/assaultive behaviors that have negatively impacted [his] life and that of [his] victims." *Id.* at 26. Finally, the document indicates that the panel "weighed and considered the statutory factors and determined that [plaintiff's] release at this time would be inappropriate." *Id.*

**\*3** According to plaintiff, defendants Segarra and Berliner improperly based their decision primarily on his criminal offense, "which in reality was shown to be an illegal sentence pending direct appeal," and "failed to follow New York State's interpretation of Section 259-i(2)(c)(A)" or "consider ... the sentencing judge[']s admission" that "no evidence of a crime was committed." Am. Compl. at 5.

Liberally construed, the amended complaint asserts the following Section 1983 claims: (1) Eighth Amendment claims against Elsie Segarra, Eric Berliner, and the Board of Parole based on plaintiff's continued incarceration following his parole hearing in July, 2022; and (2) Fourteenth Amendment due process claims against Elsie Segarra, Eric Berliner, and the Board of Parole based on the parole review process and denial of parole. Plaintiff seeks money damages and prospective injunctive relief. Am. Compl. at 1, 10.

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### C. Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 37 of 129

Chung v. Stanford, Not Reported in Fed. Supp. (2023)

### 1. *Heck v. Humphrey*

As noted in the January 2023 Order, in *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

512 U.S. at 486-87.

Although *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily imply the invalidity of the *conviction*," 512 U.S. at 487 (emphasis added), the Supreme Court subsequently clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate the underlying conviction or sentence, *see Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis in original)); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (finding that a prisoner's claim for money damages alleging that he was deprived of good-time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits); *Baker v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:17-CV-1270 (GTS/TWD), 2018 WL 357297, at *4 (N.D.N.Y. Jan. 10, 2018) ("While the Complaint does not include any specific request for immediate release, in the motion for injunctive relief, Plaintiff seeks to overturn the Panel's decision and moves for immediate release.... To the

extent that the Complaint could be construed as seeking release, Plaintiff's claims are dismissed without prejudice pursuant to *Heck*, on the ground that habeas corpus is his sole federal remedy."); *McAllister v. Alexandra*, No. 9:09-CV-0664 (GTS/DRH), 2009 WL 10675934, at *5 (N.D.N.Y. July 28, 2009) ("Any claim by Plaintiff that he is entitled to damages resulting from the denial of parole release is barred by the doctrine of *Heck v. Humphrey*[.]"); *Grant v. Ahern*, No. 03-CV-0539 (FJS/RFT), 2005 WL 1936175, at *5 n.3 (N.D.N.Y. Aug. 2, 2005) ("*Heck* has been held to apply to 'suits contesting the rejection of parole release.' " (quoting *Lampkin v. N.Y. City Dep't of Probation*, No. 00-CV-7165, 2001 WL 210362, at *2 (S.D.N.Y. Mar. 1, 2001)).

**\*4**  Thus, to the extent plaintiff seeks monetary relief based on his continued incarceration after he was denied parole in July, 2022, or his immediate release from prison, his Section 1983 claims are barred by *Heck* and its progeny. Accordingly, and for the reasons stated in the January 2023 Order, these Section 1983 claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Remaining Fourteenth Amendment Claim

Insofar as plaintiff seeks only to challenge procedural inadequacies associated with his parole hearing in July, 2022, his due process claim is not barred by *Heck* and its progeny -- as also noted in the January 2023 Order -- because a determination that plaintiff was denied the process to which he was entitled at his parole hearing would not entitle him to immediate release but rather only a new hearing, where he could once again be denied parole. *See* January 2023 Order at 10 (citing *Wilkinson*, 544 U.S. at 82 (noting in the parole context that a prisoner may challenge the parole procedures used to deny eligibility and suitability because success on such claim will not affect the prisoner's sentence through mandated release and would only entitle him to another parole hearing)).

Having said that, as this Court explained in the January 2023 Order, "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release[,]" and therefore "[a]n inmate's federally-protected liberty interest in parole release is limited to not being denied parole for arbitrary or impermissible reasons." *See* January 2023 Order at 11 (citations in original).

Case 3:24-cv-00750-AMN-ML   Document 5   Filed 10/29/24   Page 38 of 129

Chung v. Stanford, Not Reported in Fed. Supp. (2023)

"Denial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute." *Romer v. Travis*, No. 03-CV-1670, 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003) (citing *Davis v. Thomas*, 256 F. Supp. 2d 190, 191 (S.D.N.Y. 2003) ("[D]enial of parole may be justified on the basis of reasonable considerations defined by statute, including the inmate's criminal history and seriousness of the offense for which he is in custody.")). That statute, Executive Law § 259-i, provides, in relevant part, as follows:

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the guidelines ... shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) [issues related to deportation]; and (v) any statement made to the board by the crime victim or the victim's representative ....

*Id.* § 259-i(2)(c)(A). "While consideration of these guidelines is mandatory, the ultimate decision to parole a prisoner is discretionary." *Graziano v. Pataki*, 689 F.3d 110, 113 (2d Cir. 2012) (per curiam) (quoting *Silmon v. Travis*, 95 N.Y.2d 470, 477 (2000)).

**\*5** As with the original complaint, the amended complaint offers only conclusory allegations that plaintiff was denied parole release "arbitrarily" or "capriciously." The pleading does not, for example, allege any facts which plausibly suggest that plaintiff was denied parole as a result of "an inappropriate consideration of a protected classification (such as race, religion, gender, economic status, etc.) or an 'irrational distinction.' " *McAllister*, 2009 WL 10675934, at *5 n.12 (quoting *Standley v. Dennison*, No. 05-CV-1033, 2007 WL 2406909, at *1 (N.D.N.Y. Aug. 21, 2007)). Nor does the pleading allege any facts which plausibly suggest that plaintiff was denied parole based on inaccurate information. *See Hamilton v. New York City Mun.*, No. 9:11-CV-0348 (DNH/DEP), 2012 WL 398819, at *9 (N.D.N.Y. Jan. 10, 2012) ("[D]ue process may be violated when a parole decision is based upon inaccurate information." (citation omitted)), *report and recommendation adopted by* 2012 WL 386631 (N.D.N.Y. Feb. 7, 2012). Furthermore, the amended complaint does not specifically identify any statutory factors that were not considered by Segarra and Berliner, and the "Release Decision Notice" attached to the pleading indicates that all of the statutory factors were considered. *See* Dkt. No. 11-1 at 27. In other words, the crux of plaintiff's amended complaint is simply that Segarra and Berliner improperly afforded too much weight to plaintiff's conviction and prison disciplinary record, and not enough weight to factors that would support granting him parole.

As noted in the January 2023 Order, it was entirely appropriate to consider plaintiff's youthful offender adjudication, prison disciplinary history, and the nature of his underlying conviction in evaluating his entitlement to parole. *See* January 2023 Order at 13 (citing *Robles v. Dennison*, 449 Fed. Appx. 51, 53 (2d Cir. 2011)) ("New York Executive Law Section 259-i, [...], explicitly requires Parole Boards to consider the seriousness of the inmate's crime."); *Hodge v. Griffin*, No. 13-CV-1977, 2014 WL 2453333, at *13 (S.D.N.Y. June 2, 2014) ("The nature of the petitioner's crime bears on 'whether his release is compatible with the welfare of society ... and it was not arbitrary or capricious for the Board to determine that the severity of his offense outweighed the collection of the positive factors in support of his early release."); *Blackett v. Thomas*, 293 F. Supp. 2d 317, 319-20 (S.D.N.Y. 2003) (rejecting petitioner's contention that the Parole Board violated his due process rights by considering his prior record, including as a juvenile, the underlying crimes and conviction, his institutional record, and future plans); *Brown v. Thomas*, No. 02-CV-9257, 2003 WL 941940, at *2

Chung v. Stanford, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 39 of 129

(S.D.N.Y. Mar. 10, 2003) ("[W]here the record 'demonstrates that the Parole Board considered the relevant statutory factors, including petitioner's record in prison and postrelease plans, before concluding in its discretion that, due to the serious and violent nature of the crime and petitioner's other violent conduct, petitioner is not an acceptable candidate for release on parole,' reliance on the nature of the inmate's crime to deny parole is entirely consistent with the criteria laid down by the legislature."); *Robles v. Williams*, No. 02-CV-6102, 2007 WL 2403154, at *4 (S.D.N.Y. Aug. 22, 2007) ("[T]he Parole Board may consider all of the circumstances surrounding the conviction - including conduct for which petitioner has not been convicted." (internal quotation marks omitted)). The fact that plaintiff may disagree with the weight afforded to these factors does not render the review process and ultimate decision arbitrary or capricious. *See Amaker v. Schiraldi*, No. 15-CV-4879, 2017 WL 4402443, at *9-10 (E.D.N.Y. Sept. 29, 2017) ("Pursuant to the New York Executive Law, the parole board found a 'reasonable probability' that Plaintiff would violate the law again if released, and that his release would be 'incompatible with the welfare of society.' ... The board placed heavy emphasis on three statutory factors: 'the institutional record,' 'the seriousness of the offense,' and prior criminal history.... Placing substantial weight on such factors is neither arbitrarily nor impermissible."), *aff'd*, 812 Fed. App'x 21 (2d Cir. 2020); *Graziano v. Pataki*, 689 F.3d 110, 115 (2d Cir. 2012) ("[T]he Board ... is entitled to give whatever weight it deems appropriate to each of [the] statutory factors."); *Duffy v. Evans*, No. 11-CV-7605, 2012 WL 4327605, at *8 (S.D.N.Y. Sept. 19, 2012) ("New York Executive Law § 259-i lists a number of factors that the Board must consider in a parole determination. As the statute does not specify how much weight to be accorded to each factor, the 'Board has discretion to accord these considerations whatever weight it deems appropriate, and need not expressly discuss each of the reasons for its determination.' " (quoting *Manley v. Thomas*, 255 F. Supp. 2d 263, 267 (S.D.N.Y. 2003))). [2]

*6 Furthermore, insofar as plaintiff alleges that Segarra and Berliner "failed to follow" his "Compass Score" in evaluating his entitlement to parole, the "Release Decision Notice" makes clear that plaintiff's Correctional Offender Management Profile and Sanctions Risk and Needs Assessment ("COMPAS") profile was considered. *See* Dkt. No. 11-1 at 26-27. In any event, COMPAS is "[a] research based clinical assessment instrument ... used to assist staff in assessing an inmate's risks and needs by gathering quality and consistent information to support decisions about supervision, treatment, and other interventions." *See* https://doccs.ny.gov/system/files/documents/2020/11/8500.pdf (last visited Apr. 19, 2023). COMPAS is used to develop an inmate's Case Plan. *See id.* "The purpose of such plan [is] to promote the rehabilitation of the incarcerated individual and their successful and productive reentry and reintegration into society upon release." N.Y. Corr. Law § 71-A. The language in Section 71-A, "relates to the existence of programs and tools, and their respective goals." *Hodge v. Griffin*, No. 13-CV-1977, 2014 WL 2453333, at *2 (S.D.N.Y. June 2, 2014). The statute, "does not mandate the achievement of such goals with respect to each and every inmate, nor is there [a] provision in [...] the statute[ ] for a guarantee of release upon an individual inmate's successful completion of the educational programming." *Id.*

Simply put, while plaintiff clearly disagrees with the outcome of his parole review, other than conclusory allegations, the amended complaint is devoid of any facts which plausibly suggest that plaintiff was arbitrarily or capriciously denied parole. Accordingly, and for the reasons set forth in the January 2023 Order, to the extent plaintiff's Fourteenth Amendment due process claim is not barred by *Heck* and its progeny, it is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that this action alleging federal claims under Section 1983 is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. The Clerk is directed to terminate each of the defendants and close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3073497

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 40 of 129

Chung v. Stanford, Not Reported in Fed. Supp. (2023)

---

### Footnotes

1    In plaintiff's interview two years earlier, he stated that he was innocent of the charges that formed the basis of his criminal conviction. *See* Dkt. No. 11-1 at 30.

2    Insofar as plaintiff vaguely alleges that no evidence exists to support his criminal conviction, *see* Am. Compl. at 5, the amended complaint does not allege that plaintiff's conviction has been expunged, vacated, or reversed. Nor does the amended complaint allege that the statements in the "Release Decision Notice" prepared by Segarra and Berliner regarding plaintiff's admissions to criminal conduct are false, i.e., that he did not in fact admit to such criminal conduct. Thus, the Panel Board Members were unquestionably within their rights to consider plaintiff's crime of conviction, and the circumstances surrounding the conviction, in deciding plaintiff's entitlement to parole. *See, e.g., Hamilton v. New York City Mun.*, No. 9:11-CV-0348 (DNH/DEP), 2012 WL 398819, at *8-10 (N.D.N.Y. Jan. 10, 2012) ("Since plaintiff has no constitutional expectation to release on parole, and the Parole Board is statutorily empowered to consider plaintiff's crime of conviction when making a decision regarding parole, no due process cause of action is stated in his complaint, despite his profession of innocence."), *report and recommendation adopted by* 2012 WL 386631 (N.D.N.Y. Feb. 7, 2012); *Robles,* 2007 WL 2403154, at *4.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 41 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

2018 WL 357297
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ralph BAKER, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al., Defendants.

9:17-CV-1270 (GTS/TWD)
|
Signed January 9, 2018
|
Filed 01/10/2018

**Attorneys and Law Firms**

RALPH BAKER, 14-R-1962, Woodbourne Correctional Facility, 99 Prison Road, PO Box 1000, Woodbourne, NY 12788 Plaintiff, Pro se.

**DECISION AND ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Ralph Baker ("Plaintiff") commenced this action by filing a pro se Complaint pursuant to 42 U.S.C. § 1983. Dkt. No. 1 ("Compl."). Plaintiff, who is presently confined at Woodbourne Correctional Facility ("Woodbourne C.F."), has paid the full filing fee of $400.00. Plaintiff also filed a motion for preliminary injunctive relief. Dkt. No. 2.

**II. INITIAL SCREENING**

Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see also Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Hudson v. Artuz, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting Powell v. Marine Midland Bank, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. Sheehy v. Brown, 335 Fed.Appx. 102, 104 (2d Cir. 2009).

**\*2** While pro se parties are held to less stringent pleading standards, the Second Circuit has held that "district courts may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the required filing fee." See Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000). Indeed, "district courts are especially likely to be exposed to frivolous actions and, thus, have [a] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." Id. A cause of action is properly deemed frivolous "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 42 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

## III. SUMMARY OF THE COMPLAINT [1]

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, No. 93 Civ. 6941, 885 F.Supp. 537, 573 (S.D.N.Y. May 8, 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

Plaintiff commenced this civil rights action arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff names five defendants in the caption and the list of parties: DOCCS; Commissioners of Parole Tina Stanford ("Stanford"), Joseph P. Crangle ("Crangle"), and Marc Coppola ("Coppola"); and Commissioner of Correctional Services Glenn S. Goord ("Goord"). *See* Compl. at 1-3. Plaintiff's claims are asserted against the individual defendants in their official capacity. *See id.*

In September 2014, Plaintiff was convicted of Grand Larceny, Attempted Grand Larceny, and Offering a False Instrument and sentenced to serve an aggregate term of imprisonment of four to twelve years. Compl. at 5; Dkt. No. 2 at 1; Dkt. No. 2-4 at 27. On December 16, 2015, Plaintiff appeared, via video conference, for a Parole Board Hearing ("the Hearing"). Compl. at 4.; Dkt. No. 2-4 at 1. The Parole Board Panel ("the Panel") included Stanford, Crangle, and Coppola. Dkt. No. 2-4 at 1. During the Hearing, the Panel presented questions related to Plaintiff's convictions. Compl. at 4, 5. The Panel denied Plaintiff parole and ruled in favor of continued confinement for twenty-four months. *Id.* at 5; Dkt. No. 2-4 at 15. The Panel considered the seriousness of Plaintiff's offense, Plaintiff's disciplinary and programming record, Plaintiff's

demeanor during the hearing, and Plaintiff's failure to take responsibility for his actions. [2] Dkt. No. 2-4 at 15-16.

**\*3** Construed liberally, Plaintiff claims that: (1) Defendants subjected him to an unlawful Parole Board Hearing in violation of his constitutional rights; and (2) his Eighth Amendment rights were violated due to deliberate indifference to his serious medical needs. *See* Compl. at 5. Plaintiff seeks injunctive relief restraining defendants from "practicing, policy, and procedure of Executive Law § 259-i and 7 NYCRR § 251.2-2." [3] *See id.* at 5.

## IV. ANALYSIS

### A. Parole Hearing

Plaintiff claims that the Panel's decision was "arbitrary and capricious" because the Panel failed to develop a Transitional Accountability Plan ("TAP") as required by Corrections Law § 71-a and failed to consider his COMPAS risk assessment. [4] Dkt. No. 2-4 at 28, 29. Plaintiff also asserts that the Panel erroneously placed emphasis on the severity of his criminal history without considering mitigating factors including Plaintiff's conduct during incarceration. *Id.* at 30-33.

**\*4** In order to state a valid Section 1983 claim for violating the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege he or she was deprived of life, liberty, or property without due process of law. *See Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Heck v. Humphrey*, 512. U.S. 477 (1984), the Supreme Court held that a Section 1983 action seeking money damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486–87. [5] "*Heck* uses the word 'sentence' interchangeably with ... 'continuing confinement' and 'imprisonment,' " thus, any shortening of a term of confinement will be subject to the rule in *Heck*. *Wilkinson v. Dotson*, 544 U.S. 74, 83–84 (2005) (quoting *Heck*, 512 U.S. at 483, 486) (other citation omitted); *see also Jude v. New York State*, No. 07 Civ. 5890, 2009 WL 928134, at *6 (S.D.N.Y. Mar. 30, 2009) (citing cases). Indeed, an inmate's Section 1983 action is barred by *Heck* "(absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration."

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 43 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

*Wilkinson*, 544 U.S. at 81–82 (emphasis in original); *see also Bodie v. Morgenthau*, 342 F.Supp.2d 193, 201 (S.D.N.Y. 2004) (denying plaintiff's request for injunctive relief where plaintiff sought "to compel specific action pertaining to the content of [his] parole records"). *Heck* does not bar 1983 actions that do not "spell immediate or speedier release for plaintiff" or a request for prospective injunctive relief. *See Wilkinson*, 544 U.S. at 82; *Boddie v. N.Y.S. Div. of Parole*, No. 08-CV-911, 2009 WL 1033786, at *1 (E.D.N.Y. Apr. 17, 2009).

Plaintiff is presently in DOCCS' custody and was in DOCCS' custody when he filed this civil action. *See* Compl., *generally*. While the Complaint does not include any specific request for immediate release, in the motion for injunctive relief, Plaintiff seeks to overturn the Panel's decision and moves for immediate release. *See* Dkt. No. 2-4 at 35. To the extent that the Complaint can be construed as seeking release, Plaintiff's claims are dismissed without prejudice pursuant to *Heck*, on the ground that habeas corpus is his sole federal remedy. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *see also Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir. 1994) ("habeas corpus —not a § 1983 action—provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment[.]"); *Hall v. NYS Division of Parole*, 225 F.3d 645 (table), 2000 WL 1186256 at *2 (2d Cir. Aug. 21, 2000) (suit for declaratory and injunctive relief and damages, challenging constitutionality of parole guidelines dismissed; claims could only be brought as habeas petition); *Jenkins v. Daubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only [habeas relief under 28 U.S.C.] § 2254(b) with its exhaustion requirement may be employed."); *see also Bodie*, 342 F.Supp.2d at 202 (citing *Amaker v. Weiner*, 179 F.3d at 48, 52 (2d Cir. 1999)) (dismissal is without prejudice; if a plaintiff's conviction or sentence is later declared invalid or called into question by a federal court's issuance of a writ of habeas corpus, the suit may be reinstated). [6]

**\*5** Conversely, regarding Plaintiff's request to preclude Defendants from applying the standards set forth in Executive Law § 259-i and 7 NYCRR § 251-2.2 at future parole hearings, the Court is unable to conclude that Plaintiff's due process claims would be barred by *Heck*. *See Walker v. Mattingly*, No. 09-CV-845, 2010 WL 276748, at *2 (W.D.N.Y. Jan. 20, 2010); *see also Walker*, No. 09-CV-845, Decision and Order, Dkt. No. 5 at 5 (W.D.N.Y. Oct. 29, 2009) (citing *Wilkinson* for the proposition that the plaintiff's claims challenging the procedural grounds upon which his parole was denied may be viable under § 1983). [7]

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "[T]he mere fact that [plaintiff] has been denied parole does not violate any provision of the Constitution, much less the Eighth Amendment." *Sheppard v. New York State Div. of Parole*, No. 10 CIV. 5376, 2011 WL 2610695, at *4 (S.D.N.Y. June 28, 2011). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171.

Plaintiff claims he was improperly denied parole because the Panel failed to develop a TAP, failed to consider his COMPAS risk assessment, and erroneously placed emphasis on the "severity of his offense and criminal history." *See* Compl. at 4-5; Dkt. No. 2-4 at 30. "An inmate's federally-protected liberty interest in parole release is limited to not being denied parole for arbitrary or impermissible reasons." *Villalobos v. New York Div. of Parole*, No. 09 CIV 8431, 2010 WL 3528926, at *3 (S.D.N.Y. Aug. 23, 2010) *appeal dismissed and remanded sub nom. Villalobos v. New York State Div. of Parole*, 475 Fed.Appx. 400 (2d Cir. 2012). However, "[d]enial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute." *Romer*, 2003 WL 21744079, at *6 (citing *Davis v. Thomas*, 256 F. Supp. 2d 190, 191 (S.D.N.Y. 2003) ("[D]enial of parole may be justified on the basis of reasonable considerations defined by statute, including the inmate's criminal history and seriousness of the offense for which he is in custody.")) (other citation and footnote omitted). "The arbitrary or capricious reasons must be based on inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds." *Mabry v. Cuomo*, No. 11 CIV. 4456, 2012 WL 1711549, at *2 (S.D.N.Y. May 9, 2012) (citation omitted).

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 44 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

With respect to Plaintiff's arguments related to TAP and COMPAS, New York Correction Law § 71-does not create a liberty interest in parole. The language in section 71-a, "relates to the existence of programs and tools, and their respective goals." *Hodge v. Griffin*, No. 13 CIV. 1977, 2014 WL 2453333, at *2 (S.D.N.Y. June 2, 2014). The statute, "does not mandate the achievement of such goals with respect to each and every inmate, nor is there [a] provision in [...] the statute[ ] for a guarantee of release upon an individual inmate's successful completion of the educational programming." *Id.* (the petitioner's argument that his right to rehabilitation was violated in connection with the denial of parole, based upon section 71-a and other sections of the New York Correction Law was meritless).

**\*6** Here, the Panel relied upon "discipline and program participation, [Plaintiff's] risk and needs assessment, and [Plaintiff's] needs for successful reentry into the community." Dkt. No. 2-4 at 15. The Panel also considered Plaintiff's criminal history, failure to complete programming, and "poor" disciplinary record including keep lock time and "other sanctions." *Id.* at 15-16. The Panel concluded that Plaintiff's behavior during the hearing suggested that he was a "victim and took no responsibility for [his] actions and minimized [his] previous unlawful behavior." *Id.* at 16. "New York Executive Law Section 259-i, [...], explicitly requires Parole Boards to consider the seriousness of the inmate's crime." *Robles v. Dennison*, 449 Fed.Appx. 51, 53 (2d Cir. 2011) (New York's courts have interpreted Section 259–i(2)(c)(A) to allow the denial of parole based on the severity of the offense of conviction); *see also Hodge*, 2014 WL 245333, at *13 ("[t]he nature of the petitioner's crime bears on 'whether his release is compatible with the welfare of society ...' "). While Plaintiff disagrees with the Panel's decision, other than conclusory allegations, the Complaint is void of any facts or argument to plausibly suggest that Plaintiff was denied release arbitrarily or capriciously.

Accordingly, because Plaintiff has failed to establish that he enjoyed a protected liberty interest in parole release, the alleged deficiencies in the consideration of his parole do not state a claim upon which relief can be granted under 42 U.S.C. § 1983 and is dismissed without prejudice.

## B. Medical Claims

Plaintiff claims that he is "totally blind" and that he did not receive any medical treatment for his eyes until 2015.[8] Dkt. No. 2-4 at 3. "It is well settled that, in

order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[9] Plaintiff cannot premise Section 1983 liability on a defendant's position in the prison hierarchy. *See Colon*, 58 F.3d at 874. "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citations and internal quotations omitted).

**\*7** Here, the Complaint is void of factual allegations suggesting that any named defendant was personally involved in Plaintiff's medical treatment. In the absence of factual allegations sufficient to plausibly suggest that defendants were personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against them and is subject to dismissal. *See Cipriani v.*

*Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff") (citation omitted).

## V. MOTION FOR INJUNCTIVE RELIEF

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "[T]his circuit has required a party seeking a preliminary injunction to show: (a) irreparable harm and (b) either (1) a substantial likelihood of success on the merits of the claim, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (internal quotation marks omitted). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Moore*, 409 F.3d at 511.

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Levesque v. Clinton County*, No. 10-CV-787 (DNH/DEP), 2012 WL 6948779, at *11 (N.D.N.Y. Dec. 28, 2012) (citing *inter alia Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)) (holding that a preliminary injunction may not be issued to prevent an injury or harm which was not caused by the wrong claimed in the underlying action); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or

sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" him).

Here, Plaintiff seeks an order preventing the Parole Board from using "boilerplate" language in future decisions and from considering Plaintiff's criminal history, including the Presentence Investigation Report. [10] Dkt. No. 2 at 1; Dkt. No. 2-1 at 1-2; Dkt. No. 2-2 at 1-2. Plaintiff also seeks to restrain the Parole Board from applying Executive Law § 259-i at future Parole Board Hearings. *Id.* As Plaintiff seeks a mandatory injunction, he must meet the higher standard and establish a clear or substantial likelihood of success of show that extreme or very serious damage would result in the absence of the requested relief. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Construing Plaintiff's motion in the light most favorable to him as a pro se litigant, the Court finds that he has failed to substantiate any allegations of irreparable harm with evidence in admissible form. At this juncture, Plaintiff has failed to assert any viable cause of action and all allegations in the Complaint have been dismissed. Moreover, in his motion for injunctive relief, Plaintiff fails to provide any specific facts establishing the likelihood of success on the merits or extreme or serious damage. For the foregoing reasons, Plaintiff's motion for preliminary injunctive relief (Dkt. No. 2) is denied.

## VI. CONCLUSION

 **\*8 WHEREFORE**, it is hereby

**ORDERED**, that pursuant to the Court's review under 28 U.S.C. § 1915A, Plaintiff's claims are **DISMISSED without prejudice** for failure to comply with the pleading standards and state a claim; and it is further

**ORDERED** that if Plaintiff wishes to proceed with this action, he must file a signed amended complaint that cures the pleading defects identified above in this Decision and Order; and it is further

**ORDERED** that, upon Plaintiff's full compliance with this Decision and Order, the Clerk shall return the file to this Court further review; and it is further

**ORDERED** that if Plaintiff fails to fully comply with the terms of this Decision and Order **within thirty (30) days** from its filing date, the Clerk shall enter Judgment indicating that this action is **DISMISSED, without further order of this**

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 46 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

Court, pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that, upon Plaintiff's motion for injunctive relief (Dkt. No. 2) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 357297

---

## Footnotes

1    In the Complaint, Plaintiff cites to pages and lines of the Parole Board Hearing transcript. *See* Compl., *generally*. The transcript is annexed to Plaintiff's Motion for a Temporary Restraining Order. *See* Dkt. No. 2-4.

2    Plaintiff's next Parole Hearing is scheduled for March 2018. *See* http://nysdoccslookup.doccs.ny.gov (last visited Jan. 2, 2018).

3    Executive Law § 259-i provides, in pertinent part:

Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department and any recommendation regarding deportation made by the commissioner of the department pursuant to section one hundred forty-seven of the correction law; (v) any current or prior statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

N.Y. Exec. Law § 259-i.

7 NYCRR § 251-2.2 is entitled "Function of the review officer" and involves the review of misbehavior reports. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 251-2.2.

4    New York Corr. Law § 71-a provides:

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 47 of 129

Upon admission of an inmate committed to the custody of the department under an indeterminate or determinate sentence of imprisonment, the department shall develop a transitional accountability plan. Such plan shall be a comprehensive, dynamic and individualized case management plan based on the programming and treatment needs of the inmate. The purpose of such plan shall be to promote the rehabilitation of the inmate and their successful and productive reentry and reintegration into society upon release. To that end, such plan shall be used to prioritize programming and treatment services for the inmate during incarceration and any period of community supervision. The commissioner may consult with the office of mental health, the office of alcoholism and substance abuse services, the board of parole, the department of health, and other appropriate agencies in the development of transitional case management plans.

N.Y. Corr. Law § 71-a.

COMPAS is a risk-assessment instrument used to "inform decision-making throughout the various phases of incarceration and community supervision." *See* www.doccs.ny.gov (last visited Nov. 3, 2015). COMPAS is used to develop an Inmate's Case Plan or TAP, which is reviewed quarterly. *See id.*

5    Absent such a showing, an inmate may only seek relief in the federal courts through a petition for habeas corpus. *See Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999).

6    The Court will not sua sponte convert this action into a petition for habeas corpus relief. *See Romer v. Travis*, No. 00 CIV 8671, 2001 WL 220115, at *3 (S.D.N.Y. Jan. 31, 2001) ("Conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated.")

7    In *Walker*, the Court noted that "[w]hile one would presume that plaintiff would be seeking his immediate release from the alleged delay in his release," the plaintiff had not pled as such. *Walker*, No. 09-CV-845, Decision and Order, Dkt. No. 5 at 5. The Court took "no position" as to the merits of the plaintiff's claims and directed the defendants to address *Heck* and *Wilkinson* in responsive pleadings. *Id.*

8    It is unclear what relief, if any, Plaintiff is seeking with respect to any Eighth Amendment claim.

9    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

10   To the extent that Plaintiff seeks an order of this Court directing his immediate release from civil commitment, that request is denied. *See* Dkt. No. 2-4 at 35. Plaintiff may seek release only in a petition for a writ of habeas corpus; he may not seek such relief in a Section 1983 suit. *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) (noting that federal habeas corpus review is used to challenge the legality of a state court order of civil commitment); *Buthy v. Comm'r of Office of Mental Health of N.Y.S.*, 818 F.2d 1046, 1051 (2d Cir. 1987) (petitioning for a writ of habeas corpus, after fully exhausting state court remedies, is the appropriate method for an individual to challenge the fact or duration of his involuntary civil commitment in a forensic unit of a psychiatric hospital) (citing*, inter alia, Souder v. McGuire*, 516 F.2d 820, 823 (3d Cir. 1975)) ("There is no question about the appropriateness of habeas corpus as a method of challenging involuntary commitment to a mental institution."); *O'Beirne v. Overholser*, 287 F.2d 133, 136 (D.C. Cir. 1960) ("Habeas corpus is the

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 48 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

traditional means of seeking release from illegal confinement. It is the normal means in this jurisdiction of testing the legality of detention in a mental hospital, whether based on civil or criminal proceedings.").

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by McAdoo v. Jagiello, N.D.N.Y., April 26, 2011

1999 WL 767426

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Dennis SUMTER, Plaintiff,

v.

Kevin MARION, individually and in his official capacity as New York State Parole Officer, Bronx, New York, and Morris Smith, individually and in his official capacity as New York State Parole Officer, Bronx, New York, and Trina Martin, individually and in her official capacity as New York State Parole Revocation Specialist, and Grace Bernstein, individually and in her official capacity as Administrative Law Judge, Rikers Island Judicial Center, Defendants.

No. 98 CIV. 2744(RPP).

|

Sept. 28, 1999.

**Attorneys and Law Firms**

Dennis Sumter, Bronx, for Plaintiff Pro Se.

Eliot L. Spitzer, Attorney General, State of New York, Department of Law, Attn Christine A. Thompson, Asst. Atty. Gen'l, New York.

OPINION AND ORDER

PATTERSON, D.J.

 **\*1** Dennis Sumter, a pro se plaintiff, has filed this civil rights action against two parole officers, a parole revocation specialist, and an Administrative Law Judge based on numerous alleged violations of constitutional rights and conspiracy arising from the revocation of his parole. Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In its opposition papers, plaintiff has moved for summary judgment pursuant to Rule 56, with which he included materials outside the pleadings. Consequently, the Court converted defendants' Rule 12(c) motion to a motion for summary judgment pursuant to Rule 56. (*See* Order of 7/16/99.) Before the Court now are defendants' motion for

summary judgment and plaintiff's cross motion for summary judgment. For the reasons that follow, defendants' motion is granted and plaintiff's cross motion is denied.

FACTUAL BACKGROUND

In 1981, plaintiff was convicted of First Degree Manslaughter, Criminal Possession of a Weapon in the Second Degree, Criminal Sale of a Controlled Substance in the Third Degree and Robbery in the First Degree. (Declaration of Christine A. Thompson dated July 29, 1999 (hereinafter "Thompson Decl."), Ex. A., Certificate of Release to Parole Supervision (hereinafter "Cert. of Parole"); Plaintiff's unsworn Affidavit in Support of Motion for Summary Judgment submitted April 15, 1999 (hereinafter "Pl.'s Aff."), Ex. A, Violation of Release Report (hereinafter "VRR") at 2.) He was sentenced to concurrent prison terms of 6–18 years, 5–15 years, 3 years and 4–12 years respectively for each conviction. The maximum term of his sentence expires on January 18, 2011. (Cert. of Parole.) The following facts are based on the Parole Revocation Hearing Transcript dated November 24, 1997 ("Thompson Decl., Ex. K"). On November 1, 1995, plaintiff was placed on parole. [1] (*Id.* at 74.) From November 1996 to August 1997, plaintiff was under the supervision of defendant Parole Officer ("P.O.") Morris Smith, plaintiff's reporting status required him to report to Smith at least once a month. (*Id.* at 33.) In May or June 1997, plaintiff tested positive for cocaine and could not be located at his residence. (*Id.* at 34, 60, 93) As a result, on or about June 17, Smith imposed a curfew on plaintiff. (*Id.* at 34.) During the June 17 office visit, Smith told plaintiff to report again on July 1. (*Id.* at 35–36.) Smith testified that Smith changed plaintiff from a monthly to a bi-weekly report schedule, but plaintiff denied receiving the instruction. (*Id.* at 43–44, 86–87.) On June 20, Smith requested an arrest warrant on plaintiff which was denied by Smith's supervisor. (*Id.* at 51–52.) Plaintiff testified, and Smith denied, that Smith told plaintiff that there was no need to keep the curfew as long as plaintiff was working at night. (*Id.* at 70, 87.)

Plaintiff failed to report on July 1, 1997. (*Id.* at 36.) Smith testified that plaintiff did not call him on that date. (*Id.* at 45–46.) Plaintiff testified to the contrary that he called Smith on July 1 from across the street from the office and spoke to Smith, who told plaintiff to report next week. (*Id.* at 96–98.) On or about July 4, Smith went on vacation and defendant Kevin Marion, Smith's partner, took over the supervision of plaintiff. (*Id.* at 47.) Before leaving, Smith told Marion that

plaintiff was his only parolee who had not reported and a report should be taken when plaintiff came in (*Id.* at 13, 47–48), and that plaintiff's next report date ("NRD") should be in two weeks, or on July 22, 1997. (*Id.* at 14, 26, 28.) Marion's understanding was that plaintiff was on a bi-weekly schedule. (*Id.* at 20.)

**\*2** On July 8, plaintiff reported to Marion who filled out an office report to Smith on plaintiff. (*Id.* at 13, 76.; Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss (hereinafter "Defs'. Mem."), Ex. A (hereinafter the "Report Sheet").) As Marion handed plaintiff the Report Sheet for signature, plaintiff scanned the paper and signed the document. (*Id.*) Plaintiff testified that he did not see the "NRD 7–22–97" entry at the bottom of the Report Sheet. (Thompson Decl., Ex. K, at 80.) During the visit, Marion testified he also told plaintiff verbally that the NRD was July 22. (*Id.* at 30, 88.) Plaintiff heard the instruction. (*Id.* at 87–88.) Plaintiff testified, however, that Marion actually told him to call on July 22 to see if Smith wanted him to come in. (*Id.* at 88.) Marion did not recall telling plaintiff that it was acceptable for plaintiff to telephone Smith. (*Id.* at 29.) The Report Sheet indicates that the NRD is "7–22–97." (*Id.*) Plaintiff alleges that the NRD entry on the Report Sheet was added sometime later. (Compl. ¶ IV–A .)

Plaintiff did not report on July 22, 1997. (VRR at 1.) Plaintiff testified, however, that on July 22, he called Smith at around 6:30 PM, and a woman answered the phone and told him that the office was closed. (Thompson Decl., Ex. K at 77.) Plaintiff asked the woman to tell Smith about the call and the woman responded "no problem." (*Id.* at 78.) Plaintiff did not know the woman's name. (*Id.* at 78.)

On August 5, 1997 plaintiff was arrested for criminal assault. (*Id.* at 38, 84.) Smith, upon receiving notice of the arrest, immediately came to the Bronx Detention and lodged a warrant against plaintiff. (*Id.* at 38–39; 84–85.) Plaintiff was also served with a Notice of Violation. (Defs.' Mem., Ex. B.) After June 15, Smith had no contact with plaintiff until August 5 at the Bronx Detention. (Thompson Decl., Ex. K at 38–39.) On August 14, 1997, a Preliminary Hearing was held to determine if there was probable cause to hold the plaintiff on the charges contained in the VRR. Plaintiff was represented by counsel. (Thompson Decl., Ex. G.)

Charge # 1 of the VRR accused plaintiff of violating his parole condition by failing to make office report on 7/22/97, and Charges # 2 through # 5 related to the criminal assault for

which plaintiff was arrested. (VRR at 1.) At the hearing, the four assault charges were dismissed because the victim, who was hit from behind, and other witnesses could not identify plaintiff (Thompson Decl., Ex. K at 8, 53; Defs.' Mem. at 2), and the hearing was adjourned until August 18, 1997 to take evidence on Charge # 1. At the adjourned hearing on August 18, the hearing officer found probable cause in plaintiff's failure to report on July 22, 1997. (Thompson Decl., Ex. I, Preliminary Violation Hearing Decision and Summary.)

On November 24, 1997, plaintiff's Parol Revocation Hearing was held before defendant Administrative Law Judge ("ALJ") Grace Bernstein. Defendant Parole Revocation Specialist ("PRS") Trina Martin prosecuted the case for the Division. Plaintiff was represented by counsel. After hearing the witnesses, the ALJ found that plaintiff violated his parole condition by failing to report on July 22. (Thompson Decl., Ex. J (hereinafter "Parole Rev. Notice") .) However, the ALJ recommended that plaintiff's delinquency be revoked and that he be restored to parole supervision. (*Id.*) A reviewing commissioner of the New York State Board of Parole ("Board of Parole") modified the ALJ's recommendation and determined that plaintiff should be held to his maximum term. (Thompson Decl., Ex. L, Parole Revocation Decision Notice.). Plaintiff appealed the decision to the Board of Parole, which found that a hold to the maximum term was excessively harsh and modified the original decision to a hold of twenty months. (Thompson Decl., Ex. M, Parole Appeal Decision Notice.)

**\*3** In July 1998 plaintiff brought a writ of habeas corpus in the Supreme Court, Bronx County, alleging that the Division violated his due process right by failing to provide names of witnesses in the parole revocation hearing. *See People ex rel. Dennis Sumter v. Robert Ortiz,* (Globerman, J) (Bronx Co. Sup.Ct. July 1998) (attached as Ex. N in Thompson Decl.). The court dismissed the petition on the ground that the statutory right to discovery does not apply to a parole revocation hearing. *Id.*

On July 19, 1998, the Parole Board determined the plaintiff's punishment would be limited to 24 months and notice was sent to plaintiff on July 28, 1998. (Thompson Decl., Ex. M.) Plaintiff has not been incarcerated since August 5, 1999. (Thompson Decl., Ex. O; Docket # 27.) Since his sentence has not been completed, he is once again on parole. There is no evidence that plaintiff pursued any state remedies from the final decision of the New York State Division of Parole or appealed the decision of Justice Globerman.

Plaintiff alleges numerous violations of his rights, but does not specifically plead the legal bases of these violations. Plaintiff alleges that defendants "deprive me of my liberty by means of inconsistent with due process and fundamental fairness," (Compl.¶ V.), that defendants "conspired" against him, (Id.), and that "their conduct involved reckless and deliberate indifference to plaintiff's federal rights." (Id.) Specifically, plaintiff alleges that Marion altered the Report Sheet after plaintiff signed it, and Smith and Marion gave perjurious testimony at the hearings. (Compl.¶ IV–A.) [2] Plaintiff claims that he suffered severe mental and emotional pain, loss of employment, and estrangement from his family as the result of his resulting confinement. (Compl. ¶ V .)

The complaint prays for an injunctive relief so plaintiff can be "placed under the supervision of the Federal Board of Parole." (Id.) Plaintiff also seeks compensatory damages of $250,000.00 and punitive damages of $150,000.00 against each defendant. (Id.)

DISCUSSION

*Standard For Summary Judgment*
Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden to demonstrate that no genuine issue respecting any material fact exists. *See Gallo v. Prudential Residential Services, L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). Then the non-moving party is required to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, n. 3 (1986) (quoting Fed.R.Civ.P. 56(e)). All ambiguities and inferences must be resolved in favor of the non-moving party. *Gallo* 22 F.3d at 1223. Furthermore, the court should read a pro se plaintiff's papers liberally and interpret them as raising the strongest possible arguments. *See Haines v. Kerner,* 404 U.S. 519 (1972); *Hanlin v. Mitchelson,* 794 F.2d 834, 838–839 (2d Cir.1986); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). However, pro se plaintiffs are not exempt from the "rules of procedural and substantive law." *Hulsey v. State of Texas,* 929 F.2d 168, 171 (5th Cir.1991) (quoting *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981). Proceeding pro se does not confer the right to oppose a properly asserted motion for summary judgment by merely offering conclusory allegations or denials. *See Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997).

*Nature of the Complaint*
 **4** In this action, plaintiff seeks to obtain injunctive relief removing him from the supervision of the New York State Division of Parole, as well as damages against two parole officers, defendants Smith and Marian, for their testimony during his parole revocation hearing, against the New York State parole revocation specialist, defendant Martin, who represented the defendant parole officers and against the Administrative Law Judge, defendant Bernstein, who conducted the parole revocation hearing and found plaintiff had violated a condition of his parole which had the ultimate effect of returning him to prison. The plaintiff's principal contention is that the defendants altered or aided in the alteration of the Report Sheet signed by him which was admitted in evidence by inserting a Next Report Date of July 22, 1997 after he had signed the Parole Report Sheet on July 8, 1997 and used it against him in the revocation proceeding, thereby depriving him of his due process rights. [3]

Since the plaintiff is seeking release from his New York State parole as well as damages, the Court will address his claims as a petition for a writ of habeas corpus under 28 U.S.C. § 2254, as well as his right to damages for violation of his rights under 42 U.S.C. § 1983.

*Habeas Corpus Relief*
Section 2254 codifies the exhaustion of remedies requirement providing that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State.

28 U.S.C. § 2254(b)(1)(A).

Though the plaintiff in this case is on parole, habeas corpus relief is available to him. The Supreme Court has held that

a person is deemed to be "in custody" of the Parole Board where his release from prison is not unconditional. *Jones v. Cunningham,* 371 U.S. 236, 241 (1963). In *Heck v. Humphrey,* the Supreme Court pointed out that exhaustion of state remedies is a prerequisite for federal habeas corpus relief. 512 U.S. 477, 480–81 (1994); *Rose v. Lundy,* 455 U.S. 509 (1982). Here, plaintiff has not exhausted his state remedies since did not appeal from the decision of Justice Globerman or the decision of the Board of Parole. *Rivera v. New York State Parole Division,* No. 98 Civ. 7555(JSR) 1999 WL 246752 at 2 (S.D.N.Y. April 1, 1999) (dismissing plaintiff's habeas petition for failure to appeal to the Appellate Division). Accordingly, plaintiff's claim seeking discharge from the New York State Division of Parole must be dismissed.

*Relief Under 42 U.S.C. § 1983*
The Supreme Court in *Heck* held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or a sentence that has not been so invalidated is not cognizable under § 1983.

**\*5** 512 U.S. at 486–87.

The Court also stated that the district court must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id .* at 487. These principles

in *Heck* have been applied to parole revocation cases. In *McDaniel v. Stachowski,* No. 94 Civ. 0432(JTE), 1995 WL 428619 (W.D.N.Y. July 17, 1995), *aff'd Mc Daniel v. Stachowski,* 104 F.3d 349, 1996 WL 518513, at 2 (2d. Cir. Sept 13, 1996), the court held that a state prisoner cannot pursue a § 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction was set aside. *See id.; Sealey v. Fishkin,* No. 96 Civ. 6303(RR), 1998 WL 1021470, at 4 (E.D.N.Y. Dec. 2, 1998) (holding that *Heck* precludes a § 1983 action unless and until the prisoner succeeds in establishing the invalidity of his parole revocation in an appropriate state or federal proceeding); *McGrew v. Texas Bd. of Pardons & Paroles,* 47 F.3d 158, 160–61 (5th Cir.1995) (applying *Heck* to § 1983 action for damages in connection with parole revocation); *see also Spencer v. Kemna,* 118 S.Ct. 978, 988–90 (1998) (Souter, J. concurring) (stating that a § 1983 claim necessarily challenges the validity of parole revocation confinements for the purpose of a *Heck* analysis).

Plaintiff's civil rights complaint cannot be sustained under *Heck.* A favorable judgment for plaintiff necessitates the finding that defendants have violated plaintiff's constitutional rights, or more specifically, that P.O. Marion or P.O. Smith had falsely altered the NRD on the Report Sheet and that defendants Martin and Bernstein had used the false document to deprive the defendant of his liberty. Such a finding would invalidate plaintiff's parole revocation, which was based solely on his failure to report to his probation officer on July 22, 1997. Thus under *Heck,* plaintiff's § 1983 action can be sustained only if his parole revocation or the underlying conviction have been invalided by the appropriate state or federal authorities. There has been no such invalidation.

Nor do the facts show that plaintiff's appeal to the New York State Board of Parole invalidated plaintiff's parole revocation. The Board of Parole only modified plaintiff's original hold to a shorter period. A decision that does not nullify the underlying parole revocation continues to be valid. Therefore, plaintiff has not shown that he has exhausted his state remedies or that the revocation of his parole has been invalidated, set aside, or otherwise rendered invalid. Plaintiff's Section 1983 action must be dismissed.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 767426

**Sumter v. Marion, Not Reported in F.Supp.2d (1999)**

---

### Footnotes

1    On May 24, 1994, plaintiff violated his prior parole by absconding and failing to report. (VRR at 2.) Plaintiff's complete parole history is not provided in the record. On November 1, 1995, his conditions of release included (1) making office and written reports as direct; (2) not using or possessing any controlled substance; (3) periodic urine testing; and (4) complying fully with the instructions of the parole officer. (Cert. of Parole.)

2    On June 3, 1999, in response to plaintiff's claim that the original Report Sheet was crucial evidence, the Court ordered defendants to produce the original. (Court's Order dated June 3, 1999.) However, after a search, the New York Parole Division ("Division") could not locate the original Report Sheet. (Letter from Assistant Attorney General Christine A. Thompson of 6/14/99.) The only copy available is the one provided to plaintiff in response to his request for documents. (*Id.*) This copy was introduced as evidence in the Parole Revocation Hearing. (Thompson Decl., Ex. K at 12.)

3    The issue is largely academic as plaintiff's own testimony was that he was instructed to report orally to Parole Officer Smith but, instead, called when the office was closed, asked an unidentified woman to advise Smith he had called and was told "no problem." Thus, plaintiff's own testimony does not constitute an oral report to Smith.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    5

KeyCite Yellow Flag - Negative Treatment

Distinguished by  H.H. v. City of New York,  E.D.N.Y.,  August 7, 2017

1998 WL 1021470

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Jalah SEALEY, Plaintiff,

v.

Stuart FISHKIN, the New York City Police
Department, and the City of New York, Defendant.

No. 96 CV 6303(RR).

|

Dec. 2, 1998.

**Attorneys and Law Firms**

Jalah Sealey, Washington Correctional Facility, Comstock,
for Plaintiff Pro Se.

The Honorable Michael D. Hess, Corporation Counsel of the
City of New York, New York, By Jeffrey Weiss, Assistant
Corporation Counsel, for the Defendants.

Memorandum and *ORDER*

RAGGI, District J.

 **\*1**  Plaintiff *pro se* Jalah Sealey, who is presently
incarcerated by New York State for violating parole, sues
New York City, its Police Department, and Police Officer
Stuart Fishkin for injuries sustained in connection with his
January 4, 1994 arrest. Specifically, Sealey contends that
Officer Fishkin arrested him without probable cause and then
lied about the circumstances of his arrest to parole officials.
He further complains that, in the course of the arrest, Officer
Fishkin used excessive force. Sealey asserts that after his
arrest, unnamed New York City officers subjected him to
cruel and unusual treatment.

Defendants move for dismissal of all claims against the New
York City Police Department on the grounds that that party is
not a suable entity. They further move for summary judgment
in favor of New York City on all claims raised and in favor
of Officer Fishkin on plaintiff's claims of false arrest and
false statements made to parole officials. Plaintiff opposes
this motion and moves to amend his complaint to name

three additional defendants: Charles Lopresti, Kevin Brunner,
and Sergeant Robert Hugel. Having carefully reviewed
the submissions of the parties, the court concludes that
defendants' dispositive motions should be granted and that
plaintiff's motion to amend should be denied. This leaves only
plaintiff's excessive force claim against Officer Fishkin for
trial on the merits.

*Factual Background*

In considering defendants' motions for dismissal and
summary judgment, this court views the record before it in the
light most favorable to the plaintiff. *See Gubitosi v. Kapica,*
154 F.3d 30, 31 (2d Cir.1998).

On December 30, 1993, defendant Jalah Sealey was paroled
from New York State prison. [1] Shortly after 2:00 p.m. on
January 4, 1994, he was approached by two police officers,
Stuart Fishkin and Charles Lopresti, in the vicinity of 191st
Street and Jamaica Avenue in Queens, New York. [2] When
Sealey saw that the two officers had their weapons drawn,
he panicked and ran toward his home a few blocks away.
The officers pursued and subdued him, whereupon they began
to beat him with a walkie-talkie and kick him. Even after
plaintiff was handcuffed, the arresting officers as well as other
police who had arrived on the scene continued the assault.

Sealey was initially taken to the 103rd precinct and thereafter
to Jamaica Hospital Medical Center for treatment of his
injuries. [3] In support of his claim of cruel and unusual
treatment, Sealey asserts that unidentified officers required
him to leave the hospital dressed only in his underwear and
hospital gown. After making Sealey stand for several minutes
in the snow while they pretended to search for their car keys,
the officers placed petitioner in the back seat of their car and
threw cold water on him, after which they drove to central
booking with the windows rolled down.

At central booking, Sealey was charged with Assault in both
the Second and Third Degree, N.Y. Penal Law §§ 120.00[1],
120.05[3] (McKinney 1998), for allegedly assaulting the
arresting officers, and with Resisting Arrest, N.Y. Penal Law
§ 205.30 (McKinney 1988). [4] Bail was set at $500 and Sealey
was, in fact, released on January 10, 1994. On January 18,
1994, however, he was re-incarcerated on a parole violation
warrant based on the January 4, 1994 arrest.

**\*2** Soon thereafter, Sealey filed a complaint with the Civilian Complaint Review Board against Officers Fishkin, Lopresti, and Kevin Brunner. The Board issued a report on June 14, 1995 exonerating Officer Fishkin of any wrongdoing in connection with plaintiff's arrest and finding the allegations against Officers Lopresti and Brunner [5] unsubstantiated.

On January 31, 1995, Sealey pleaded guilty to Disorderly Conduct, N.Y. Penal Law § 240.20 (McKinney 1988), in satisfaction of all outstanding charges from January 4, 1994. He was sentenced to time served. On March 15, 1995, he pleaded guilty to violating his parole, which resulted in his continued incarceration.

On December 26, 1996, Sealey's § 1983 claim was filed with this court.

*Discussion*

I. *Police Department Motion to Dismiss*
Plaintiff has made a pleading error common to *pro se* litigants: he has named both the City of New York and one of its agencies, the New York City Police Department, as defendants in this case. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." New York City Charter, Chapter 16, § 396. Accordingly, this court hereby dismisses plaintiff's complaint against the New York City Police Department since that entity cannot be sued independently of the City. See *Bailey v. New York City Police Dep't,* 910 F.Supp. 116, 117 (E.D.N.Y.1996); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101 (E.D.N.Y.1992); *East Coast Novelty Co. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992).

II. *Summary Judgment*
To prevail on a motion for summary judgment, a party must show that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In considering such a motion, a district court may not assess credibility or resolve factual disputes. *See Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994). Instead, it must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party.

*See, e.g., Quarantino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). Nevertheless, when a moving party can point to a lack of proof as to one or more essential elements of a claim on which the opposing party will bear the burden at trial, the opposing party can avoid summary judgment only if it comes forward with admissible evidence sufficient to permit a reasonable fact finder to rule in its favor. *See Celotex v. Catrett,* 477 U.S. 317, 322 (1986); *Quarantino v. Tiffany & Co.,* 71 F.3d at 64; *Capital Imaging Assocs. v. Mohawk Valley Medical Assocs.,* 996 F.2d 537, 542 (2d Cir.1993).

A. *Monell Claims Against the City of New York*
The City of New York moves for judgment in its favor on all of plaintiff's claims on the ground that plaintiff has failed to adduce sufficient evidence to demonstrate that his constitutional rights were violated as the result of any official city policy or custom.

**\*3** A municipality is liable under § 1983 only when the plaintiff's constitutional injury resulted from an official policy, custom, or practice of the municipality. *See Board of County Comm'rs of Bryan County, Oklahoma v. Brown,* 117 S.Ct. 1382, 1388 (1997); *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690–91 (1978). A municipal policy or practice may be established by reference to a formal rule or widely-practiced custom. It may, however, also be inferred from circumstantial proof, such as evidence that the municipality was deliberately indifferent to the need to train its employees as to proper conduct in situations that could implicate persons' constitutional rights. *See City of Canton v. Harris,* 489 U.S. 378, 388–92 (1989); *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991). The mere allegation that a municipality failed to train its employees properly, unsubstantiated by any evidence, is insufficient to establish a municipal custom or policy. *See Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993). Neither is proof of a single incident involving only actors below the policymaking level sufficient to raise an inference of the existence of a custom or policy. *See City of Canton v. Harris,* 489 U.S. at 387; *Dwares v. City of New York,* 985 F.2d at 100.

In this case, plaintiff sues in connection with a single arrest incident. The actions in dispute were all taken by individuals below the policymaking level. Nevertheless, plaintiff asserts that New York City is liable for his constitutional injuries because it fails to train police officers adequately to ensure against their false arrest of innocent persons, their use of excessive force, or their infliction of cruel and unusual

treatment. In fact, he adduces no evidence to support this claim of municipal liability.

Instead, he points only to the fact that a number of civilian complaints have been filed against Officer Fishkin. The officer's Civilian Complaint Review Board history report, however, shows that none of these claims was ever substantiated. Thus, this evidence would not suffice to prove deliberate indifference by the city to the need for any further training of this officer in particular or police officers in general. *See Marcel v. City of New York,* No. CV 88–7017, 1990 WL 47689 at *8–9 (S.D.N.Y. Apr. 11, 1990) (unsubstantiated CCRB complaints do not support claim of municipal failure to train); *Law v. Cullen,* 613 F.Supp. 259, 262–63 (S.D.N.Y.1985) (same).

Plaintiff further complains that Officer Fishkin was not disciplined adequately for his conduct in this case. This conclusory assertion fails to address the fact that the Civilian Complaint Review Board expressly exonerated the officer of any wrongdoing in connection with plaintiff's arrest. In any event, the City's purported failure to discipline an officer *after* he causes an alleged constitutional injury cannot be viewed as the cause of that injury.

*\*4* Finally, plaintiff complains that he has not had adequate discovery to prove his claim against the City. Discovery in this case was ably supervised by Magistrate Judge Steven M. Gold. He ensured that plaintiff received all Police Department documents regarding plaintiff's arrest, the underlying parole revocation file, all Police Department and Civilian Complaint Review Board files relating to Officer Fishkin, and various police academy training materials. The court rejects the argument that further discovery is warranted in this case.

The complaint against the City of New York is dismissed in its entirety.

### B. *Arrest Without Probable Cause*

Plaintiff submits that he was arrested on January 4, 1994 without probable cause to believe he had committed any crime, thereby violating the Fourth Amendment. *See Beck v. Ohio,* 379 U.S. 89, 91 (1964) ("Whether [an] arrest was constitutionally valid depends ... upon whether, at the moment the arrest was made, the officers had probable cause to make it."). Defendants move for summary judgment on this claim citing plaintiff's subsequent conviction on his own guilty plea to disorderly conduct as evidence that there was probable cause to arrest him on January 4, 1994. This court agrees.

The law is clear that if, after arrest, a plaintiff is convicted of any of the charges against him, that conviction is " 'conclusive evidence of probable cause' " as long as it is not subsequently reversed. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (quoting *Broughton v. State,* 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 95 (1975)). Thus, in *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court held that a plaintiff whose § 1983 claim of false arrest called into question the lawfulness of a subsequent conviction could not pursue the suit for damages until he succeeded in having the conviction reversed on direct appeal or invalidated in a collateral proceeding. *Id.* at 486–87.

Plaintiff seeks to avoid the adverse result mandated by these cases by noting that he pleaded guilty to disorderly conduct, a lesser charge than the assault for which he was initially arrested. The distinction does not help him. *See Roundtree v. City of New York,* 778 F.Supp. 614, 619 (E.D.N.Y.1991) (holding that a plea of guilty to lesser charge bars § 1983 action for arrest without probable cause); *Keyes v. City of Albany,* 594 F.Supp. 1147 (N.D . N.Y.1984) (holding that plaintiff who was arrested for assault but who pleaded guilty to disorderly conduct could not pursue § 1983 action for arrest without probable cause). A plaintiff suing for false arrest must show that the police lacked probable cause to arrest him for any unlawful conduct. By pleading guilty to disorderly conduct, plaintiff necessarily acknowledged that he was engaged in some unlawful activity for which the police could properly take him into custody. Thus, as long as that conviction stands, plaintiff cannot pursue a § 1983 claim for false arrest. *See Heck v. Humphrey,* 512 U.S. at 486–87. [6] Accordingly, the court dismisses plaintiff's false arrest claim against all defendants without prejudice to refiling against Officer Fishkin if the underlying judgment of conviction for disorderly conduct is ever vacated or invalidated.

### C. *False Statements Leading to Violation of Parole*

*\*5* In a variation on his false arrest claim, Sealey complains that Officer Fishkin lied to parole officials about the circumstances of his January 4, 1994 arrest thereby resulting in his unjust re-incarceration. Here again, defendants cite Sealey's guilty plea at the parole proceedings as a bar to his pursuit of this aspect of his § 1983 claim. The court agrees.

Plaintiff's Exhibit 7 is the Parole Violation Report in his case. It indicates that plaintiff pleaded guilty to resisting arrest and that this was the factual basis relied on to remand him

to jail for violating his parole. Under such circumstances, *Heck v. Humphrey* precludes him from suing for damages under § 1983 unless and until he succeeds in establishing the invalidity of his parole revocation in an appropriate state or federal proceeding. *See McGrew v. Texas Bd. of Pardons & Paroles,* 47 F.3d 158, 160–61 (5th Cir.1995) (applying *Heck* to § 1983 action for damages in connection with parole revocation); *Zupan v. Brown,* 5 F.Supp.2d 792 (N.D.Cal.1998) (same); *Douglas v. New York State Div. of Parole,* 97–CV–40, 1998 U.S. Dist. LEXIS 1604 at *5 (N.D.N.Y. Feb. 10, 1998) (same); *see also Spencer v. Kemna,* 118 S.Ct. 978, 988–90 (1998) (Souter, J. concurring) (assuming applicability of *Heck v. Humphrey* to § 1983 claims necessarily challenging validity of parole revocation confinements).

The court hereby dismisses against all defendants that part of plaintiff's complaint seeking damages in connection with his parole revocation proceeding without prejudice to refiling against Officer Fishkin if Sealey satisfy the conditions set forth in *Heck v. Humphrey.*

### III. *Motion to Amend*

A liberal reading of plaintiff's papers in opposition to defendants' motion suggests that he is looking to amend his complaint to add Officers Charles Lopresti and Kevin Brunner and Sergeant Robert Hugel as defendants in this action. Plaintiff asserts that he did not seek to add these individuals sooner as he did not expect discovery to end so abruptly in his case.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "be freely given when justice so requires." Fed.R.Civ.P. 15(a). Nevertheless, a court may deny leave to amend if the proposed amendment would be futile. *See American Express v. Robinson,* 39 F.3d 395, 402 (2d Cir.1994). This is certainly the case with any claims plaintiff might wish to pursue against the three proposed defendants for false arrest. Such claims could not be brought unless and until plaintiff had his criminal conviction reversed or invalidated. *See Heck v. Humphrey,* 512 U.S. at 486–87. To the extent plaintiff seeks to sue these proposed defendants, either directly or as supervisors, for the use of excessive force or cruel and unusual treatment, his claims would be barred by the statute of limitations.

Section 1983 claims brought in New York are governed by a three-year statute of limitations. *See Owens v. Okure,* 488 U.S. 235, 250–51 (1989); *Soto v. Brooklyn Correctional Facility,*

80 F.3d 34, 35 (2d Cir.1996). The excessive force and mistreatment alleged by plaintiff all occurred on January 4, 1994. Thus, he had until January 4, 1997 to sue those he considered responsible for his injuries. It was not until fifteen months beyond this statutory period, however, in his April 10, 1998 Memorandum in Opposition to defendants' motions, that plaintiff proposed to amend his complaint by adding new defendants. This amendment must be rejected as untimely unless it can be found to relate back to December 26, 1996, the date of the original pleading.

*6 Pursuant to Rule 15(c)(3), an amended complaint adding new parties will relate back to the date of the original complaint only if it can be shown that the party to be named "(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ.P. 15(c)(3). Plaintiff cannot satisfy the "mistake" prong of the rule.

To establish "mistake" under Rule 15(c)(3), a plaintiff must show either a factual mistake as to the name of the party to be sued or a legal mistake concerning the requirements of the cause of action. *See Soto v. Brooklyn Correctional Facility,* 80 F.3d at 35–36; *Cornwall v. Robinson,* 23 F.3d 694, 705 (2d Cir.1994). A plaintiff's lack of knowledge as to a party's identity cannot, however, be characterized as a "mistake." *See Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir.1995), *modified,* 74 F.3d 1366 (1996). In *Barrow,* plaintiff sued the Wethersfield Police Department for injuries sustained as the result of excessive force by unidentified police officers. Thereafter, he sought to amend his complaint to name six officers as individual defendants. The court rejected the amendment as untimely finding that it "did not correct a mistake in the original complaint, but instead supplied information Barrow lacked at the outset." *Id.*

Sealey's situation is analogous to that of the plaintiff in *Barrow.* In proposing to add Officers Lopresti and Brunner and Sergeant Hugel to the complaint, he does not seek to correct any mistake in the original pleading. He seeks only to add new parties. Indeed, Sealey may have even less excuse for his original omission than the plaintiff in *Barrow* since the 1995 Civilian Complaint Review Board report indicates that he knew Lopresti and Brunner's identities before he filed his original complaint.

The court hereby rejects the proposed amendment as barred by the statute of limitations.

### Conclusion

For the reasons stated herein, the court dismisses with prejudice all of plaintiff's claims against the New York City Police Department and the City of New York. It dismisses plaintiff's claims against Officer Fishkin for false arrest and false statements to parole officials without prejudice to refiling should plaintiff succeed in having either his conviction for disorderly conduct or his parole violation finding reversed or invalidated.

*SO ORDERED.*

### All Citations

Not Reported in F.Supp.2d, 1998 WL 1021470

---

### Footnotes

1    The records before the court suggest that Sealey had been incarcerated for attempted murder.

2    Arrest reports indicate that the officers suspected Sealey of drug trafficking. In fact, no drugs were seized in connection with petitioner's arrest.

3    Hospital records indicate that Sealey sustained various cuts and bruises to his face. A CAT scan revealed no internal injuries. He was released without any medication being prescribed.

     Officer Fishkin was also treated at the hospital for a wrist sprain and a small cut on his nose and released the same day.

4    On March 16, 1994, the prosecution abandoned the charge of second-degree assault.

5    Brunner was accused of using abusive language toward Sealey

6    In opposing defendants' motion for summary judgment, plaintiff does assert that his guilty plea was not knowingly and voluntarily entered. That claim, however, cannot be entertained by this court in a § 1983 suit. Rather, plaintiff must pursue state court avenues of direct and collateral review and, if appropriate, a federal petition pursuant to 28 U.S.C. § 2255 (1994 & Supp.1998).

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 60 of 129

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 63 of 129

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 64 of 129

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

### Footnotes

1        I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2567990
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Geraldo CRUZ, Plaintiff,
v.
Det. Thomas E. REILLY, Charles L. Ross,
and 2 Unnamed Officers, Defendants.

No. 08–CV–1245 (JFB)(AKT).
|
Aug. 18, 2009.

**Attorneys and Law Firms**

Geraldo Cruz, pro se.

Arlene S. Zwilling, Esq., Office of the Suffolk County Attorney, Hauppauge, NY, for Defendants.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** Plaintiff Geraldo Cruz ("plaintiff" or "Cruz") brought the instant action *pro se,* pursuant to 42 U.S.C. § 1983 ("Section 1983"), against defendants Detective Thomas E. Reilly, Police Officer Charles L. Ross, and two unnamed officers, all members of the Suffolk County Police Department (collectively, "defendants"), seeking damages for the alleged violation of his civil rights by defendants. Specifically, plaintiff claims that defendants conspired, tampered with evidence, and committed perjury during a criminal trial in Suffolk County Court in February 2008. At the close of that trial, plaintiff was convicted of the crime of burglary in the second degree, in violation of New York Penal Law § 140.25.

The defendants now move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendants' motion in its entirety and dismisses the complaint without prejudice.

**I. FACTS**

The following facts are taken from the complaint ("Compl."), as well as several pages of state court records printed from the New York State Unified Court System website and attached to the defendants' moving papers.[1] These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

On February 22, 2008, plaintiff was convicted of the crime of burglary in the second degree, a violation of New York Penal Law § 140.25 and a class C felony, following a trial in Supreme Court, State of New York, County of Suffolk. (*See* Pl.'s Exh. B.)

In his complaint, plaintiff alleges that during the trial on February 19–22, 2008, the defendants engaged in perjury, evidence tampering, and conspiracy. (Compl., Pt. IV.) As a result of defendants' alleged actions, plaintiff further claims that he suffered from "mental and emotional duress, false incarceration, due to pejured [sic] testimony. Slande [sic] and defemation [sic] of character." (Compl., Pt. IV.A.)

**II. PROCEDURAL HISTORY**

Cruz filed this action on March 25, 2008. On March 5, 2009, defendants filed a letter motion to dismiss, and on March 20, 2009, the Court ordered formal briefing of the motion during a telephone conference call held with the parties. On April 16, 2009, defendants filed a formal motion to dismiss. On May 19, 2009, the Court received a letter written in Spanish from plaintiff, presumably as his opposition to defendants' pending motion, which defendants then requested that the Court disregard. On May 26, 2009, the Court ordered that plaintiff re-submit his opposition letter in English, in light of his having made prior submissions to the Court in English, including the complaint. Plaintiff's opposition was filed, in English, on June 17, 2009.

**III. STANDARD OF REVIEW**

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility standard.'

" *Iqbal v. Hasty,* 490 F.3d 143, 157 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**\*2** The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. *See* 129 S.Ct. at 1937. The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly,* 550 U.S. at 556–57) (internal citations omitted).

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally .... This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings .... This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." 537 F.3d 185, 191 (2d Cir.2008) (citations and quotation marks omitted); *see Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004); *see also Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145–46 (2d Cir.2002) (holding that when a plaintiff is appearing *pro se,* the Court shall " 'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (alterations in original)).

## IV. DISCUSSION

As noted *supra,* plaintiff asserts claims pursuant to Section 1983. Under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights, but in fact offers "a method for vindicating federal rights elsewhere conferred." *Patterson,* 375 F.3d at 225 (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); *see also Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.") (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

**\*3** Because plaintiff does not specify any specific causes of action, the Court liberally construes the complaint to assert claims under Section 1983 for malicious prosecution, conspiracy, and a violation of his right to a fair trial. [2] As the Court sets forth below, after carefully reviewing the complaint and liberally construing it in Cruz's favor, the Court agrees with defendants that plaintiff's claims fail as a matter of law, by virtue of his conviction. Specifically, the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), entitles defendants to a decision in their favor as a matter of law with respect to these claims. [3]

### A. The *Heck* Rule

In *Heck v. Humphrey,* the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner,* 179 F.3d 48, 51 (2d Cir.1999) (citing *Heck,* 512 U.S. at 477). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render

a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486–87 (footnote omitted); see also Wilkinson v. Dotson, 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence.").

Thus, pursuant to *Heck,* courts routinely dismiss claims of, *inter alia,* malicious prosecution, conspiracy, and deprivation of the right to a fair trial brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g., Guerrero v. Gates,* 442 F.3d 697, 704 (9th Cir.2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker,* 179 F.3d at 51–52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo,* No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr.17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction .... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]") (internal quotation marks and citations omitted); *Younger v. City of N.Y.,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (holding that plaintiff's claims for

false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck* ); *cf. Jovanovic v. City of N.Y.,* No. 04 Civ. 8437, 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

## B. Application

**\*4** Here, at stated *supra,* Cruz was convicted after a trial in state court of one count of burglary in the second degree on February 22, 2008. It is apparent from the state court documentation regarding plaintiff's conviction and confinement, however, that Cruz has been unsuccessful in challenging his conviction or has not even attempted to do so. Under these circumstances, the Supreme Court's holding in *Heck* precludes plaintiff from bringing claims in this Court under Section 1983 for malicious prosecution, conspiracy, and the denial of his right to a fair trial in connection with that conviction, since a successful result in this case on any one of those claims would bear on the validity of that underlying conviction.

Indeed, *Heck* 's application to the instant matter is straightforward. The entirety of plaintiff's bare-bones complaint states the following:

> Tampering with evidence, perjury, during trial, conspiracy at trial, Feb. 19, 20, 21 and 22 of 2008 at 9:30 a.m. in Suffolk County Court in from [sic] of Honorable Judge Gazillo. Charles L Ros, and the 2 officer, Reilly & Thomas E. Det. It is to my belief that the three defendants listed above are guilty of my complaints listed.

(Compl., Pt. IV.) Although it is true that not all claims brought under Section 1983 necessarily implicate the validity of the underlying conviction, in this case, plaintiff's bald assertions of evidence tampering, perjury, and conspiracy during trial by the defendant police officers do necessarily implicate the validity of his burglary conviction and are thus barred by the *Heck* rule. *See, e.g., Channer v. Mitchell,* 43 F.3d 786, 787–88 (2d Cir.1994) (per curiam) (affirming *Heck*-based dismissal of claim that police officers committed perjury and coerced

witnesses to identify plaintiff wrongfully); *Smithart v. Towery,* 79 F.3d 951, 952–53 (9th Cir.1996) (per curiam) (affirming *Heck*-based dismissal of § 1983 claim of conspiracy to "bring unfounded criminal charges" against plaintiff); *Williams v. Schario,* 93 F.3d 527, 529 (8th Cir.1996) ("[A] judgment in Williams's favor on his damages claim that defendants engaged in malicious prosecution and presented perjured testimony would 'necessarily imply the invalidity of his conviction or sentence' ") (quoting *Heck,* 512 U.S. at 487); *Jasper v. Fourth Court of Appeals,* No. 08 Civ. 7472(LAP), 2009 WL 1383529, at *1 (S.D.N.Y. May 18, 2009) ("The Court liberally construes this complaint as asserting that plaintiff was denied his constitutional right to a fair trial. However ... [s]ince plaintiff's conviction remains valid, plaintiff's fair trial claim is not cognizable under § 1983, and it must be dismissed as to all defendants[.]"); *Perez v. Cuomo,* No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr.17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction .... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]") (internal quotation marks and citations omitted); *Fernandez v. Holzbach,* No. 3:04 Civ. 1664(RNC), 2007 WL 1467182, at *1 (D.Conn. May 15, 2007) (holding that plaintiff's allegations that his convictions were based on perjury and fabricated evidence pursuant to a conspiracy to violate his federal rights "necessarily impl[ied] that he was wrongly convicted" and could not be litigated "until he shows that the convictions have been invalidated"); *Duamutef v. Morris,* 956 F.Supp. 1112, 1115–16 (S.D.N.Y.1997) (dismissing § 1983 claims for, *inter alia,* malicious prosecution, false arrest, and perjury during trial due to a failure to state a claim under *Heck* because of the valid underlying criminal conviction). Thus, in order to bring a cognizable Section 1983 claim in this Court for the harms alleged, plaintiff must first establish the invalidity of his state court conviction.

**\*5** This result, as required by *Heck,* is consistent with the common law principles underlying plaintiff's claim for malicious prosecution. Indeed, the Supreme Court in *Heck* applied the favorable termination doctrine required to prevail in a lawsuit for malicious prosecution to all § 1983 damages actions that would implicate the legality of the challenged conviction, if successful. *See* 577 U.S. at 486 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages

actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution."); *Dill v. Vill. of Gowanda,* 952 F.Supp. 989, 994 (W.D.N.Y.1997) ("The holding in *Heck* dovetails with established law in the Second Circuit, which also incorporates common law rules into Section 1983 analysis to hold that a valid conviction will bar a Section 1983 plaintiff from asserting federal claims for false arrest, false imprisonment, or malicious prosecution.") (internal citations and quotation marks omitted). Because an element of a claim for malicious prosecution is the termination of the proceeding in plaintiff's favor, *see, e.g., Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995), plaintiff's Section 1983 claim for malicious prosecution is necessarily barred because the subject prosecution was not terminated in a manner favorable to him. *See, e.g., Hygh v. Jacobs,* 961 F.2d 359, 367 (2d Cir.1992) ("A plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish termination of the prosecution in his favor," which is accomplished "only when their final disposition is such as to indicate the accused is not guilty."); *Rivera v. City of Yonkers,* 470 F.Supp.2d 402, 408 (S.D.N.Y.2007) (dismissing plaintiff's false imprisonment/ arrest and malicious prosecution claims pursuant to § 1983 because under *Heck,* "a conviction for a crime cannot be considered a termination in favor of the accused"); *Smith v. P.O. Canine Dog Chas,* No. 02 6240(KMW)(DF), 2004 WL 2202564, at *6 (S.D.N.Y. Sept. 28, 2004) (stating that plaintiff's conviction bars any claim under Section 1983 for false arrest, false imprisonment, and malicious prosecution, and collecting cases).

With respect to plaintiff's claims for conspiracy, those claims also fail under the rule announced in *Heck* even if they were brought pursuant to 42 U.S.C. §§ 1985 and 1986. *See Amaker,* 179 F.3d at 52 (holding that *"Heck ... applies with respect not only to plaintiff's § 1983 claim but also to his §§ 1981, 1985(3) and 1986 claims"* because the existence of a conspiracy would necessarily question the validity of plaintiff's conviction); *see also McNeill v. N.Y.,* 06 Civ. 4843, 2006 U.S. Dist. LEXIS 77085, at *9, (E.D.N.Y. Oct. 19, 2006), *aff'd,* 2007 U.S.App. LEXIS 22717, 2007 WL 2781910 (2d Cir. Sept. 25, 2007) (*"Heck applies to plaintiff's conspiracy claims under § 1985(3) as well.");* *Smith v. Fields,* No. 95 Civ. 8374(DAB), 1998 WL 709815, at *4 (S.D.N.Y. Oct.9, 1998) ("Plaintiff's allegations of unlawful collection and presentation of evidence go to the heart of the constitutionality of his criminal conviction .... To allow Plaintiff to go forward with his § 1985(3)

and § 1986 actions would, therefore, necessarily imply the invalidity of Plaintiff's conviction.") (internal citation omitted); *Candelaria v. Greifinger,* No. 96 Civ. 0017(RSP), 1997 WL 642464, at *2 (N.D.N.Y. Oct.14, 1997) (holding that *Heck* applies to claims under Section 1985); *Duamutef v. Morris,* 956 F.Supp. 1112, 1117–18 (S.D.N.Y.1997) (same).

 **6** Furthermore, any Section 1985 conspiracy claims against these particular defendants are also barred by the intracorporate conspiracy doctrine, which posits that officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his employment, are legally incapable of conspiring together. *See, e.g., Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978) ("[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... officers[ ] and employees, each acting within the scope of his employment."). In this case, the individual defendants are employees of a single municipal entity, the Suffolk County Police Department, and the intracorporate conspiracy doctrine is therefore applicable. Here, plaintiff also does not allege that the individual defendants were acting outside of the scope of their employment. In order to show that defendants acted outside the scope of their employment, plaintiff must show that defendants were "acting in their personal interests, wholly and separately from the corporation" or municipal entity. *Bhatia v. Yale Univ.,* No. 06 Civ. 1769, 2007 U.S. Dist. LEXIS 73849, at *4–5,2007 WL 2904205 (D.Conn. Sept. 30, 2007) (citing *Tardd v. Brookhaven Nat'l Lab,* 407 F.Supp.2d 404, 414 (E.D.N.Y.2006)); *see also Little v. City of N.Y.,* 487 F.Supp.2d 426, 442 (S.D.N.Y.2007) (dismissing conspiracy claims under Section 1983 and 1985 under intracorporate conspiracy doctrine where plaintiff "does not provide any evidence to suggest that [defendants] were motivated by an independent personal stake in his arrest and prosecution"). The Court has carefully reviewed the complaint and finds that plaintiff has failed to allege that defendants were acting solely in their personal interests, separate and apart from their duties as police officers. Thus, the Court dismisses the potential Section 1985 claims of conspiracy on the additional grounds of the intracorporate conspiracy doctrine. Moreover, if no actionable conspiracy exists with respect to the defendants in this case, plaintiff's potential Section 1986 claims also fail as a matter of law. *See Dwares v. N.Y.,* 985 F.2d 94, 101 (2d Cir.1993) ("Liability under § 1986 ... is dependent on the validity of a claim under § 1985.") (citing *Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir.1978)); *see also Posr v. Court Officer Shield # 207,* 180 F.3d 409, 419 (2d Cir.1999)

(affirming dismissal of Section 1986 claim where district court also dismissed Section 1985 claim).

Finally, vague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002) (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello* ); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek,* No. 3:05 Civ. 1851, 2007 WL 4322780, at *3 (D.Conn. Dec.7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations."). In this case, plaintiff makes only the conclusory allegation that defendants conspired during the trial, and the complaint is void of any factual assertions to support this claim. Thus, the conspiracy claim is also dismissed on this ground. For all of these aforementioned reasons, plaintiff's conspiracy claims under Sections 1983, 1985, and/or 1986 do not survive dismissal.

 **7** Moreover, even assuming that certain pleading defects could be remedied in an amended complaint, the *Heck* rule bars plaintiff's claims until the underlying conviction is invalidated, and thus providing the plaintiff with an opportunity to amend the complaint is futile until such time that the state court conviction is reversed, invalidated by a federal writ of *habeas corpus,* or otherwise expunged or declared invalid. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied"). However, under these circumstances, the dismissal is without prejudice.

In sum, even accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff fails to state a claim upon which relief can be granted. Specifically, the Court concludes that

the *Heck* rule, as a matter of law, prevents plaintiff from bringing claims for malicious prosecution, conspiracy, and violations of his right to a fair trial pursuant to Section 1983, or any potential claims under Sections 1985 and/or 1986.

## V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss the complaint without prejudice pursuant to 12(b)(6) of the Federal Rules of Civil Procedure.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2567990

---

## Footnotes

1  The Court takes judicial notice of the state court documentation submitted by defendants. *See, e.g., Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd.,* No. 07 Civ. 1455(CPS), 2008 WL 4190955, at *10 n. 6 (E.D.N.Y. Sept.3, 2008) (taking judicial notice of the records of the New York State Unified Court System that are available to the public on its Internet website); *Trustees of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund and 401(K) Savings Plan v. Dan Yant, Inc.,* No. 06 Civ. 173(SJ)(JO), 2007 WL 3036759, at *9 (E.D.N.Y. Oct. 16, 2007) (same).

2  Because plaintiff's allegations are confined to actions taken by defendants *during trial,* the Court does not construe the complaint to assert a claim for false arrest/imprisonment. Indeed, a cause of action for false arrest accrues at the time of detention and any damages attributable to actions thereafter are based on the tort of malicious prosecution. *See Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (holding that claim for false arrest or false imprisonment ends once victim becomes held pursuant to process, and thereafter unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution); *accord Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir.2006). In any event, to the extent that plaintiff is attempting to assert a false arrest/imprisonment claim, such claim would be barred by his conviction under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *See, e .g., Cameron v. Fogarty,* 806 F.2d 380, 388 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). The Court further notes that any claim for conspiracy is more properly brought pursuant to 42 U.S.C. § 1985. *See Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003) ("The plaintiffs' claim under 42 U.S.C. § 1983, which is styled "Conspiracy to Violate Civil Rights," should actually be stated as a claim under Section 1985, which applies specifically to conspiracies."). As discussed *infra,* however, the conspiracy claims are subject to *Heck* in this case, regardless of whether they are brought pursuant to 42 U.S.C. §§ 1983, 1985, or 1986. Finally, it is an open question whether plaintiff could assert a separate fair trial violation for the alleged actions of evidence tampering, as distinct from the malicious prosecution claim. *See generally Schiller v. City of N.Y.,* 2008 WL 200021, at *9 (S.D.N.Y. Jan.23, 2008) (discussing the doctrinal ambiguity in current Second Circuit law); *Richardson v. City of N.Y.,* No. 02 CV 3651, 2006 WL 2792768, at *6–7 (E.D.N.Y. Sept.27, 2006) (same). Because the Second Circuit has permitted parallel claims for malicious prosecution and denial of a fair trial to proceed based on the same alleged fabrication of evidence by police officers, and because the existence of probable cause may be a complete defense to one constitutional tort but not the other, the Court liberally construes the complaint here to allege both as well. *See Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 129–30 (2d Cir.1997); *see also Perez v. Cuomo,* No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7

(E.D.N.Y. Apr.17, 2009) (analyzing both a malicious prosecution claim and fair trial claim based on alleged fabrication of evidence); *Douglas v. City of N.Y.,* 595 F.Supp.2d 333, 341–47 (S.D.N.Y.2009) (same); *Schiller,* 2008 WL 200021, at *9 (permitting plaintiff to bring both claims); *Jovanovic v. City of N.Y.,* No. 04 Civ. 8437, 2006 WL 2411541, at *13 (S.D.N.Y. Aug. 17, 2006) ("[Claims have been permitted by the Second Circuit for] malicious prosecution and denial of a fair trial based on the same fabrication of evidence .... As these causes of action seem to coexist, [p]laintiff may legitimately bring both.") (citing *Ricciuti,* 124 F.3d at 130–31); *Taylor v. City of N.Y.,* No. 03 Civ. 6477(RLC), 2006 WL 1699606, at *4–5 (S.D.N.Y. June 21, 2006) (permitting both malicious prosecution claim and right to fair trial claim to survive summary judgment based on alleged false information provided by officers); *cf. Henry v. City of N.Y.,* No. 02 Civ. 4824(JSM), 2003 WL 22077469, at *4 (S.D.N.Y. Sept.8, 2003) ("[W]hile there is no constitutional right to be free from having evidence fabricated against an individual, the offense rises to a constitutional violation if one is deprived of his liberty because of the fabrication.") (citing *Zahrey v. Coffey,* 221 F.3d 342, 348 (2d Cir.2000)).

3  In addition, the Court finds plaintiff's pleadings insufficient to withstand dismissal pursuant to Rule 8 of the Federal Rules of Civil Procedure. Pursuant to Rule 8, pleadings are to give "fair notice of what the plaintiff's claim is and the grounds upon which it rests" in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp.,* 550 U.S. at 547). When a complaint fails to comply with the Rule 8 pleading standard, the district court may dismiss it upon a motion or *sua sponte. Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995). Here, plaintiff's complaint falls far short of giving fair notice of his claim as required under Rule 8. There are no factual allegations whatsoever contained in the complaint to support the conclusory allegations of perjury, tampering with evidence, and conspiracy, and thus defendants do not have adequate notice of plaintiff's claims. Regardless of the omitted substance of plaintiff's allegations, however, it is apparent that his Section 1983 claims are subject to the limitations in *Heck,* as discussed *infra.* Thus, plaintiff's complaint is dismissed without prejudice to being re-filed (1) after plaintiff has successfully challenged his state court conviction, as required by *Heck,* and (2) in accordance with the pleading requirements of Rule 8.

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 72 of 129

Traore v. New York State Division of Parole, Not Reported in Fed. Supp. (2023)

2023 WL 207920
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Abdoulaye TRAORE, Plaintiff,

v.

NEW YORK STATE DIVISION OF
PAROLE; PRS Tarji Smith; SPO Tucker;
Parole Officer A. Hamilton, Defendants.

22-CV-1431 (LTS)
|
Signed January 13, 2023

**Attorneys and Law Firms**

Abdoulaye Traore, New York, NY, Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action
under 42 U.S.C. § 1983, alleging that Defendants violated his
constitutional rights. By order dated November 4, 2022, the
Court granted Plaintiff's request to proceed *in forma pauperis*
(IFP), that is, without prepayment of fees. For the reasons set
forth below, Plaintiff's complaint is dismissed.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction
of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

Rule 8 requires a complaint to include enough facts to state
a claim for relief "that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
facially plausible if the plaintiff pleads enough factual detail
to allow the Court to draw the inference that the defendant is
liable for the alleged misconduct. In reviewing the complaint,
the Court must accept all well-pleaded factual allegations as
true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it
does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating legal
conclusions from well-pleaded factual allegations, the Court
must determine whether those facts make it plausible – not
merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff Abdoulaye Traore brings this complaint alleging that
Defendants' actions, which Plaintiff describes as "vindictive
and malicious," caused Plaintiff to be held beyond his
maximum expiration date. (ECF No. 2 at 4, 5.) Plaintiff, who
was discharged from parole on January 22, 2022,[1] alleges
that he was released to parole supervision on October 15,
2019, with a maximum expiration date of November 2, 2021.
(*Id.* at 4.) He asserts that, immediately upon his release from
prison, he secured employment at the Borough of Manhattan
Community College ("BMCC"). Plaintiff alleges that he was
being harassed by Defendants, causing the director of BMCC
to contact the New York State Division of Parole ("Division
of Parole") to complain about the harassment. (*Id.*)

**\*2** Following the director's complaint, Plaintiff's parole
officer was changed to Parole Officer Christina Venable
and, during her approximately two-year supervision, Plaintiff
never received a violation. With 100 days of parole
supervision remaining, Plaintiff's parole officer was changed
to Defendant Hamilton. (*Id.*) Plaintiff asserts that he was
working, attending the programs recommended by the
Division of Parole, and residing with his family in a stable
home environment. Plaintiff asserts further that, during
the remaining 100 days of parole supervision, Defendant

Traore v. New York State Division of Parole, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 73 of 129

Hamilton filed several violation charges, all of which were technical violations. Plaintiff alleges that one violation involved an incident with Plaintiff's mother, who did not wish to press charges and signed an affidavit that nothing of a criminal nature occurred. Although Plaintiff's mother declined to press charges, Plaintiff was criminally charged, arraigned on the criminal charges and immediately released, but he remained detained on a parole hold because of technical violations. (*Id.* at 5, 6.)

By February 18, 2022, when Plaintiff filed this complaint, he had been released from custody and discharged from parole. He brings this complaint seeking $125 million dollars in damages.

### DISCUSSION

**A. Claims against the New York State Division of Parole**
"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's Section 1983 claims against the New York State Division of Parole are therefore barred by the Eleventh Amendment and are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

**B. Claims against PRS Tarji Smith and SPO Tucker**
To state a claim under Section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Here, Plaintiff does not allege any facts describing how PRS Tarji Smith and SPO Tucker were personally involved in the events underlying his claims. Plaintiff does not even reference these two Defendants in the body of the complaint. The Court therefore dismisses Plaintiff's claims against Defendants Smith and Tucker for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. Claims against Parole Officer A. Hamilton**
Plaintiff's allegation that Defendant Hamilton's filing of technical parole violations caused Plaintiff to be held beyond his maximum expiration date may be construed as a challenge to the sentence that Plaintiff received for the parole violation. The United States Supreme Court has determined:

> that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

**\*3** *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original); *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]") (footnote omitted). This rule, originally articulated by the Supreme Court in *Heck*, has been extended

Traore v. New York State Division of Parole, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 74 of 129

to Section 1983 actions that challenge the fact or duration of confinement based on a parole revocation. *E.g.*, *Lee v. Donnaruma*, 63 F. App'x 39, 40-41 (2d Cir. 2003) (summary order); *McClinton v. Henderson*, No. 13-CV-3335, 2014 WL 2048389, at *5 (E.D.N.Y. May 19, 2014).

Plaintiff does not assert that any court, state or federal, ever reversed, expunged, declared invalid, or called into question any sentence imposed on Plaintiff. Because the sentence has not been challenged successfully by Plaintiff, he is barred by *Heck* from seeking monetary relief for the imposition of this sentence. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### D. Leave to amend is denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

### CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2023 WL 207920

---

### Footnotes

1    *See* https://publicapps.doccs.ny.gov/ParoleeLookup/

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 75 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

2018 WL 357297
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ralph BAKER, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al., Defendants.

9:17-CV-1270 (GTS/TWD)
|
Signed January 9, 2018
|
Filed 01/10/2018

**Attorneys and Law Firms**

RALPH BAKER, 14-R-1962, Woodbourne Correctional
Facility, 99 Prison Road, PO Box 1000, Woodbourne, NY
12788 Plaintiff, Pro se.

**DECISION AND ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Ralph Baker ("Plaintiff") commenced this
action by filing a pro se Complaint pursuant to 42 U.S.C.
§ 1983. Dkt. No. 1 ("Compl."). Plaintiff, who is presently
confined at Woodbourne Correctional Facility ("Woodbourne
C.F."), has paid the full filing fee of $400.00. Plaintiff also
filed a motion for preliminary injunctive relief. Dkt. No. 2.

**II. INITIAL SCREENING**

Under 28 U.S.C. § 1915A, a court must review any
"complaint in a civil action in which a prisoner seeks redress
from a governmental entity or officer or employee of a
governmental entity" and must "identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if the
complaint ... is frivolous, malicious, or fails to state a claim
upon which relief may be granted; or ... seeks monetary relief
from a defendant who is immune from such relief." 28 U.S.C.
§ 1915A(b); *see also* Carr v. Dvorin, 171 F.3d 115, 116 (2d
Cir. 1999) (per curiam) (Section 1915A applies to all actions
brought by prisoners against government officials even when
plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also
look to the Federal Rules of Civil Procedure. Rule 8 of the
Federal Rules of Civil Procedure provides that a pleading
which sets forth a claim for relief shall contain, *inter alia,* "a
short and plain statement of the claim showing that the pleader
is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of
Rule 8 "is to give fair notice of the claim being asserted so as
to permit the adverse party the opportunity to file a responsive
answer, prepare an adequate defense and determine whether
the doctrine of res judicata is applicable." *Hudson v. Artuz*,
No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov.
30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-
CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995)
(other citations omitted)).

A court should not dismiss a complaint if the plaintiff
has stated "enough facts to state a claim to relief that is
plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009). While the court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that
a court must accept as true all of the allegations contained
in a complaint is inapplicable to legal conclusions." *Id.*
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."
*Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation." *Id.* Thus, a pleading that contains only
allegations which "are so vague as to fail to give the
defendants adequate notice of the claims against them" is
subject to dismissal. *Sheehy v. Brown*, 335 Fed.Appx. 102,
104 (2d Cir. 2009).

**\*2** While pro se parties are held to less stringent pleading
standards, the Second Circuit has held that "district courts
may dismiss a frivolous complaint sua sponte even when the
plaintiff has paid the required filing fee." *See* Fitzgerald v.
First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d
Cir. 2000). Indeed, "district courts are especially likely to
be exposed to frivolous actions and, thus, have [a] need for
inherent authority to dismiss such actions quickly in order to
preserve scarce judicial resources." *Id.* A cause of action is
properly deemed frivolous "where it lacks an arguable basis
either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,
325 (1989).

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 76 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

## III. SUMMARY OF THE COMPLAINT [1]

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, No. 93 Civ. 6941, 885 F.Supp. 537, 573 (S.D.N.Y. May 8, 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

Plaintiff commenced this civil rights action arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff names five defendants in the caption and the list of parties: DOCCS; Commissioners of Parole Tina Stanford ("Stanford"), Joseph P. Crangle ("Crangle"), and Marc Coppola ("Coppola"); and Commissioner of Correctional Services Glenn S. Goord ("Goord"). *See* Compl. at 1-3. Plaintiff's claims are asserted against the individual defendants in their official capacity. *See id.*

In September 2014, Plaintiff was convicted of Grand Larceny, Attempted Grand Larceny, and Offering a False Instrument and sentenced to serve an aggregate term of imprisonment of four to twelve years. Compl. at 5; Dkt. No. 2 at 1; Dkt. No. 2-4 at 27. On December 16, 2015, Plaintiff appeared, via video conference, for a Parole Board Hearing ("the Hearing"). Compl. at 4.; Dkt. No. 2-4 at 1. The Parole Board Panel ("the Panel") included Stanford, Crangle, and Coppola. Dkt. No. 2-4 at 1. During the Hearing, the Panel presented questions related to Plaintiff's convictions. Compl. at 4, 5. The Panel denied Plaintiff parole and ruled in favor of continued confinement for twenty-four months. *Id.* at 5; Dkt. No. 2-4 at 15. The Panel considered the seriousness of Plaintiff's offense, Plaintiff's disciplinary and programming record, Plaintiff's

demeanor during the hearing, and Plaintiff's failure to take responsibility for his actions. [2] Dkt. No. 2-4 at 15-16.

**\*3** Construed liberally, Plaintiff claims that: (1) Defendants subjected him to an unlawful Parole Board Hearing in violation of his constitutional rights; and (2) his Eighth Amendment rights were violated due to deliberate indifference to his serious medical needs. *See* Compl. at 5. Plaintiff seeks injunctive relief restraining defendants from "practicing, policy, and procedure of Executive Law § 259-i and 7 NYCRR § 251.2-2." [3] *See id.* at 5.

## IV. ANALYSIS

### A. Parole Hearing

Plaintiff claims that the Panel's decision was "arbitrary and capricious" because the Panel failed to develop a Transitional Accountability Plan ("TAP") as required by Corrections Law § 71-a and failed to consider his COMPAS risk assessment. [4] Dkt. No. 2-4 at 28, 29. Plaintiff also asserts that the Panel erroneously placed emphasis on the severity of his criminal history without considering mitigating factors including Plaintiff's conduct during incarceration. *Id.* at 30-33.

**\*4** In order to state a valid Section 1983 claim for violating the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege he or she was deprived of life, liberty, or property without due process of law. *See Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Heck v. Humphrey*, 512. U.S. 477 (1984), the Supreme Court held that a Section 1983 action seeking money damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486–87. [5] "*Heck* uses the word 'sentence' interchangeably with ... 'continuing confinement' and 'imprisonment,'" thus, any shortening of a term of confinement will be subject to the rule in *Heck*. *Wilkinson v. Dotson*, 544 U.S. 74, 83–84 (2005) (quoting *Heck*, 512 U.S. at 483, 486) (other citation omitted); *see also Jude v. New York State*, No. 07 Civ. 5890, 2009 WL 928134, at *6 (S.D.N.Y. Mar. 30, 2009) (citing cases). Indeed, an inmate's Section 1983 action is barred by *Heck* "(absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration."

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 77 of 129

*Wilkinson*, 544 U.S. at 81–82 (emphasis in original); *see also Bodie v. Morgenthau*, 342 F.Supp.2d 193, 201 (S.D.N.Y. 2004) (denying plaintiff's request for injunctive relief where plaintiff sought "to compel specific action pertaining to the content of [his] parole records"). *Heck* does not bar 1983 actions that do not "spell immediate or speedier release for plaintiff" or a request for prospective injunctive relief. *See Wilkinson*, 544 U.S. at 82; *Boddie v. N.Y.S. Div. of Parole*, No. 08-CV-911, 2009 WL 1033786, at *1 (E.D.N.Y. Apr. 17, 2009).

Plaintiff is presently in DOCCS' custody and was in DOCCS' custody when he filed this civil action. *See* Compl., *generally*. While the Complaint does not include any specific request for immediate release, in the motion for injunctive relief, Plaintiff seeks to overturn the Panel's decision and moves for immediate release. *See* Dkt. No. 2-4 at 35. To the extent that the Complaint can be construed as seeking release, Plaintiff's claims are dismissed without prejudice pursuant to *Heck*, on the ground that habeas corpus is his sole federal remedy. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *see also Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir. 1994) ("habeas corpus —not a § 1983 action—provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment[.]"); *Hall v. NYS Division of Parole*, 225 F.3d 645 (table), 2000 WL 1186256 at *2 (2d Cir. Aug. 21, 2000) (suit for declaratory and injunctive relief and damages, challenging constitutionality of parole guidelines dismissed; claims could only be brought as habeas petition); *Jenkins v. Daubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only [habeas relief under 28 U.S.C.] § 2254(b) with its exhaustion requirement may be employed."); *see also Bodie*, 342 F.Supp.2d at 202 (citing *Amaker v. Weiner*, 179 F.3d at 48, 52 (2d Cir. 1999)) (dismissal is without prejudice; if a plaintiff's conviction or sentence is later declared invalid or called into question by a federal court's issuance of a writ of habeas corpus, the suit may be reinstated). [6]

**\*5** Conversely, regarding Plaintiff's request to preclude Defendants from applying the standards set forth in Executive Law § 259-i and 7 NYCRR § 251-2.2 at future parole hearings, the Court is unable to conclude that Plaintiff's

due process claims would be barred by *Heck*. *See Walker v. Mattingly*, No. 09-CV-845, 2010 WL 276748, at *2 (W.D.N.Y. Jan. 20, 2010); *see also Walker*, No. 09-CV-845, Decision and Order, Dkt. No. 5 at 5 (W.D.N.Y. Oct. 29, 2009) (citing *Wilkinson* for the proposition that the plaintiff's claims challenging the procedural grounds upon which his parole was denied may be viable under § 1983). [7]

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "[T]he mere fact that [plaintiff] has been denied parole does not violate any provision of the Constitution, much less the Eighth Amendment." *Sheppard v. New York State Div. of Parole*, No. 10 CIV. 5376, 2011 WL 2610695, at *4 (S.D.N.Y. June 28, 2011). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171.

Plaintiff claims he was improperly denied parole because the Panel failed to develop a TAP, failed to consider his COMPAS risk assessment, and erroneously placed emphasis on the "severity of his offense and criminal history." *See* Compl. at 4-5; Dkt. No. 2-4 at 30. "An inmate's federally-protected liberty interest in parole release is limited to not being denied parole for arbitrary or impermissible reasons." *Villalobos v. New York Div. of Parole*, No. 09 CIV 8431, 2010 WL 3528926, at *3 (S.D.N.Y. Aug. 23, 2010) *appeal dismissed and remanded sub nom. Villalobos v. New York State Div. of Parole*, 475 Fed.Appx. 400 (2d Cir. 2012). However, "[d]enial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute." *Romer*, 2003 WL 21744079, at *6 (citing *Davis v. Thomas*, 256 F. Supp. 2d 190, 191 (S.D.N.Y. 2003) ("[D]enial of parole may be justified on the basis of reasonable considerations defined by statute, including the inmate's criminal history and seriousness of the offense for which he is in custody.")) (other citation and footnote omitted). "The arbitrary or capricious reasons must be based on inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds." *Mabry v. Cuomo*, No. 11 CIV. 4456, 2012 WL 1711549, at *2 (S.D.N.Y. May 9, 2012) (citation omitted).

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 78 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

With respect to Plaintiff's arguments related to TAP and COMPAS, New York Correction Law § 71-does not create a liberty interest in parole. The language in section 71-a, "relates to the existence of programs and tools, and their respective goals." *Hodge v. Griffin*, No. 13 CIV. 1977, 2014 WL 2453333, at *2 (S.D.N.Y. June 2, 2014). The statute, "does not mandate the achievement of such goals with respect to each and every inmate, nor is there [a] provision in [...] the statute[ ] for a guarantee of release upon an individual inmate's successful completion of the educational programming." *Id.* (the petitioner's argument that his right to rehabilitation was violated in connection with the denial of parole, based upon section 71-a and other sections of the New York Correction Law was meritless).

 **\*6** Here, the Panel relied upon "discipline and program participation, [Plaintiff's] risk and needs assessment, and [Plaintiff's] needs for successful reentry into the community." Dkt. No. 2-4 at 15. The Panel also considered Plaintiff's criminal history, failure to complete programming, and "poor" disciplinary record including keep lock time and "other sanctions." *Id.* at 15-16. The Panel concluded that Plaintiff's behavior during the hearing suggested that he was a "victim and took no responsibility for [his] actions and minimized [his] previous unlawful behavior." *Id.* at 16. "New York Executive Law Section 259-i, [...], explicitly requires Parole Boards to consider the seriousness of the inmate's crime." *Robles v. Dennison*, 449 Fed.Appx. 51, 53 (2d Cir. 2011) (New York's courts have interpreted Section 259–i(2)(c)(A) to allow the denial of parole based on the severity of the offense of conviction); *see also Hodge*, 2014 WL 245333, at *13 ("[t]he nature of the petitioner's crime bears on 'whether his release is compatible with the welfare of society ...' "). While Plaintiff disagrees with the Panel's decision, other than conclusory allegations, the Complaint is void of any facts or argument to plausibly suggest that Plaintiff was denied release arbitrarily or capriciously.

Accordingly, because Plaintiff has failed to establish that he enjoyed a protected liberty interest in parole release, the alleged deficiencies in the consideration of his parole do not state a claim upon which relief can be granted under 42 U.S.C. § 1983 and is dismissed without prejudice.

## B. Medical Claims

Plaintiff claims that he is "totally blind" and that he did not receive any medical treatment for his eyes until 2015.[8] Dkt. No. 2-4 at 3. "It is well settled that, in

order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[9] Plaintiff cannot premise Section 1983 liability on a defendant's position in the prison hierarchy. *See Colon*, 58 F.3d at 874. "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citations and internal quotations omitted).

 **\*7** Here, the Complaint is void of factual allegations suggesting that any named defendant was personally involved in Plaintiff's medical treatment. In the absence of factual allegations sufficient to plausibly suggest that defendants were personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against them and is subject to dismissal. *See Cipriani v.*

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 79 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

*Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff") (citation omitted).

## V. MOTION FOR INJUNCTIVE RELIEF

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "[T]his circuit has required a party seeking a preliminary injunction to show: (a) irreparable harm and (b) either (1) a substantial likelihood of success on the merits of the claim, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (internal quotation marks omitted). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Moore*, 409 F.3d at 511.

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Levesque v. Clinton County*, No. 10-CV-787 (DNH/DEP), 2012 WL 6948779, at *11 (N.D.N.Y. Dec. 28, 2012) (citing *inter alia Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)) (holding that a preliminary injunction may not be issued to prevent an injury or harm which was not caused by the wrong claimed in the underlying action); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or

sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" him).

Here, Plaintiff seeks an order preventing the Parole Board from using "boilerplate" language in future decisions and from considering Plaintiff's criminal history, including the Presentence Investigation Report.[10] Dkt. No. 2 at 1; Dkt. No. 2-1 at 1-2; Dkt. No. 2-2 at 1-2. Plaintiff also seeks to restrain the Parole Board from applying Executive Law § 259-i at future Parole Board Hearings. *Id.* As Plaintiff seeks a mandatory injunction, he must meet the higher standard and establish a clear or substantial likelihood of success of show that extreme or very serious damage would result in the absence of the requested relief. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Construing Plaintiff's motion in the light most favorable to him as a pro se litigant, the Court finds that he has failed to substantiate any allegations of irreparable harm with evidence in admissible form. At this juncture, Plaintiff has failed to assert any viable cause of action and all allegations in the Complaint have been dismissed. Moreover, in his motion for injunctive relief, Plaintiff fails to provide any specific facts establishing the likelihood of success on the merits or extreme or serious damage. For the foregoing reasons, Plaintiff's motion for preliminary injunctive relief (Dkt. No. 2) is denied.

## VI. CONCLUSION

**\*8 WHEREFORE**, it is hereby

**ORDERED**, that pursuant to the Court's review under 28 U.S.C. § 1915A, Plaintiff's claims are **DISMISSED without prejudice** for failure to comply with the pleading standards and state a claim; and it is further

**ORDERED** that if Plaintiff wishes to proceed with this action, he must file a signed amended complaint that cures the pleading defects identified above in this Decision and Order; and it is further

**ORDERED** that, upon Plaintiff's full compliance with this Decision and Order, the Clerk shall return the file to this Court further review; and it is further

**ORDERED** that if Plaintiff fails to fully comply with the terms of this Decision and Order **within thirty (30) days** from its filing date, the Clerk shall enter Judgment indicating that this action is **DISMISSED, without further order of this**

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 80 of 129

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

Court, pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

ORDERED that, upon Plaintiff's motion for injunctive relief (Dkt. No. 2) is DENIED; and it is further

ORDERED that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 357297

---

### Footnotes

1    In the Complaint, Plaintiff cites to pages and lines of the Parole Board Hearing transcript. *See* Compl., *generally*. The transcript is annexed to Plaintiff's Motion for a Temporary Restraining Order. *See* Dkt. No. 2-4.

2    Plaintiff's next Parole Hearing is scheduled for March 2018. *See* http://nysdoccslookup.doccs.ny.gov (last visited Jan. 2, 2018).

3    Executive Law § 259-i provides, in pertinent part:

   Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department and any recommendation regarding deportation made by the commissioner of the department pursuant to section one hundred forty-seven of the correction law; (v) any current or prior statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

   N.Y. Exec. Law § 259-i.

   7 NYCRR § 251-2.2 is entitled "Function of the review officer" and involves the review of misbehavior reports. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 251-2.2.

4    New York Corr. Law § 71-a provides:

Baker v. New York State Department of Corrections and..., Not Reported in Fed....

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 81 of 129

Upon admission of an inmate committed to the custody of the department under an indeterminate or determinate sentence of imprisonment, the department shall develop a transitional accountability plan. Such plan shall be a comprehensive, dynamic and individualized case management plan based on the programming and treatment needs of the inmate. The purpose of such plan shall be to promote the rehabilitation of the inmate and their successful and productive reentry and reintegration into society upon release. To that end, such plan shall be used to prioritize programming and treatment services for the inmate during incarceration and any period of community supervision. The commissioner may consult with the office of mental health, the office of alcoholism and substance abuse services, the board of parole, the department of health, and other appropriate agencies in the development of transitional case management plans.

N.Y. Corr. Law § 71-a.

COMPAS is a risk-assessment instrument used to "inform decision-making throughout the various phases of incarceration and community supervision." *See* www.doccs.ny.gov (last visited Nov. 3, 2015). COMPAS is used to develop an Inmate's Case Plan or TAP, which is reviewed quarterly. *See id.*

5    Absent such a showing, an inmate may only seek relief in the federal courts through a petition for habeas corpus. *See Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999).

6    The Court will not sua sponte convert this action into a petition for habeas corpus relief. *See Romer v. Travis*, No. 00 CIV 8671, 2001 WL 220115, at *3 (S.D.N.Y. Jan. 31, 2001) ("Conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated.")

7    In *Walker*, the Court noted that "[w]hile one would presume that plaintiff would be seeking his immediate release from the alleged delay in his release," the plaintiff had not pled as such. *Walker*, No. 09-CV-845, Decision and Order, Dkt. No. 5 at 5. The Court took "no position" as to the merits of the plaintiff's claims and directed the defendants to address *Heck* and *Wilkinson* in responsive pleadings. *Id.*

8    It is unclear what relief, if any, Plaintiff is seeking with respect to any Eighth Amendment claim.

9    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

10   To the extent that Plaintiff seeks an order of this Court directing his immediate release from civil commitment, that request is denied. *See* Dkt. No. 2-4 at 35. Plaintiff may seek release only in a petition for a writ of habeas corpus; he may not seek such relief in a Section 1983 suit. *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) (noting that federal habeas corpus review is used to challenge the legality of a state court order of civil commitment); *Buthy v. Comm'r of Office of Mental Health of N.Y.S.*, 818 F.2d 1046, 1051 (2d Cir. 1987) (petitioning for a writ of habeas corpus, after fully exhausting state court remedies, is the appropriate method for an individual to challenge the fact or duration of his involuntary civil commitment in a forensic unit of a psychiatric hospital) (citing*, inter alia, Souder v. McGuire*, 516 F.2d 820, 823 (3d Cir. 1975)) ("There is no question about the appropriateness of habeas corpus as a method of challenging involuntary commitment to a mental institution."); *O'Beirne v. Overholser*, 287 F.2d 133, 136 (D.C. Cir. 1960) ("Habeas corpus is the

traditional means of seeking release from illegal confinement. It is the normal means in this jurisdiction of testing the legality of detention in a mental hospital, whether based on civil or criminal proceedings.").

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

McALLISTER v. ALEXANDRA, Not Reported in Fed. Supp. (2009)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 83 of 129

2009 WL 10675934
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles MCALLISTER, Plaintiff,

v.

George ALEXANDRA, Chairman, New York
State Division of Parole; William Smith, Jr.,
Commissioner, New York State Division of
Parole; Carolyn Buckner, Secretary, New
York State Division of Parole, Defendants.

9:09-CV-0664 (GTS/DRH)
|
Signed 07/28/2009

**Attorneys and Law Firms**

CHARLES McALLISTER, 96–A–1243, Mohawk
Correctional Facility, 6100 School Road, Rome, New York
13442, pro se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, United States District Judge

**\*1** Currently before this Court in this *pro se* civil rights
action filed by Charles McAllister ("Plaintiff") are Plaintiff's
motion to proceed *in forma pauperis* and his motion for
injunctive relief. (Dkt. Nos. 2, 6.) For the reasons set forth
below, Plaintiff's *in forma pauperis* motion is denied without
prejudice. Moreover, Plaintiff's Complaint is *sua sponte*
conditionally dismissed unless, within thirty (30) days of the
date of this Decision and Order, he (1) either pays the Court's
filing fee of three hundred fifty dollars ($350) or files a
second motion to proceed *in forma pauperis* with a completed
certificate portion of the affidavit, *and* (2) files an Amended
Complaint that complies with the terms of this Decision and
Order. In light of the conditional dismissal of the Complaint,
Plaintiff's motion for preliminary injunctive relief is denied
without prejudice.

**I. MOTION TO PROCEED *IN FORMA PAUPERIS***

The Court has reviewed Plaintiff's papers in support of his
motion to proceed *in forma pauperis*. While Plaintiff has
provided a signed inmate authorization form as required by
the Northern District of New York (*see* Dkt. Nos. 3, 4, 5), he

has not completed the certificate portion on the second page of
the form affidavit he completed. (Dkt. No. 2, at 2.) The Court
notes that the certificate portion of the affidavit is particularly
material in this case, because Plaintiff states he is employed
at his current correctional facility. (Dkt. No. 2, ¶ 1.)

The completion of this certificate is required by Local Rule
7.1(b)(1)(A), a copy of which had previously been provided
to the correctional facility at which Plaintiff is incarcerated.
The Court notes that the form affidavit specifically notified
Plaintiff that "**The Certificate portion of this affidavit must
be completed**." (*Id.* at ¶ 1 [emphasis in original].) The Court
notes also that the judges of this Court have repeatedly
denied motions to proceed *in forma pauperis* based on this
deficiency. [1] As a result, the Court denies without prejudice
Plaintiff's motion to proceed *in forma pauperis*.

**II. REVIEW OF PLAINTIFF'S COMPLAINT**

Having reviewed Plaintiff's motion to proceed *in forma
pauperis*, the Court must now consider the sufficiency of
the allegations that he has set forth in his complaint in light
of 28 U.S.C. § 1915(e). This is because Section 1915(e)(2)
(B) directs that, when a plaintiff seeks to proceed *in forma
pauperis*, "(2) ... the court shall dismiss the case at any time if
the court determines that—... (B) the action ... (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may
be granted; or (iii) seeks monetary relief against a defendant
who is immune from such relief." 28 U.S.C. § 1915(e)(2)
(B). Moreover, 28 U.S.C. § 1915A(a) directs that the Court
review a complaint in a civil action "in which a prisoner seeks
redress from a governmental entity or officer or employee of
a governmental entity," and directs that the Court dismiss the
complaint if it is frivolous, malicious, or fails to state a claim
on which relief may be granted.

**A. Governing Legal Standard**

**\*2** It has long been understood that a dismissal for failure
to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), may
be based on either or both of two grounds: (1) a challenge
to the "sufficiency of the pleading" under Fed. R. Civ. P.
8(a)(2); or (2) a challenge to the legal cognizability of the
claim. *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211,
nn. 15–16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report–
Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires
that a pleading contain "a short and plain statement of the
claim *showing* that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n.18 [citations omitted]. [2]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n.22 [citations omitted].

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted]. [3]

 **\*3** As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [4] It should be emphasized that Fed. R. Civ. P. 8's plausibility

standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. [5]

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se*. However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), [6] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12. [7] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [8] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp.2d at 214, n.28 [citations omitted].

 **\*4** With this standard in mind, the Court will review Plaintiff's Complaint.

### B. Summary of Plaintiff's Complaint

Construed with the special leniency afforded to the pleadings of *pro se* civil rights litigants, Plaintiff's Complaint alleges as follows. Plaintiff appeared before the New York State Board of Parole in 2004, 2006, and 2008 and, following each appearance, was denied parole release. (Dkt. No. 1 at 4–5.) The denial of parole release was "based in part on

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 85 of 129

McAllister v. Alexandria, Not Reported in Fed. Supp. (2009)

incorrect and erroneous information recorded in Plaintiff's Parole and Department of Correctional Services crime and sentence reports," which stated that Plaintiff had "fired a shot at an unidentified victim ... and then throw [sic] the weapon out of the window of said vehicle." (*Id.* at 4.) [9] Judicial review of the 2004 and 2006 parole board decisions was denied as moot in light of Plaintiff's subsequent appearances before the parole board. (*Id.* at 5.) The Albany County Supreme Court denied Petitioner's challenge to the 2008 denial of parole release at least in part on a finding that Petitioner failed to exhaust his administrative remedies. This finding was erroneous and was based upon false information provided to the court by Defendant Buckner. (*Id.*) Plaintiff also considers the parole board's use of satellite video conferencing instead of a personal interview to have been prejudicial to his rights. (*Id.*) [10]

As a result of the foregoing, Plaintiff claims that he was denied the right to a fair and impartial parole hearing in 2004, 2006, and 2008, in violation of his due process rights. (Dkt. No. 1 at 6.) In addition to significant monetary damages, Plaintiff seeks declaratory and injunctive relief restructuring the operations of the New York Division of Parole. (*Id.* at 8–9.) [11]

### C. Analysis of Plaintiff's Complaint

Plaintiff seeks to maintain this action pursuant to 42 U.S.C. § 1983. Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by persons acting under color of state law. *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 [1990] [quoting 42 U.S.C. § 1983] ); *see also Myers v. Wollowitz*, 95–CV–0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) ("[Section 1983] is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.") (citation omitted).

**\*5** "In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (citation omitted). It is well-settled, however, that "the New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release," and that, as a result, prisoners in New York state are not entitled to the safeguards afforded by federal due process with respect to parole release determinations. *Barna v. Travis*,

239 F.3d 169, 171 (2d Cir. 2001) (per curiam). [12] Because an inmate in the custody of New York state does not have a liberty interest in parole release that is protected by the Due Process Clause, alleged violations of procedural requirements of the New York parole scheme "are matters for consideration by the state courts." *Boothe v. Hammock*, 605 F.2d 661, 665 (2d Cir. 1979).

Accordingly, Plaintiff's claims that his due process rights were violated because the status reports submitted to the Parole Board for consideration in connection with Plaintiff's possible release on parole contained false and misleading information do not state a claim upon which relief may be granted in this § 1983 action. [13]

The Court has also considered whether the allegations of Plaintiff's Complaint are sufficient to state a § 1983 claim against Defendant Alexander based upon the alleged violation of his right to have incorrect information expunged from his file, and concludes that they are not. In *Paine v Baker*, 595 F.2d 197, 201 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit recognized that in certain limited circumstances an inmate has constitutional right under the Due Process Clause to have incorrect information expunged from his file. According to *Baker*, a plaintiff can maintain a § 1983 if he establishes (1) the existence of particular false information regarding his prior criminal history or disciplinary record; (2) a probability that the information will be relied on in a constitutionally significant manner; and (3) that, as a jurisdictional predicate, he requested that the false information be expunged, but prison officials declined to do so. *See Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979).

**\*6** The Second Circuit, however, "has not followed *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979), in recognizing that a prisoner has a constitutional right to have incorrect information relied upon in a parole hearing expunged from his or her file." *LaBounty v. Coombe*, No. 99–2318, 2000 WL 287726, at *1 (2d Cir. Mar. 16, 2000); *see also Caldwell v. McNutt*, 158 Fed.Appx. 739, 741 (6th Cir. 2006) (finding that, even if the parole board relied on inaccurate information to deny plaintiff parole, it did not violate any liberty interest protected by the United States Constitution); *Johnson v. Rodriguez*, 110 F.3d 299, 309 (5th Cir. 1997) ("[O]ur precedent is definite and precise on this point: in the absence of a cognizable liberty interest, a state prisoner cannot challenge parole procedures under the Due Process Clause.").

In all events, any such claim by Plaintiff is not cognizable because the allegedly false information was expunged from his records in September, 2008, shortly after he wrote to Defendant Alexander complaining of same. (Dkt. No. 1 at 12–13.) Based upon the foregoing, the Court finds that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Based upon the foregoing, the Court finds that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## III. OPPORTUNITY TO FILE AN AMENDED COMPLAINT

Should Plaintiff allege that this Court has jurisdiction over his claims, he may file an Amended Complaint **within thirty (30) days** of the filing date of this Decision and Order. Any Amended Complaint filed by Plaintiff must be a complete pleading which will supersede and replace his original Complaint in its entirety, and which may not incorporate by reference any portion of his original Complaint. Any Amended Complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8, 10 and 12 of the Federal Rules of Civil Procedure. [14]

Plaintiff is advised that, if he fails to timely submit such an Amended Complaint, this action will be dismissed without prejudice without further order of this Court.

## IV. MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

A preliminary injunction "is an extraordinary remedy and should not be routinely granted." Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986) (citation omitted). In most cases, the party seeking the injunction must show "that [he] will suffer irreparable harm in the absence of an injunction and demonstrate either (1) 'a likelihood of success on the merits' or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly' " in favor of the moving party. See Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996) (quotation and other citation omitted). [15] "The showing of irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.' " Brown v. Middaugh, No. 96–CV–1097, 1998 WL 566791, *1 (N.D.N.Y. Sept. 3, 1998) (quotation and other citations omitted). Speculative, remote or future injury is not the

province of injunctive relief. See Los Angeles v. Lyons, 461 U.S. 95, 111–12 (1983). "Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages." Encore Credit Corp. v. LaMattina, No. CV–05–5442, 2006 WL 148909, *5 (E.D.N.Y. Jan. 18, 2006) (citation omitted).

**\*7** Plaintiff seeks the issuance of an order by this Court enjoining the Defendants from continuing to act in accordance with the parole procedures complained of by Plaintiff in his Complaint. (Dkt. No. 6 at 1.) Thus, Plaintiff asks that Defendants be enjoined from assigning parole commissioners to participate in reappearance proceedings or to determine parole appeals, failing to promptly process and decide appeals from parole board determinations, interviewing prisoners by satellite video conference, and using erroneous information in making parole determinations. (Id.)

Plaintiff's claim that he is likely to suffer imminent irreparable harm if the requested relief is not granted appears to be speculative, at best. Moreover, in light of the Court's finding that the Complaint, as drafted, does not state a claim upon which relief may be granted, the requirement that Plaintiff demonstrate a likelihood of succeeding on the merits of his claims, or that he provide evidence of sufficiently serious questions going to the merits of the claims and a balance of hardships tipping decidedly toward him, cannot be satisfied. See Covino, 967 F.2d at 77.

Because Plaintiff failed to establish the two requisite elements discussed above, his motion for injunctive relief is denied without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion to proceed _in forma pauperis_ (Dkt. No.2) is **DENIED** without prejudice; and it is further

**ORDERED** that should Plaintiff wish to continue his action in this Court, he must satisfy the following two conditions within **THIRTY (30) DAYS** of the filing date of this Decision and Order:

(1) either pay the Court's filing fee of three hundred fifty dollars ($350) or file a second motion to proceed _in forma pauperis_ with a completed certificate portion of the affidavit, _AND_

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 87 of 129

McAllister v. Alexandra, Not Reported in Fed. Supp. (2009)

(2) file an Amended Complaint that complies with the terms of this Decision and Order;

and it is further

**ORDERED** that any Amended Complaint filed by Plaintiff must be a complete pleading which will supersede and replace his original Complaint in its entirety, and which may not incorporate by reference any portion of his original Complaint; and it is further

**ORDERED** that any Amended Complaint filed by Plaintiff must comply with the pleading requirements of Fed. R. Civ. P. 8, 10 and 12; and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 6) is **DENIED** without prejudice; and it is further

**ORDERED** that, if Plaintiff fails to comply fully with the two conditions described above within **THIRTY (30) DAYS** of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice without further order of this Court, and it is further

**ORDERED** that, upon the filing of an Amended Complaint, the file in this matter shall be returned to the Court for further review.

**All Citations**

Not Reported in Fed. Supp., 2009 WL 10675934

---

### Footnotes

1    *See, e.g., Resto v. Weissmane*, 08–CV–0340, 2008 WL 4021053, at *3 (N.D.N.Y. Aug. 25, 2008) (Kahn, J., adopting on *de novo* review report-recommendation by Lowe, M.J.) (denying motion to proceed *in forma pauperis* in part on plaintiff's failure to complete certificate portion of form affidavit), *accord, Ramos v. Doe*, 97–CV–1074, 1997 WL 627549, at *3 (N.D.N.Y. Oct. 9, 1997) (Pooler, J.), *Ortiz v. Walker*, 96–CV–1506, 1997 WL 405209, at *1 (N.D.N.Y. July 17, 1997) (Pooler, J.), *Caseras v. Goord*, 96–CV–1432, 1996 WL 743836, at *1 (N.D.N.Y. Dec. 20, 1996) (Pooler, J.), *Peterkin v. Androsko*, 96–CV–1382, 1996 WL 705872, at *1 (N.D.N.Y. Nov. 29, 1996) (Pooler, J.), *Vasquez v. Turner*, 96–CV–1161, 1996 WL 705880, at *1 (N.D.N.Y. Nov. 29, 1996) (Pooler, J.), *Moses v. Sokol*, 96–CV–1411, 1996 WL 705884, at *1 (N.D.N.Y. Nov. 29, 1996) (Pooler, J.).

2    *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

3    *See also Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

4    *See, e.g., Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215–16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give

McAllister v. Alexandra, Not Reported in Fed. Supp. (2009)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 88 of 129

lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

5    For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson*, 127 S. Ct. at 2199–2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01–CV–0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02–CV–1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01–CV–6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99–CV–3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

6    *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06–1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

7    *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe*, 99 F.3d 402 (2d Cir. 1995).

8    *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted], *accord, Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

9    Defendant Smith presided over Plaintiff's parole board hearings in 2006 and 2008. Plaintiff claims that "this practice was not in compliance with statutory law." (*Id.* at 6.)

10    Plaintiff does not allege that Defendant Alexander was personally involved in or responsible for the preparation of the reports, or that he was a member of the any of the parole boards before which Plaintiff appeared. Rather, Plaintiff claims that administrative appeals were directed to Defendant Alexander and that he had notified Alexander of his concerns about his parole proceedings. (Dkt. No. 1 at 7.)

11    To the extent that Plaintiff seek damages against the Defendants in their official capacities, those claims are dismissed pursuant to the Eleventh Amendment. *See Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to

McAllister v. Alexandra, Not Reported in Fed. Supp. (2009)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 89 of 129

be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").

12    The decision of the Supreme Court in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), allowing a § 1983 action by Ohio prisoners challenging the constitutionality of that state's parole process, is not to the contrary. The *Wilkinson* Court "did not create or comment on any constitutional entitlements relating to parole." *Standley v. Dennison*, 05–CV–1033, 2007 WL 2406909, at *1 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J.). Moreover, Plaintiff does not claim that he was denied parole release "arbitrarily" or "capriciously," for example, based on an inappropriate consideration of a protected classification (such as race, religion, gender, economic status, etc.) or an "irrational distinction." *Standley,* 2007 WL 2406909 at *1 (quoting *Yourdon v. Johnson*, 01–CV–0812, 2006 WL 2811710 at *2 [W.D.N.Y. Sept. 28, 2006] ). Rather, the crux of his Complaint is that the parole board acted on the basis of the information presented to them.

13    Any claim by Plaintiff that he is entitled to damages resulting from the denial of parole release is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (§ 1983 damages action can not proceed if decision in plaintiff's favor would necessarily invalidate the underlying criminal conviction or sentence and thereby attack the fact or length of confinement). The *Heck* doctrine has been found to be applicable to suits contesting the denial of parole release. *See Grant v. Ahern*, 03–CV–0539, 2005 WL 1936175, at *5 n. 3 (N.D.N.Y. Aug. 2, 2005) (Magnuson, V.J.); *Lampkin v. N.Y. City Dep't of Probation*, 00–CV–7165, 2001 WL 210362, at *2 (S.D.N.Y. Mar. 1, 2001). *See also Jude v. New York State*, 07–CV–5890, 2009 WL 928134, at *6 (S.D.N.Y. Mar. 30, 2009) (*Heck* favorable termination rule applies to § 1983 claims regarding parole revocation).

14    Plaintiff is advised that any Amended Complaint filed by him must, among other things, allege claims of misconduct or wrongdoing (by Defendants) which he has a legal right to pursue, and over which this Court may properly exercise jurisdiction.

15    Where, as here, the movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief he seeks, the injunction sought is properly characterized as mandatory rather than prohibitory and the movant must make a "clear" or "substantial" showing of the likelihood of success as well as irreparable harm if the court does not grant the injunctive relief. *See id.* (quotation omitted).

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 1936175
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael GRANT, Plaintiff,

v.

Barbara AHERN, Probation Officer for Onondaga
County; Frank Headley, Program Assessor for New York
State Department of Correctional Services; Defendants.

No. 03CV0539(FJS/RFT).
|
Aug. 2, 2005.

**Attorneys and Law Firms**

Michael Grant, Rome, NY, pro se.

MEMORANDUM AND ORDER

MAGNUSON, J.

**\*1** This matter is before the Court [1] on Defendants' Motions to Dismiss. For the reasons that follow, Defendant Barbara Ahern's Motion is granted and Defendant Frank Headley's Motion is granted in part and denied in part.

BACKGROUND

A. Procedural Posture
Plaintiff submitted an Amended Complaint on May 14, 2003. (Clerk Doc. No. 6.) On March 23, 2004, the Court dismissed in part the Amended Complaint and ordered Plaintiff to file a Second Amended Complaint. (*Id.* No. 45.) The Court also ordered that the Second Amended Complaint substitute Defendant Frank Headley in place of an unnamed defendant. The Court further limited the Second Amended Complaint to Defendants Barbara Ahern and Frank Headley and insisted that Plaintiff provide information regarding the exhaustion of administrative remedies. (*Id.*) Plaintiff filed his Second Amended Complaint [1] on April 12, 2004. (*Id.* No. 46.)

Presently before the Court are Defendant Ahern's Motion to Dismiss the Second Amended Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and Defendant Headley's Motion to Dismiss the Second Amended Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a response opposing both Motions to Dismiss, as well as a Motion for the Appointment of Counsel.

B. Facts
In late 1999, while Plaintiff was incarcerated at the Onondaga County Justice Center, Defendant Ahern, an investigator for the Onondaga County Probation Department, interviewed him for the purpose of preparing his Presentence Investigation Report ("PSR"). (Second Am. Compl. ¶¶ 11, 12.) During the interview, Defendant Ahern noticed documents pertaining to two previously dismissed charges against Plaintiff. (*Id.* ¶¶ 10, 13.) Defendant Ahern questioned Plaintiff about the dismissed charges but Plaintiff refused to discuss them with her. (*Id.* ¶ 13.) Defendant Ahern included information about the dismissed charges in Plaintiff's PSR. (*Id.* ¶ 14.)

On January 3, 2000, Plaintiff applied for a work release program. (*Id.* ¶ 16.) His request was denied. Plaintiff claims that the denial of his work release was "based upon the inaccurate, misleading, and false information contained in the presentence report-information that pertained to the dismissed charges." (*Id.* ¶ 17.)

In October 2000, Defendant Frank Headley, a New York State Department of Corrections Program Assessor, advised Plaintiff that he was to be placed in a sex offender program based on information in his PSR that pertained to the dismissed charges. (*Id.* ¶ 25.) While in the sex offender program, Plaintiff claims he was subjected to verbal abuse by fellow inmates and Department of Corrections staff. (*Id.* ¶¶ 27-28.) Plaintiff claims he was subsequently denied parole twice based on "false, misleading, and inaccurate information that pertained to the dismissed charges." (*Id.* ¶¶ 32, 42.) Plaintiff also claims that he suffered undeserved stigma when Defendant Headley informed his family that he was being denied parole on the basis of his sex offender status. (*Id.* ¶¶ 46-50.)

**\*2** Over the course of these events, Plaintiff repeatedly wrote letters to both Defendants requesting that they investigate and remove any errors contained in his PSR. (*Id.* ¶¶ 18, 21, 33, 36, 39, 43.) Neither Defendant replied to Plaintiff's requests. (*Id.* ¶¶ 20, 22, 34, 37, 40, 44.)

Plaintiff alleges that his due process rights were violated when (1) Defendant Ahern deliberately included false information in his PSR, and (2) Defendant Headley, who knew the information was false, failed to correct the information, relied

upon it in making program decisions, and informed Plaintiff's family members of his sex offender status. (*Id.* ¶¶ 52-53, 57-58.)

DISCUSSION

A. Standard of Review

The same standards are employed in analyzing a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c). *Juster Ass'n v. Rutland,* 901 F.2d 266, 269 (2d Cir.1990); *Ad-Hoc Comm. of the Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch Coll.,* 835 F.2d 980, 982 (2d Cir.1987). These standards do not require the Court to weigh the evidence that might be presented at trial, but instead determine the legal sufficiency of the Second Amended Complaint. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' ") (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) or Rule 12(c), the Court is required to accept the material facts alleged in the complaint as true. *Patel v. Searles,* 305 F.3d 130, 134-35 (2d Cir.2002); *Frasier v. Gen. Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991) (citing *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)). Furthermore, the Court may not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

In cases involving *pro se* litigants, great liberality is used in construing the complaint. *Platsky v. C.I.A.,* 953 F.2d 26, 28 (2d Cir.1991). "[T]he Supreme Court has instructed the district courts to construe *pro se* complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel." *Id.; see also Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, although the pleading standard is a liberal one, "bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. "42 U.S.C.A. § 1997e(a). To comply with the PLRA's exhaustion requirement, inmates incarcerated in New York must: (1) make a grievance to the Inmate Grievance Resolution Committee ("IGRC"); (2) appeal to the Superintendent; and (3) appeal to the Central Office Review Committee ("CORC"). N.Y. Comp.Codes R. & Regs. 7, § 701.7(a)-(c) (2000).

**\*3** Defendants baldly assert that "Plaintiff has not alleged in his complaint that he has exhausted his administrative remedies, nor will he be able to so." (Def. Headley's Mem. at 7.) However, under Rule 12(b)(6), "the failure to exhaust one's remedies under the PLRA does not amount to a failure to state a claim." *Barney v. Bureau of Prisons,* File No. 02-5284, 2004 WL 2810108, at *1 (E.D.N.Y. Dec.8, 2004). Thus, the Court should refrain from dismissing a complaint under Rule 12(b)(6) unless "failure to exhaust is apparent from the face of the complaint." *Id.* (quoting *McCoy v. Goord,* 255 F.Supp.2d 233, 249 (S.D.N.Y.2003)).

The Court ordered Plaintiff to submit a Second Amended Complaint that specifically identified the steps Plaintiff utilized to exhaust his administrative remedies. The Second Amended Complaint alleges that Plaintiff wrote numerous letters to Defendants regarding his claims, but received no response. (*See* Second Am. Compl. ¶¶ 18-22, 33-37, 39-40, 43-44.) The Second Amended Complaint also alleges that Plaintiff "filed collateral attacks." (*Id.* ¶ 24 .) Taking these allegations as true, as the Court must do on a Motion to Dismiss, the Court cannot conclude that failure to exhaust is apparent on the face of the Second Amended Complaint.

C. Defendant Ahern

State probation officers, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in preparing presentence reports. *Hili v. Sciarrotta,* 140 F.3d 210, 214 (2d Cir.1998); *see also Dorman v. Higgins,* 821 F.2d 133, 137 (2d Cir.1987) (holding that federal probation officers are entitled to absolute immunity when preparing presentence reports). This immunity extends even when a claimant contends that inaccurate information has been included in the presentence report. *Hili,* 140 F.3d at 213-15. New York law provides a number of procedural mechanisms that protect a defendant's right not to be punished on the basis of inaccurate information in a presentence

report, including disclosure of the report to the defendant, presentence conferences, appeals, and collateral attacks. *See* N.Y.Crim. Proc. Law §§ 390.50(2)(a), 400.10(1), 440.20, 450.10(2). Coupling safeguards such as these with absolute immunity allows state officers to perform their duties free from the fear and intimidation of civil suits without sacrificing a defendant's rights. *See Dorman,* 821 F.2d at 136-37; *see also Shelton v. McCarthy,* 699 F.Supp. 412, 413 (W.D.N.Y.1988).

Defendant Ahern's preparation of the PSR falls squarely within the protection afforded by absolute immunity. Even a claim that Defendant Ahern deliberately included false and misleading information in the PSR fails because absolute immunity spares an official any scrutiny of her motives in the performance of her duties. *Dorman,* 821 F.2d at 139. And even without the protection of absolute immunity, Plaintiff's claims against Defendant Ahern nevertheless fail because of the wide discretion given to preparers of presentence reports in the range of material allowed to be contained within those reports. *See Hili,* 140 F.3d at 213 ("Such investigation may also include any other matter which the agency conducting the investigation deems relevant to the question of the sentence")(quoting N.Y.Crim. Proc. Law § 390.30(1)). New York state courts have explicitly recognized that the scope of presentence reports includes information about offenses for which a defendant has not been convicted. *See, e.g., People v. Whalen,* 99 A.D.2d 883, 472 N.Y.S.2d 784, 787 (N.Y.App.Div.1984) ("A presentence report ... may include history not only of prior offenses for which defendant has been convicted, but even offenses for which he has not been convicted"). Thus, Plaintiff's claims for monetary damages against Defendant Ahern are dismissed on the basis of absolute immunity. [2]

**\*4** Absolute immunity only protects against suit for monetary damages. *See Hili,* 140 F.3d at 214. Plaintiff's Second Amended Complaint specifically seeks monetary damage, but also seeks "any and all different and further relief as this Court may deem just, proper, and equitable." (Second Am. Compl. at 10.) Thus, Plaintiff's claims for injunctive relief are not protected by absolute immunity. However, Plaintiff complains that he has been detrimentally affected by the use of this allegedly inaccurate PSR, specifically in his "participation in institutional rehabilitation programs." (*Id.* ¶ 53.) These claims are more appropriately pursued against the relevant parole or correctional official rather than the presiding probation officer. *See Hili,* 140 F.3d at 216. Accordingly, Plaintiff fails to state a claim for injunctive relief

against Defendant Ahren, and therefore all claims against her are dismissed. *See id.*

### D. Defendant Headley

Under 42 U.S.C. § 1983, Plaintiff must allege that a state official acting under color of state law violated his constitutional rights. *See Washington v. County of Rockland,* 373 F.3d 310, 315 (2d Cir.2004). Plaintiff claims that Defendant Headley improperly classified him as a sex offender based on inaccurate information contained in the PSR, that Defendant Headley refused to correct this allegedly erroneous classification despite Plaintiff's repeated complaints, and that Plaintiff was damaged as a result. Plaintiff seeks both monetary and injunctive relief against Defendant Headley.

Defendant Headley is entitled to qualified immunity for Plaintiff's claims for monetary damages. "Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In determining whether a particular right was clearly established, courts in the Second Circuit consider three factors: (1) whether the right in question was defined with reasonable specificity; (2) whether the Supreme Court or the Second Circuit recognize that right; and (3) whether a reasonable defendant would have understood that his or her acts were unlawful under existing law. *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003); *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). Plaintiff alleges that because Defendant Headley failed to correct false information contained in his PSR, Plaintiff was denied work release, placed in a sex offender program, and denied parole. However, since none of these events violate a clearly established constitutional right, Defendant Headley is entitled to qualified immunity.

The Second Circuit has not recognized that prisoners have a constitutional right to have incorrect information expunged from their files. *LaBounty v. Coombe,* No. 99-2318, 2000 WL 287726, at *2 (2d Cir. Mar.16, 2000). Plaintiff incorrectly relies on the Fourth Circuit case, *Paine v. Baker,* 595 F.2d 197 (4th Cir.1979), and subsequent District Court cases from this Circuit, to assert that he has such a constitutional right. (*See* Clerk Doc. No. 68.) However, "this circuit has not followed *Paine v. Baker,* 595 F.2d 197 (4th Cir.1979), in recognizing

that a prisoner has a constitutional right to have incorrect information relied upon in a parole hearing expunged from his or her file." *LaBounty,* 2000 WL 287726, at *2.

 **\*5** Plaintiff also claims that he has been denied due process with regard to his application for the work release program and for the denial of his parole. Plaintiff has no liberty interest in parole and so the protections of the Due Process Clause do not apply. *See Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001); *see also Greenholtz v. Inmates of Neb. Penal Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). Similarly, Plaintiff has no constitutional right to work release or any temporary release program. *See Lee v. Governor of N.Y.,* 87 F.3d 55, 58-59 (2d Cir.1996); *see also Romer v. Morgenthau,* 119 F.Supp.2d 346, 358-59 (S.D.N.Y.2000). Since Plaintiff has no liberty interest whatsoever in either work release or parole, these interests are not clearly established and therefore Defendant Headley is entitled to qualified immunity with respect to these claims.[3]

Plaintiff also asserts that he was wrongly assigned to the sex offender program. Three circuits have held that classification as a sex offender during imprisonment implicates a liberty interest and that prisoners must be afforded due process to dispute such a classification. *Chambers v. Colorado,* 205 F.3d 1237 (10th Cir.2000); *Kirby v. Siegelman,* 195 F.3d 1285 (11th Cir.1999); *Neal v. Shimoda,* 131 F.3d 818 (9th Cir.1997). Assuming that Plaintiff has a protected liberty interest in his offender classification, Defendant Headley is nonetheless shielded from liability for damages under qualified immunity. Neither the Second Circuit nor the Supreme Court have recognized this specific liberty interest, and therefore no reasonable prison official would have understood that his or her acts were unlawful under existing law. *See Neal,* 131 F.3d at 832 (holding that prison officials in a circuit where such a liberty interest had not previously been recognized were entitled to qualified immunity). Thus, the Court cannot say that Defendant Headley's conduct in October 2000 violated clearly established constitutional rights. Accordingly, Plaintiff is not entitled to monetary damages against Defendant Headley.

However, like absolute immunity, qualified immunity does not protect against a suit for injunctive relief. As previously noted, Plaintiff's Second Amended Complaint seeks equitable relief against both Defendants. Defendant Headley advances no argument to support the dismissal of injunctive relief as it pertains to Plaintiff's claim that Defendant Headley's classification of Plaintiff as a sex offender violated his constitutional due process rights. Although the Second Circuit has not expressly determined whether a plaintiff has a constitutional due process right regarding his classification or placement in a sex offender program while incarcerated, and indeed, Plaintiff's claim may be meritless, the Court cannot say that Defendant Headley has demonstrated that Plaintiff fails under Rule 12(b)(6) to state a claim for injunctive relief. *See e.g., Bodie v. Morgenthau,* 342 F.Supp.2d 193, 203 (S.D.N.Y.2004) (finding under similar circumstances that plaintiff stated a claim for injunctive relief to withstand Rule 12(b)(6) motion against Department of Corrections Commissioner that pertained to plaintiff's security classification, transfers and status in the sex offender program). Accordingly, Defendant Headley's Motion on this point is denied.

E. Motion for Appointment of Counsel

 **\*6** The Second Circuit has set out factors for courts to consider in evaluating a *pro se* plaintiff's motion for the appointment of counsel. *Hodge v. Police Officers,* 802 F.2d 58, 61-62 (2d Cir.1986). First, the Court must decide whether Plaintiff's claim "seems likely to be of substance." *Id.* at 61. If Plaintiff meets this threshold requirement, the Court should consider a number of other factors including the complexity of the legal issues and the necessity of cross-examination. *Id.* at 61-62.

Plaintiff has not met the threshold requirement set by the Second Circuit. The only facts to determine whether this lawsuit is of substance are those portions of the Second Amended Complaint where Plaintiff states the facts surrounding his claim. Where a plaintiff does not provide evidence, as opposed to mere allegations, relating to his claims, he has not met the threshold requirement for the appointment of *pro bono* counsel. *See Harmon v. Runyon,* No. 96-6080, 1997 WL 118379, at *1 (S.D.N.Y. Mar.17, 1997); *see also Ruston v. CNY Centro, Inc.,* No. 98-0378, 1998 WL 238617, at *4 (N.D.N.Y. May 6, 1998).

CONCLUSION

Plaintiff's claims against Defendant Ahren fail in their entirety. Plaintiff's claims for monetary relief against Defendant Headley likewise fail. However, Plaintiff has stated a constitutional claim against Defendant Headley for injunctive relief, as it pertains to Defendant Headley's classification of Plaintiff as a sex offender while incarcerated.

The Court reminds Plaintiff that in order to succeed on his claim, he must demonstrate that he has fully exhausted his administrative remedies as required by the PLRA. The Court also notes that Plaintiff has requested to submit evidence to support his claims, and that Plaintiff may submit such evidence in accord with the Local Rules. Accordingly, based on all the files, records and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant Ahern's Motion to Dismiss (Clerk Doc. No. 62) is GRANTED;

2. Defendant Headley's Motion to Dismiss (Clerk Doc. No. 59) is GRANTED in part and DENIED in part;

3. Plaintiff's Motion for Appointment of Counsel (Clerk Doc. No. 75) is DENIED without prejudice;

4. Plaintiff's Complaint against Defendant Ahren is DISMISSED with prejudice;

5. Plaintiff's Complaint against Defendant Headley seeking monetary relief is DISMISSED with prejudice;

6. Plaintiff's Letter Request to Submit Evidence (Clerk Doc. No. 79) is DENIED as moot, and Plaintiff may submit evidence in conjunction with any future motions as provided by the Local Rules; and

7. The deadline to file dispositive motions is EXTENDED from February 28, 2005, to September 30, 2005.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1936175

---

## Footnotes

1    This case was originally assigned to the Honorable Frederick J. Scullin, Jr.. Pursuant to an inter-circuit assignment under 28 U.S.C. § 294(d), the undersigned is now the Judge of record in this case.

1    Plaintiff has titled the April 12, 2004 pleading as "Plaintiff's Third Amended Complaint." However, the Court will refer to the pleading as "Plaintiff's Second Amended Complaint."

2    Moreover, the statute of limitations bars Plaintiff's claim against Defendant Ahern. In New York, a prisoner must bring his § 1983 action within three years of when the cause of action accrues. N.Y.C.P. L.R. § 214(5); *Harris v. City of New York,* 186 F.3d 243, 247-48 (2d Cir.1999). The cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action. *See Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980). Plaintiff's Complaint was filed on April 30, 2003, but he complains that the PSR was erroneous in January 2000. Thus, Plaintiff's claim against Defendant Ahern is untimely and must be dismissed.

3    Moreover, to the extent that Plaintiff alleges that Defendant Headley failed to correct and knowingly relied on false information ultimately resulting in Plaintiff's denial of parole, such an action is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *Heck* held that a § 1983 action for damages cannot proceed if a decision in favor of the plaintiff would necessarily invalidate the underlying criminal conviction or sentence. *See id.* at 486-87. *Heck* has been held to apply to "suits contesting the rejection of parole release." *Lampkin v. N.Y. City Dep't of Probation,* No. 00-7165, 2001 WL 210362, at *2 (S.D.N.Y. Mar.1, 2001) (citation omitted).

---

2001 WL 210362

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Eugene LAMPKIN, Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF PROBATION

(Director 7/21/95–12/14/95), et al., Defendants.

No. 00 Civ. 7165.

|

March 1, 2001.

**Attorneys and Law Firms**

Eugene Lampkin, Arthur Kill C.F., Staten Island, NY, for Plaintiff.

Muriel Goode–Trufant, City of New York Law Dep't, New York, NY, Edward Rodriguez, Office of the Attorney General, New York, NY, for Defendants.

*MEMORANDUM & ORDER*

KNAPP, Senior J.

**\*1** Plaintiff Eugene Lampkin (hereinafter "plaintiff"), an inmate in a New York State correctional facility, brought this action *pro se* under 42 U.S.C. § 1983, alleging the violation of his constitutional rights and of the federal Privacy Act, 5 U.S.C. § 552(a), when New York governmental agencies allegedly denied him a fair parole hearing by relying upon false information contained in his pre-sentence report and pre-parole summary report. He has sued the state's Division of Parole, its Department of Correctional Services, and its Division of Criminal Justice Services, as well as the New York City Department of Probation and various employees of these agencies (hereinafter collectively referred to as the "defendants").

Defendants now move to dismiss the complaint, and for reasons noted below, we grant their motion. Also, plaintiff has moved for us to request appointment of counsel. We deny his motion. While he may still have a viable habeas corpus petition, he must bring it as a new action following the requirements of the habeas rules and procedures.

*BACKGROUND*

We take the facts and inferences therefrom in the light most favorable to plaintiff.

Plaintiff states that on November 23, 1995, he pled guilty to manslaughter in the first degree and was sentenced to a term of five to fifteen years based on information contained within his pre-sentence report ("PSR"). He claims that prior to his sentencing, defendant Brown, a probation officer with the New York City Department of Probation, interviewed him and asked him "how much time [he] had done in Colorado." Plaintiff told Brown "that he had never been convicted of any crime in Colorado nor had he served any term of incarceration in that or any other state." Plaintiff notes that, although he was arrested in El Paso County, Colorado in 1989, all charges against him were subsequently dismissed. Nevertheless, Brown included the following commentary in the PSR: "[Plaintiff's] legal history dates back to 1989 and he is known to the Colorado Authorities. Most of his offenses involved weapons charges and assault, for which he received terms of incarceration." After sentencing, plaintiff eventually received a copy of the PSR. Subsequently, he initiated several unsuccessful requests to have it corrected.

In December 1999, parole officer Andrea Goldsmith interviewed plaintiff for his initial parole appearance in February 2000. At this interview, plaintiff informed Goldsmith of the error concerning the Colorado charge. Goldsmith advised plaintiff that she could indicate in the pre-parole summary that plaintiff's Colorado case had been dismissed, but that she could not alter the PSR because another agency had prepared it.

Plaintiff then informed Goldsmith that a 1994 Kings County criminal charge had been dismissed. According to the complaint, Goldsmith then falsely reported in her pre-parole summary that "the Kings Criminal Case had been closed and all restitution had been paid." Plaintiff claims that the government denied him parole based on the mistaken information contained in the pre-sentence report and the pre-parole summary. On May 23, 2000, the Division of Parole affirmed the parole commissioners' decision. In so ruling, the Division allegedly continued to rely upon the inaccurate information.

**\*2** In addition to his lingering in prison, plaintiff also alleges the following continuing harm: "Defendant Department of

Correctional Services continues to utilize the false report for purposes of transfers, classification and employment options" in prison. (Compl.§ IV, ¶ 9). Plaintiff seeks monetary and injunctive relief.

## DISCUSSION

Plaintiff proceeds *pro se,* and thus we read his pleadings liberally "to raise the strongest arguments that they suggest." *McPherson v. Coombe* (2d Cir.1999) 174 F.3d 276, 280 (internal quotation marks omitted). However, plaintiff's case is fatally defective and must be dismissed in its entirety.

First, plaintiff continually emphasizes his claim that defendants have violated provisions of the federal Privacy Act. For example, he repeatedly quotes from one opinion construing the Privacy Act on facts similar to those at bar. *Sellars v. Bureau of Prisons* (D.C.Cir.1992) 959 F.2d 307, 308 (inmate in *federal* prison). But, that statute concerns itself exclusively with the manner in which federal institutions conduct themselves and has no bearing on the instant case, which challenges the conduct of state agencies and officials. *Stoianoff v. Commissioner of Motor Vehicles* (S.D.N.Y.2000) 107 F.Supp.2d 439, 444–45 (citations omitted); *Mamarella v. County of Westchester* (S.D.N.Y.1995) (898 F.Supp. 236, 237–38 (citations omitted). Hence, plaintiff cannot proceed with his Privacy Act claim.

Moreover, we must dismiss the remainder of plaintiff's action according to the rule enunciated in *Heck v. Humphrey* (1994) 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383, a case in which the Supreme Court reconciled § 1983 with the habeas corpus legislation. In so doing, the Court, *id.* at 481–82, noted that a prisoner's § 1983 damages action cannot proceed where his claim "necessarily" attacks "the fact or length of ... confinement."

As observed in *Hill v. Goord* (E.D.N.Y.1999) 63 F.Supp.2d 254, 260 (citing *Heck,* 512 U.S. at 487):

> To comply with the *Heck* rule, a prisoner must establish that his conviction or sentence has been overturned or invalidated by an administrative board or a state court, or a federal court in a habeas proceeding, as a prerequisite to maintaining a § 1983 action. Alternatively, if the lawsuit is not explicitly directed at an unlawful conviction or sentence, the prisoner must establish that his suit does

not "necessarily imply the invalidity of his conviction or sentence."

The *Hill* case further recognized that this doctrine applies to suits for damages as well as for injunctions, and to suits contesting the rejection of parole release. *Id.* at 260–61 (citing cases). It even applies to "challenges to the procedures used as opposed to the result" of an administrative hearing. *Id.* at 260. In the instant case, we must therefore dismiss plaintiff's cause of action relating to the alleged impropriety of his parole hearing and the resulting denial of parole.

**\*3** There remains but one aspect of plaintiff's complaint that we must explore a little further. The *Heck* rule does *not* cover a prisoner's constitutional challenge to the *"conditions* of his prison life" as opposed to "the fact or length of his custody." *Jenkins v. Haubert* (2d Cir.1999) 179 F.3d 19, 26–28. As remarked above, plaintiff avers that, because of the information contained in the allegedly erroneous sentencing and parole reports, he is currently classified in a way that affects the "conditions of his confinement" – namely, by limiting his transfer and employment options.

For two reasons, this line of argument cannot withstand scrutiny. First, the incidental limits on plaintiff's daily life most likely resulted from the very decision-making process that denied him parole. In other words, plaintiff probably cannot establish that his current classification is unfair without *necessarily also* establishing that the denial of parole was unfair. Yet, as cited above, *Heck* and its progeny do not countenance a § 1983 suit when the conditions-of-confinement grievance "necessarily implies" the invalidity of the parole decision. *See generally Gomez v. Kaplan* (S.D.N.Y. Sept. 29, 2000) No. 94 Civ. 3292, 2000 WL 1458804, at [*] 3–11 (discussing in compelling dicta whether a prisoner can proceed separately with his § 1983 claim as to those portions of his punishment which affect only the conditions of his confinement).

Second, an inmate in any event has no constitutional or other federal right to prison employment or transfer privileges. *See Graham v. Kuhlman* (S.D.N.Y. Dec. 12, 1990) No. 88 Civ. 6618, 1990 WL 210298, at [*] 4 (citing *Gill v. Mooney* (2d Cir.1987) 824 F.2d 192, 194) ("There simply is no right to any particular job while in prison, or to prison employment at all."); *Griffin v. Coughlin* (N.D.N.Y.1990) 743 F.Supp. 1006, 1017 (citations omitted) (no Eighth Amendment right to prison work); *Meachum v. Fano* (1976) 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451; *Montayne v. Haymes* (1976)

427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 406 (no due process right to hearing prior to transfer, for whatever reason, of an inmate from one institution to another in the same penal system). Hence, plaintiff has expressed no actionable harm resulting from his present classification.

Courts examining the *Heck* rule have rightly remained concerned that federal habeas corpus relief be available to prisoners cut off from recourse to § 1983. *See, e.g., Jenkins,* 179 F.3d at 21, 26 (citing concurrences in *Spencer v. Kemna* (1998) 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43). In the case at bar, plaintiff remains in custody and may still seek state court relief followed, if unsuccessful in that forum, by a federal habeas petition. However, we cannot simply recharacterize his instant case as a habeas petition because he does not even purport to have met the exhaustion and other procedural requirements.[1]

Finally, plaintiff has requested assignment of counsel. If expert assistance could cure defects in the pleadings, we could consider helping plaintiff find such assistance. *See, e.g., Hendricks v. Coughlin* (2d Cir.1997) 114 F.3d 390. However, amending the instant complaint would prove futile.

*CONCLUSION*

**\*4** We GRANT defendants' motion to dismiss the complaint with prejudice, and we DENY plaintiff's motion to request assignment of counsel. The Clerk of Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 210362

---

## Footnotes

1      Defendants also move to dismiss on grounds of statute of limitations and municipal immunity. We do not reach the merits of these defenses.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 98 of 129

Booker v. NYS DOCCS, Not Reported in Fed. Supp. (2022)

2022 WL 1239592
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Diquan BOOKER, Plaintiff,

v.

NYS DOCCS; Sergeant Sefman, Defendants.

7:22-CV-2355 (NSR)
|
Signed 04/27/2022

**Attorneys and Law Firms**

Diquan Booker, Comstock, NY, Pro Se.

ORDER OF SERVICE

NELSON S. ROMÁN, United States District Judge:

**\*1** Plaintiff Diquan Booker, who appears *pro se* and is presently incarcerated in the Washington Correctional Facility, brings this action for damages against the New York State Department of Corrections and Community Supervision ("DOCCS") and Correctional Sergeant Sefman arising from events that allegedly occurred while Plaintiff was incarcerated in the Woodbourne Correctional Facility. Plaintiff asserts that the defendants failed to protect him from an attempt on his life by other prisoners, and from being infected with COVID-19, while he was incarcerated in that facility. The Court construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983.

By order dated April 26, 2022, the court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP").[1] For the reasons discussed below, the Court dismisses Plaintiff's claims against DOCCS. The Court directs service on Sergeant Sefman, and directs her to comply with Local Civil Rule 33.2.

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant that is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

**DISCUSSION**

**A. DOCCS**

The Court must dismiss Plaintiff's claims against DOCCS under the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

**\*2** Congress has not abrogated the States' immunity for claims under Section 1983, see *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). DOCCS is an agency of the State of New York; it is, thus, an arm of that State and enjoys Eleventh Amendment immunity. *E.g.*, *Gardner v. Koeningsman*, No. 21-CV-10185, 2022 WL 1058498, at *2 (S.D.N.Y. Mar. 30, 2022). Accordingly, the Court dismisses Plaintiff's claims against DOCCS under the doctrine of Eleventh Amendment immunity, for lack of subject matter jurisdiction and because Plaintiff seeks monetary relief from a defendant that is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)

Booker v. NYS DOCCS, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00750-AMN-ML    Document 5    Filed 10/29/24    Page 99 of 129

(iii); Fed. R. Civ. P. 12(h)(3); *see Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction."); *Atl. Healthcare Benefits Trust*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction.").

**B. Service on Sergeant Sefman**

Because Plaintiff has been granted permission to proceed IFP, he is entitled to rely on the Court and the U.S. Marshals Service to effect service. *Walker v. Schult*, 717 F.3d. 119, 123 n.6 (2d Cir. 2013); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process ... in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (the court must order the Marshals Service to serve if the plaintiff is authorized to proceed IFP). Although Rule 4(m) of the Federal Rules of Civil Procedure generally requires that the summons and complaint be served within 90 days of the date the complaint is filed, Plaintiff is proceeding IFP and could not have served a summons and the complaint on Sergeant Sefman until the Court reviewed the complaint and ordered that a summons be issued for Sergeant Sefman. The Court therefore extends the time to serve Sergeant Sefman with the complaint until 90 days after the date that a summons is issued for Sergeant Sefman. If the complaint is not served on Sergeant Sefman within that time, Plaintiff should request an extension of time for service. *See Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (holding that it is the plaintiff's responsibility to request an extension of time for service); *see also Murray v. Pataki*, 378 F. App'x 50, 52 (2d Cir. 2010) (summary order) ("As long as the [plaintiff proceeding IFP] provides the information necessary to identify the defendant, the Marshals' failure to effect service automatically constitutes 'good cause' for an extension of time within the meaning of Rule 4(m).").

To allow Plaintiff to effect service of the complaint on Sergeant Sefman through the U.S. Marshals Service, the Clerk of Court is instructed to fill out a U.S. Marshals Service Process Receipt and Return form ("USM-285 form") for Sergeant Sefman. The Clerk of Court is further instructed to issue a summons for Sergeant Sefman, and deliver to the Marshals Service all the paperwork necessary for the Marshals Service to effect service of a summons and the complaint on Sergeant Sefman.

Plaintiff must notify the Court in writing if his address changes, and the Court may dismiss this action if Plaintiff fails to do so.

**C. Local Civil Rule 33.2**

Local Civil Rule 33.2, which requires defendants in certain types of prisoner cases to respond to specific, court-ordered discovery requests, applies to this action. Those discovery requests are available on the court's website under "Forms" and are titled "Plaintiff's Local Civil Rule 33.2 Interrogatories and Requests for Production of Documents." Within 120 days of service of the complaint, Sergeant Sefman must serve responses to those standard discovery requests. In her responses, Sergeant Sefman must quote each request verbatim. [2]

**CONCLUSION**

**\*3** The Court dismisses Plaintiff's claims against "NYS DOCCS" (the New York State Department of Corrections and Community Supervision) under the doctrine of Eleventh Amendment immunity, for lack of subject matter jurisdiction and for seeking monetary relief from a defendant that is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3).

The Court directs the Clerk of Court to: (1) issue a summons for Sergeant Sefman, (2) complete a USM-285 form with the service address for Sergeant Sefman, and (3) deliver all documents necessary to effect service of a summons and the complaint on Sergeant Sefman to the U.S. Marshals Service.

The Court directs Sergeant Sefman to comply with Local Civil 33.2 within 120 days of service of the complaint.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 1239592

**Booker v. NYS DOCCS, Not Reported in Fed. Supp. (2022)**

### Footnotes

1    Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

2    If Plaintiff would like copies of those discovery requests before receiving the responses and does not have access to the website, Plaintiff may request them from the court's Pro Se Intake Unit.

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2978242
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Wendy HARRISON, as parent and natural Guardian of
E.C., a minor under the age of eighteen years, Plaintiff,

v.

BOARD OF EDUCATION OF the HONEOYE FALLS-
LIMA CENTRAL SCHOOL DISTRICT, Gene Mancuso,
in his official and individual Capacity, and James Kane,
in his official and Individual capacity, Defendants.

22-CV-6086 CJS
|
Signed June 13, 2024

**Attorneys and Law Firms**

Roman A. Misula, Ganguly Brothers, PLLC, Rochester, NY,
for Plaintiff.

Charles C. Spagnoli, Charles E. Symons, Ferrara Fiorenza
PC, East Syracuse, NY, for Defendants Board of Education
of the Honeoye Falls-Lima Central School District, Gene
Mancuso.

Meghan M. Hayes, Michael P. McClaren, Webster Szanyi,
LLP, Buffalo, NY, for Defendant James Kane.

DECISION and ORDER

CHARLES J. SIRAGUSA, United States District Judge

INTRODUCTION

**\*1** Plaintiff brings this action alleging federal claims, for
alleged constitutional violations under 42 U.S.C. § 1983,
and a state-law claim, for defamation, all arising from a
disciplinary hearing conducted under the New York State
Education Law that resulted in Plaintiff's daughter, a high
school freshman, being suspended from school for allegedly
having made a bomb threat. Now before the Court are motions
by Defendants to dismiss the Complaint for failure to state
a claim, pursuant to Rule 12 of the Federal Rules of Civil
Procedure (ECF Nos. 13 & 15), and a cross-motion by
Plaintiff for leave to file a late notice of claim, under Section
50-e(5) of New York General Municipal Law, concerning the
state-law defamation claim (ECF No. 20). For the reasons

discussed below, the Court grants Defendants' motions as
to the federal claims, and declines to exercise supplemental
jurisdiction over the remaining state-law defamation claim or
to decide Plaintiff's cross-motion pertaining to that claim.

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from
the Complaint, and from other documents which may be
considered on a Rule 12(b)(6) motion. [1]

At all relevant times, Plaintiff's daughter, E.C., was a
fourteen-year-old freshman student at defendant Honeoye
Falls-Lima Central School District ("the School"). On
October 1, 2019, a student notified School officials that
he had found a message, written inside a toilet stall in a
unisex student bathroom, which stated, "im gonna BOMB
the school, just you wait." The School examined surveillance
camera footage taken outside the bathroom at around the time
the student claimed to have discovered the writing, which
showed that E.C. had recently been in the bathroom. Two
school staff members also opined that the handwriting in
the bathroom resembled E.C.'s handwriting. Consequently,
the School concluded that E.C. had written the threat. The
School Principal, David Roth ("Roth"), notified E.C. and
her parents that E.C. was being suspended, initially for five
days, beginning on October 7, 2019. [2] At that same time,
Roth expressly acknowledged in writing that E.C. had denied
making the threat. [3]

**\*2** On or about October 8, 2019, the School Superintendent,
defendant Gene Mancuso ("Mancuso"), gave E.C. and her
parents written notice of a hearing, to be held on October
16, 2019, concerning a possible long-term disciplinary
suspension. (ECF No. 15-6). The notice advised E.C. and
her parents of the disciplinary charge, which was "violent
conduct and conduct which endangered the health, welfare,
safety and/or morals of others," [4] and set forth various rights
that they would have at the hearing, including the right to be
represented by counsel, the right to have the hearing officer
issue subpoenas, the right to question witnesses, and the right
to appeal any decision by the Superintendent to the Board of
Education. *Id.*

The School selected defendant James Kane ("Kane"), an
employee of non-defendant Monroe 2-Orleans Board of
Cooperative Educational Services ("BOCES"), to act as an

impartial hearing officer at the hearing. At the hearing, as evidence that E.C. had made the threat, the School relied on testimony from three students, none of whom actually observed who had written the threat, concerning the circumstances surrounding the discovery of the threat, and on testimony from two staff members who opined that E.C.'s handwriting was similar to the written threat. According to Plaintiff's Complaint in this action, the School used this evidence even though the aforementioned video surveillance footage was inconsistent with the student witnesses' testimony, and even though the testifying staff members had no training or experience in analyzing or comparing handwriting samples. Also testifying at the hearing were E.C., who again denied making the bomb threat, and another student, who corroborated E.C.'s testimony. At the conclusion of the hearing, Kane found that the School had proven the charge against E.C. "by competent and substantial evidence," though he did not make any particular factual findings, and recommended that E.C. receive a longer-term suspension. Mancuso accepted Kane's recommendation, found E.C. guilty of writing the threatening message, and extended E.C.'s out-of-school suspension until January 26, 2020.

E.C. appealed Mancuso's determination to the defendant Board of Education ("the Board"). On December 5, 2019, the Board held an Appeal Process Meeting. The Complaint in this action alleges, "upon information and belief," that during this meeting, Mancuso "stated to the Board, in sum and substance, that [E.C.] had 'confessed' to him that she had written the [threat]." The Complaint contends, however, that such statement by Mancuso was false, since E.C. neither spoke to Mancuso nor admitted writing the threat.

On or about December 17, 2019, the Board voted to deny E.C.'s appeal and upheld the suspension imposed by Mancuso. The Complaint alleges, in this regard, "upon information and belief," that the Board improperly relied on Mancuso's alleged false, "extra-judicial" statement that E.C. had confessed to making the threat. As a result of the Board's determination, E.C. remained suspended from school for 111 days, between October 17, 2019, and January 26, 2020.

E.C. appealed the suspension to the New York State Commissioner of Education ("the Commissioner"), who, almost a year later, on October 7, 2020, reversed the Board's determination and expunged E.C.'s record. The Commissioner's written decision is not part of the court record. However, Plaintiff's Complaint asserts that the

Commissioner "admonished" Kane for having failed to make specific findings of fact, and directed him in the future to "ensure as trier of fact he render[ed] factual findings consistent with his duty under the Education Law."

On February 18, 2022, Plaintiff commenced this action. The Complaint purports to state the following causes of action: 1) a claim against Kane for violation of E.C.'s right to a public education, without due process of law, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution; 2) a claim against Mancuso for violation of E.C.'s right to a public education, without due process of law, in violation of the Fifth and Fourteenth Amendments; 3) a claim against the Board for violation of E.C.'s right to a public education, without due process of law, in violation of the Fifth and Fourteenth Amendments; 4) a claim against all defendants for violation of E.C.'s "right to good name and reputation," without due process of law, in violation of the Fifth and Fourteenth Amendments; and 5) a claim against Mancuso for defamation under New York State law.

**\*3** More specifically, the First Cause of Action purports to state a procedural due process claim and a substantive due process claim against Kane, based on his alleged failure, as the hearing officer, to make factual findings as required by New York State Education Law. The Second Cause of Action purports to state a procedural due process claim and a substantive due process claim against Mancuso, based on his imposition of the long-term suspension and his alleged false statement to the Board that E.C. had admitted writing the threat. The Third Cause of Action purports to state a procedural due process claim and a substantive due process claim against the Board, based on its denial of E.C.'s appeal and its alleged reliance on Mancuso's false, outside-the-record statement that E.C. had confessed to making the threat. The Fourth Cause of Action purports to state a "stigma-plus" due process claim against Kane, Mancuso, and the Board, based on their alleged damage to E.C.'s reputation resulting from her alleged wrongful suspension. And, finally, the Fifth Cause of Action purports to state a claim for *slander per se* against Mancuso under New York State law, based on his alleged false statement to the Board that E.C. had admitted to the crime of making a bomb threat.

Kane filed a Motion to Dismiss the Complaint (ECF No. 13) for failure to state a claim, pursuant to Rule 12(b)(6). Kane admits that when the Commissioner reversed the Board's determination and expunged E.C.'s suspension, the Commissioner admonished Kane that, "as trier of fact, [he]

was required 'to render factual findings consistent with his duty under the Education Law.' " However, Kane argues, first, that as a hearing officer, he is entitled to absolute quasi-judicial immunity from liability arising out of his actions at the hearing, and, alternatively, that he would at least be entitled to qualified immunity since he did not violate any clearly-established right of E.C. of which a reasonable hearing officer would have known. Additionally, Kane contends that the Complaint fails to state a substantive due process violation, since it does not allege that he did anything egregious, outrageous, or shocking to the conscience. Further, Kane maintains that the Complaint also fails to allege a procedural due process violation, since E.C. was given notice and an opportunity to be heard at the hearing, and an opportunity to appeal the hearing decision. For that same reason, Kane argues that the Complaint fails to state a "stigma plus" due process claim. Finally, Kane contends that insofar as the Complaint attempts to sue him under Section 1983 in his official capacity, it is a claim against his governmental employer, Monroe 2-Orleans BOCES, which fails to allege *Monell* liability.

Mancuso and the Board ("District Defendants") also filed a motion to dismiss the Complaint, pursuant to Rule 12(b)(1)&(6).[5] District Defendants contend that the Court lacks subject-matter jurisdiction over Plaintiff's state-law defamation claim, since Plaintiff never filed a Notice of Claim concerning that alleged tort, as required by New York Education Law § 3813, and also since the Complaint does not allege Plaintiff's compliance with such requirement. District Defendants further maintain that the Complaint fails to state any actionable claims. More specifically, the motion alleges that the procedural due process claims fail, since E.C. was afforded the necessary due process at the hearing and appeal, and since she had an adequate post-deprivation remedy available to her in the form of an Article 78 Proceeding; that the "stigma plus" claim is insufficiently pled for multiple reasons, including that Plaintiff cannot demonstrate an underlying procedural due process violation;[6] and that the substantive due process claims are deficient since the Complaint does not allege any egregious, conscience-shocking governmental conduct. District Defendants further maintain that the claim against the Board fails to allege any municipal policy or practice to support *Monell* liability, and that any claim against Mancuso in his official capacity is redundant of the claims against the Board. Lastly, District Defendants contend that even if Plaintiff could demonstrate a due process violation, Mancuso would be entitled to qualified immunity since a reasonable

superintendent in his position would not have believed he was violating Plaintiff's rights.

**\*4** Plaintiff opposes most aspects of Defendants' motions. More specifically, Plaintiff alleges, first, that she has adequately pleaded a procedural due process claim by alleging that during the long-term suspension hearing, Kane failed to make sufficient findings of fact as required by New York Education Law § 3214(3)(c)(1).[7] Plaintiff also argues that Mancuso committed a procedural due process violation by suspending E.C. in the absence of any such findings by Kane, in violation of Education Law § 3214.[8] Plaintiff further alleges that she has adequately pleaded a substantive due process claim based on Mancuso's alleged false statement to the Board, which she describes as "an act that shocked the conscience and undermined the fairness of the process afforded [to E.C.]."[9] Plaintiff seems to also argue that the Board similarly violated her procedural and substantive due process rights by *considering* the alleged false statement by Mancuso, rather than relying solely on evidence that was admitted at the hearing.[10] Plaintiff further argues that Defendants should not be entitled to qualified immunity, since dismissals on that ground are disfavored at the pleading stage, and since facts establishing such immunity do not appear on the face of the Complaint. Rather, Plaintiff contends that the Complaint shows that Mancuso could not have reasonably believed that it was permissible for him to make a false statement about E.C. to the Board. Plaintiff also contends that Kane is not entitled to absolute quasi-judicial immunity, since the U.S. Supreme Court has "held that school administrators and board of education members enjoy only qualified immunity from personal liability in civil actions for damages resulting from the wrongful deprivation of a student's rights,"[11] though Kane was neither a school administrator nor a board member. Plaintiff further asserts that she has stated a *Monell* claim against the Board, insofar as the Board considered Mancuso's alleged false statement in denying E.C.'s appeal.[12]

Plaintiff, however, now concedes that the official capacity claim against Mancuso should be dismissed. ECF No. 20-6 at p. 16. Additionally, Plaintiff's opposition papers do not contest or mention Kane's argument for dismissal of the claim against him in his official capacity, and the Court therefore considers that claim to be abandoned.

Plaintiff also filed a cross-motion for leave to file a late notice of claim regarding her state-law defamation cause of action.

In that regard, Plaintiff admits that her original notice of claim, filed in December 2019, did not reference Mancuso's alleged defamatory statement, and that the statutory period for filing such a claim has expired. Plaintiff, though, contends that she should be allowed to file a late notice of claim, since she and her attorney only became aware of the alleged defamatory statement in November 2021, after her attorney spoke with an unidentified "potential witness." Although, Plaintiff did not thereafter file an amended notice of claim. Plaintiff contends, however, that this Court has the ability to allow her to file a late notice of claim. Alternatively, Plaintiff asks the Court to reserve decision on the aspect of Defendants' motions directed at the tort claim, "pending resolution of the issue in State Court."

The Court has thoroughly considered the parties' submissions, including ECF Nos. 13, 15, 20, 22 & 23.

RULE 12(b)(6) STANDARD

Defendants have filed motions to dismiss the Complaint pursuant to Rule 12(b)(6), and the legal standards applicable to such applications are clear:

> **\*5** To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, [13] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.' ") (quoting *Iqbal*).

**\*6** As already mentioned, it is clearly settled that, "[i]n ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint." *McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020) (citations and internal quotation marks omitted). However, it is equally clear that not every allegation made "upon information and belief" is entitled to be accepted as true:

> [W]hile a plaintiff may make allegations on information and belief, those allegations will be sufficient to support a claim for relief only when the factual matter pled supports a plausible inference of culpability. ... A plaintiff may satisfy the plausibility standard by pleading facts upon information and belief, but a plaintiff cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.

*Evergreen E. Coop. v. Whole Foods Mkt.*, Inc., No. 21-2827-CV, 2023 WL 545075, at *1-2 (2d Cir. Jan. 27, 2023) (citations omitted); *see also, United Prob. Officers Ass'n v. City of New York*, No. 21-CV-0218 (RA), 2022 WL 875864, at *9 (S.D.N.Y. Mar. 24, 2022) ("[T]he bare allegation that women of color are "paid less" than their white male counterparts in the same titles is a conclusory assertion that the Court need not accept as true. Again, even if pattern-or-practice plaintiffs cannot allege the precise amount of their coworkers' salar[ies], they should at least be able to allege the facts that form the basis for their belief that the coworkers are paid more.") (citations and internal quotation marks omitted); *Bright Kids NYC Inc. v. Kelly*, No. 19-CV-1175 (JMF), 2020 WL 6891814, at *4 (S.D.N.Y. Nov. 24, 2020) ("The Amended Complaint also alleges, "[u]pon information and belief," that Adams "knew that the Proprietary Contact Info was stolen." But to pass muster, an allegation upon information and belief must be accompanied by a statement of the facts upon which the belief is founded, and cannot rest on pure conjecture and speculation. Here, the allegation of Adams's knowledge falls far short.") (citations and internal quotation marks omitted).

SECTION 1983 STANDARDS

Plaintiff's first four causes of action allege federal constitutional claims under 42 U.S.C. § 1983. The legal principles generally applicable to Section 1983 claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted). Put simply, to plead a plausible claim under Section 1983, a plaintiff must allege that she was deprived of a constitutional right by a person acting under color of state law. *See, Oparaji v. City of New York*, 152 F.3d 920 (2d Cir. 1998) ("To state a claim under § 1983, a plaintiff must allege that the defendants, acting under color of state law, deprived him of a constitutional right.

*Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).").

**\*7** "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. ... [For example, i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 1870–71, 104 L. Ed. 2d 443 (1989) (citations omitted).

"A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority. Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (citations and internal quotation marks omitted), as amended (Feb. 24, 2016).

Additionally, to sue a municipal defendant under Section 1983 for a constitutional violation committed by a municipal employee, a plaintiff must allege a basis for "*Monell*" liability:

> To plead a *Monell* claim, a plaintiff must allege [(1)] the existence of a formal policy which is officially endorsed by the municipality, or [(2)] a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or [(3)] that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x at 13. "The inference that a [municipal] policy existed may ... be drawn from circumstantial proof[.]" *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also, Staten v. Vill. of Monticello*, No. 14-CV-4766 (KMK), 2016 WL 7235796, at *6 (S.D.N.Y. Dec. 13, 2016) ("At the motion to dismiss stage, Plaintiffs need not prove these elements, but they are required

to plead them sufficiently to make out a plausible claim for relief. To do so, Plaintiffs must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists.") (Citation and internal quotation marks omitted).

## DISCUSSION

Plaintiffs first three causes of action allege that Defendants deprived E.C. of her property right to a public education without due process, in violation of her procedural and substantive due process rights, under the Fifth and Fourteenth Amendments, in connection with the school disciplinary proceedings. Regarding the procedural due process claims, the relevant legal principles have been clearly stated as follows:

> "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.' " *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012)) (other citation omitted). " '[S]tandard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.' " *Id.* (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed. 2d 732 (2011)).

**\*8** "Protected property interests 'are not created by the Constitution.' " *Hughes v. City of N.Y.*, 197 F.Supp.3d 467, 474 (E.D.N.Y. 2016) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L. Ed. 2d 548 (1972)). "Instead, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Id.* (quotation and other citation omitted); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). The Second Circuit has found that New York Education Law § 3202 creates a property interest in a public education. *See Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006) (citations omitted). As such, a student ... has a protected property interest in his education, meaning that he c[annot be] deprived of that right without due process of law. *See Cohn v. New Paltz Cent. Sch. Dist.*, 363 F.Supp.2d 421, 432 (N.D.N.Y. 2005) (citation omitted).

\*\*\*

"In *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed. 2d 725 (1975), the Supreme Court held that students facing a ten-day suspension must be given some kind of notice and afforded some type of hearing." *Cohn*, 363 F.Supp.2d at 433. "The Court stated that the hearing could be held immediately following the incident and be informal." *Id.* "However, the Supreme Court did caution 'suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures.' " *Id.* (quoting *Goss*, 419 U.S. at 584, 95 S.Ct. 729).

"Constitutionally, due process 'requires that individuals have "notice and opportunity for a hearing appropriate to the nature of the case" prior to a deprivation of life, liberty, or property.' " *Cohn*, 363 F.Supp.2d at 433 (quoting *Rosa R. v. Connelly*, 889 F.2d 435, 438 (2d Cir. 1989)) (other citation omitted). " 'Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* (quoting *Rosa R.*, 889 F.2d at 439) (other quotation omitted).

Moreover, it is well-established in the context of disciplinary proceedings, such as those at issue here, that post-discipline due process provides sufficient due process to satisfy the requirements of the Fourteenth Amendment. *See Cohn*, 363 F.Supp.2d at 433. As such, the availability of an adequate, post-deprivation hearing will preclude a procedural due process claim. *See id.* (citations omitted); *see also Storey v. Morris*, No. 7:16-cv-206, 2017 WL 933212, \*3 (N.D.N.Y. Feb. 1, 2017) (citing cases finding that the plaintiff failed to plausibly allege a procedural due process claim because of the availability of an Article 78 proceeding); *Richardson v. Capt. Van Dusen*, 833 F.Supp. 146, 153 (N.D.N.Y. 1993) ("[E]ven when assuming that the Superintendent's Hearing was conducted in [a] manner that deprived plaintiff of his due process rights, the process afforded the plaintiff in the Article 78 proceeding cured any defect in the original hearing").

*Horton v. Westling*, 284 F. Supp. 3d 213, 219–20 (N.D.N.Y. 2018), aff'd, 765 F. App'x 531 (2d Cir. 2019).

Before applying these principles in the instant case, the Court finds that the claims against Kane in his individual capacity are barred by the doctrine of absolute quasi-judicial immunity. Courts in this Circuit have long applied absolute immunity not just to judges, but also to administrative officials who acted in a quasi-judicial nature:

It is well-settled that judges are entitled to absolute immunity from liability for acts performed in their judicial capacities. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Tucker v. Outwater*, 118 F.3d 930, 932–33 (2d Cir. 1997). "Judicial immunity is necessary because 'principled and fearless decision-making' will be compromised if a judge 'fear[s] that unsatisfied litigants may hound him with litigation charging malice or corruption.' " *Vasile v. Dean Witter Reynolds, Inc.*, 20 F.Supp.2d 465, 488–89 (E.D.N.Y. 1998) (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Judicial immunity may be overcome in only two instances: (1) when the actions in question were not taken in the judge's judicial capacity; and (2) when the actions, "though judicial in nature, [were] taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286 (citations omitted).

\*9 "The doctrine of quasi-judicial immunity extends immunity to administrative officials performing discretionary acts of a judicial nature," *DeMerchant v. Springfield Sch. Dist.*, No. 1:05 CV 316, 2007 WL 495240, at \*3 (D. Vt. Feb. 9, 2007) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988)), and "bars claims against administrative law judges and hearing examiners performing judicial functions[.]" *Sassower v. Mangano*, 927 F.Supp. 113, 120 (S.D.N.Y. 1996) (citation omitted), aff'd, 122 F.3d 1057 (2d Cir. 1997) (unpublished); *see also DeMerchant*, 2007 WL 495240, at \*3 ("Indeed, many courts have held that state hearing officers who exercise independent quasi-judicial powers are entitled to absolute judicial immunity.") (citing cases).

*Wetzel v. Town of Orangetown*, No. 06 CIV. 6117 SCR, 2010 WL 743039, at \*15 (S.D.N.Y. Mar. 2, 2010) (footnote omitted). [14]

Here, the Complaint does not allege that Kane's actions were non-judicial, or that Kane acted in the complete absence of all jurisdiction. Rather, the Complaint alleges that when acting in his quasi-judicial capacity as a hearing officer at the disciplinary hearing, Kane committed a legal error that contributed to an adverse finding being made against E.C. by Mancuso, following the disciplinary hearing. Specifically, the

pleading asserts that Kane erred by failing to make specific findings of fact. Consequently, insofar as Kane is sued in his individual capacity, he is entitled to absolute quasi-judicial immunity as to all claims against him, since he is being sued for his quasi-judicial actions as an administrative hearing officer. *See, e.g., J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 554, n. 25 (E.D.N.Y. 2012) ("Defendant Nelson was not a school employee but was the independent hearing officer who conducted the Superintendent's hearing for the infant plaintiffs in this case. Nelson presided over the disciplinary hearings, heard arguments and testimony, and issued a decision in the form of a recommendation to the Superintendent. Having acted in this quasi-judicial role, Nelson is entitled to quasi-judicial immunity from plaintiffs' federal claims against him in his individual capacity.") (collecting cases; citation to record omitted).

However, even without regard to quasi-judicial immunity, the Complaint fails to state a procedural due process claim against Kane, Mancuso, or the Board. In that regard, it is clear that E.C. had a property right to a public education. However, while the Complaint alleges that Defendants denied E.C. that right without procedural due process, it is undisputed that E.C. was given notice of the disciplinary charge against her and an opportunity to be heard at a hearing, and that the finding of guilt by Mancuso, which was upheld by the Board, was supported by some evidence. More importantly, it is undisputed that E.C. had the ability to appeal the Board's determination to the Commissioner of Education, which appeal she won, and that even if she had lost that appeal, she could have filed an Article 78 Proceeding in state court.

**\*10** Since New York State provided Plaintiff an adequate post-deprivation remedy, [15] namely, an Article 78 Proceeding, then as a matter of law there was no procedural due process violation, even assuming that everything in the Complaint is true. *See, Horton v. Westling*, 765 F. App'x 531, 533 (2d Cir. 2019) ("This Court has often acknowledged that Article 78 proceedings provide an adequate state remedy for procedurally improper agency decisions. ... While Horton did not actually file an Article 78 action, he had a meaningful opportunity to challenge his treatment and so was not deprived of due process simply because he failed to avail himself of the opportunity.") (citation and internal quotation marks omitted); *see also, Potrzeba v. Sherburne-Earlville High Sch. through Sherburne-Earlville Cent. Sch. Dist. Bd. of Educ.*, No. 3:23-CV-191 (BKS/ML), 2023 WL 8827178, at \*10 (N.D.N.Y. Dec. 21, 2023) ("It is well-settled that, "in

certain circumstances, ... [a deprivation] will not offend the constitutional guarantee of due process[ ] provided there is sufficient post[-] deprivation process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). In such circumstances, where a state provides a post-deprivation remedy, that remedy constitutes due process, and no due process violation can arise. *See Parratt*, 451 U.S. at 538, 101 S.Ct. 1908. In the school-suspension context in New York, this post-deprivation remedy is an Article 78 proceeding.").

Consequently, the procedural due process claim is dismissed as against Kane and Mancuso, in their individual capacities, and as against the Board. The procedural due process claim is also dismissed as against Kane and Mancuso in their official capacities, since the Court has already determined that the Complaint fails to plead any underlying procedural due process violation. [16] *See, Dorsey v. Gannon*, No. 22-2735, 2024 WL 1338772, at \*3 (2d Cir. Mar. 29, 2024) ("[O]ur caselaw is clear that there can be no *Monell* liability where there has not been an underlying constitutional violation.") (citation omitted); *see also, Valdiviezo v. Boyer*, 752 F. App'x 29, 31 (2d Cir. 2018) ("Municipalities, and individuals sued in their official capacity, are liable under § 1983 only if the challenged conduct was 'pursuant to a municipal policy or custom,' *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), or caused by a 'failure to train[.]' ").

For the same reason that the Complaint fails to state an actionable procedural due process claim concerning the right to a public education, Plaintiff's "stigma-plus" procedural due process claim also necessarily fails. In this regard, Plaintiff's Fourth Cause of Action alleges that Defendants deprived E.C. of her "constitutionally protected right to her good name and reputation," "without due process of law." Again, however, E.C. had an adequate post-deprivation procedure available to her, in the form of an Article 78 Proceeding, which is fatal to her "stigma plus" claim. [17] *See, Xu v. City of New York*, No. 21-1059-CV, 2023 WL 4285031, at \*2 (2d Cir. June 30, 2023) ("Even if the stigma-plus claim were timely, however, it fails on the merits because Xu could have pursued an Article 78 proceeding. With respect to stigma-plus claims, '[a]n Article 78 proceeding provides the requisite post-deprivation process —even if [a plaintiff] failed to pursue it.' *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011). And we

have held that 'the availability of adequate process defeats a stigma-plus claim.' *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006).")*; see also, McHerron v. Burnt Hills - Ballston Lake Cent. Sch. Dist.*, 778 F. App'x 54, 55 (2d Cir. 2019) ("[W]e conclude that an Article 78 proceeding provided by New York law is a sufficient post-deprivation remedy, which defeats Plaintiffs' 'stigma-plus' claim.").

**\*11** The Complaint also fails to state an actionable substantive due process claim against Kane, Mancuso, or the Board. In that regard, the general requirements for a substantive due process claim are clear:

"For a substantive due process claim to survive a Rule 12[(b)(6)] dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005). This test "is necessarily imprecise," but it is clear that "whether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005). Intentional conduct "unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

*Horton v. Westling*, 765 F. App'x at 533–34. Importantly, however, substantive due process protects only a limited number of rights that are truly "fundamental." *See, Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S. Ct. 2258, 2268, 138 L. Ed. 2d 772 (1997) ("Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.") (citations and internal quotation marks omitted); *see also, Torregrossa v. Bd. of Trustees of Univ. of Illinois*, 175 F.3d 1021 (7th Cir. 1999) ("The Supreme Court has held that substantive review is available only when a state treads on rights so fundamental that no amount of process can justify their abridgment. *See Washington v. Glucksberg*, 521 U.S. 702, 719-21 (1997).").

Here, Plaintiff's substantive due process claims each contend that Defendants deprived E.C. of the same right, namely, "a constitutionally protected property right to a public school education." However, the Second Circuit has clearly indicated that the right to a public education is not a fundamental right that is protected by substantive due process:

Plaintiffs contend that the ban on aversive interventions deprives these children of substantive due process. Plaintiffs cannot prevail on such a claim because there is no substantive due process right to public education.

"[T]he Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). In examining whether a government rule or regulation infringes a substantive due process right, "the first step is to determine whether the asserted right is 'fundamental,' "—i.e., "implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition," *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003) (internal quotation marks omitted). Where the right infringed is fundamental, the regulation must be narrowly tailored to serve a compelling government interest. *Immediato*, 73 F.3d at 460. Where the right infringed is not fundamental, "the governmental regulation need only be reasonably related to a legitimate state objective." *Id.* at 461.

**\*12** The right to public education is not fundamental. *Handberry v. Thompson*, 446 F.3d 335, 352 (2d Cir. 2006) (citing *Plyler v. Doe*, 457 U.S. 202, 221, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)).

*Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 217–18 (2d Cir. 2012); *see also, Goe v. Zucker*, 43 F.4th 19, 31 (2d Cir. 2022) ("While the right to an education is an important right, it is not a 'fundamental right' such as to require strict scrutiny review."), *cert. denied sub nom. Goe v. McDonald*, 143 S. Ct. 1020, 215 L. Ed. 2d 188 (2023); *Puccinelli v. S. Connecticut State Univ.*, No. 3:21-CV-00763 (SVN), 2022 WL 6770967, at *8 (D. Conn. Oct. 11, 2022) ("[S]tudents "generally have a 'legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause,' " *Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022

WL 673636, at *9 (S.D.N.Y. Mar. 7, 2022). The right to public education, however, "is not fundamental" and, as a result, it is not protected by substantive due process. *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012)."); *Jones v. Cnty. of Westchester*, No. 14-CV-7635 (NSR), 2023 WL 6038529, at *7 (S.D.N.Y. Sept. 15, 2023) ("It has been well established that the right to public education is not fundamental and accordingly, there is no substantive due process right to public education.") (collecting cases, internal quotation marks omitted); *Martinetti v. Mangan*, No. 17-CV-5484 (KMK), 2019 WL 1255955, at *7, n. 6 (S.D.N.Y. Mar. 19, 2019) ("The Second Circuit has held that 'the right to public education is not fundamental," and that there is therefore "no substantive due process right to public education." *Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (citations omitted). Therefore, to the extent Plaintiff's due process claims rely on deprivation of a free and appropriate public education, Plaintiff is limited to asserting a procedural due process claim.").

In the instant case, Plaintiff's substantive due process claims are based on the alleged deprivation of the right to a public education, which is not a fundamental right, and, consequently, her substantive due process claims are dismissed. Moreover, even assuming *arguendo* that the right to a public education was a fundamental right, the Complaint does not, in any event, plausibly allege that Kane or the Board engaged in any intentional, unjustifiable, conscience-shocking conduct that would support a substantive due process claim. More specifically, the pleading does not allege that Kane intentionally did anything wrong, and the allegation concerning the Board, made only upon information and belief, that the Board denied E.C.'s appeal "based in whole or in part on Mancuso's false and outside the record statement," need not be accepted as true, since it is a bald and speculative assertion. [18]

**\*13**  Having now determined that Plaintiff's federal claims must all be dismissed, the only remaining items are Plaintiff's state-law defamation claim and her cross-motion for leave to file a late and amended notice of claim under New York General Municipal Law § 50-e(5). However, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining claim. In a similar situation, another Judge in this District recently stated the applicable principles concerning such a decision as follows:

Having disposed of all federal claims falling within this Court's original jurisdiction, this Court finds it appropriate to decline to exercise supplemental jurisdiction over Plaintiff's claims regarding violations of New York State law and Plaintiff's Motion for Leave to File a Late Notice of Claim. *See* 28 U.S.C. § 1367(c)(3). The United States Supreme Court has instructed that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

The Second Circuit shares this view: where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *see also Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.")

Moreover, comity suggests that this case is better litigated in the New York State Supreme Court, where the action can be resolved by the state court under state law. The resolution of Plaintiff's motion for Leave to File a Late Notice of Claim, in particular, could have a profound effect on the outcome of the case, and as such it would be improper for this Court to resolve it. *See Levin v. Commerce Energy, Inc.*, —— U.S. ——, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010) (defining comity as a "proper respect for state functions").

Plaintiff's state court claims will be timely so long as he files them within 30 days from the date of this decision. See 28 U.S.C. § 1367(d). This tolling provision is meant to "prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court" and to "promote[ ] fair and efficient operation of the federal courts." *Jinks v. Richland*

*County*, 538 U.S. 456, 459, 463, 123 S.Ct. 1667, 1669, 155 L.Ed.2d 631 (2003) (upholding the constitutionality of § 1367(d)).

*Foley v. City of Buffalo*, No. 06-CV-49S, 2011 WL 3176455, at *7–8 (W.D.N.Y. July 27, 2011) (footnote omitted). For these same reasons, this Court declines to exercise supplemental jurisdiction over Plaintiff's defamation claim or to address the pending cross-motion. Plaintiff's Fifth Cause of Action is therefore dismissed without prejudice.

CONCLUSION

**\*14**  For the reasons discussed above Defendants' motions to dismiss (ECF Nos. 13 & 15) are granted as to all federal claims in the Complaint. Pursuant to 28 U.S.C. § 1367(c)(3) the Court declines to exercise supplemental jurisdiction over the state-law defamation claim, and that claim is dismissed without prejudice. There Court therefore does not make any ruling concerning Plaintiff's cross-motion for leave to file a late notice of claim under Section 50-e(5) of New York General Municipal Law concerning the state-law defamation claim (ECF No. 20).

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 2978242

---

## Footnotes

1    As discussed further below, in addition to the Complaint, the Court may consider documents that are "integral" to the Complaint, provided that the relevance and authenticity of the documents are not genuinely disputed. *See, e.g., Clark v. Hanley*, 89 F.4th 78 (2d Cir. 2023).

2    The Complaint asserts that Superintendent Mancuso provided this notice, Complaint at ¶ 13, but the actual document was from Roth, not Mancuso. ECF No. 15-4. A court is not required to accept as true allegations in a complaint that are contradicted by the pleading itself or by documents upon which the pleading is based. *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) ("In conducting this ["plausibility"] inquiry, the court must generally accept as true all of the factual assertions in the complaint. However, there is a narrow exception to this rule for factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice.") (citations omitted).

3    ECF No. 15-5 at p. 1.

4    ECF No. 15-6 at p. 1.

5    Regarding their Rule 12(b)(6) application, District Defendants maintain that the Court may properly consider three documents that, while not attached to the Complaint, were mentioned therein, and are integral to the pleading, namely, two notices sent to Plaintiff by the School on October 4, 2019, and another notice sent on October 8, 2019.

6    District Defendants also maintain that the Complaint does not claim that the alleged defamatory statement (by Mancuso) was ever made public, *see, e.g.*, District Defendant's Memo of Law, ECF No. 15-7 at p. 15 ("A statement made in private, such that it will not affect a person's reputation, does not supply the 'stigma' element for such a claim."), and that Mancuso is entitled to the "common interest privilege" concerning any such defamatory statement to the Board.

7    *See*, Plaintiff's Memo of Law, ECF No. 20-6 at p. 9 ("Defendant Kane failed to follow the procedures and rules set forth in New York's Education Law. After a hearing fraught with inconsistent eyewitness testimony and

handwriting comparison performed by lay persons, the hearing officer failed to render any factual findings, simply concluding that the district sustained the charges.").

8    Pl. Memo of Law, ECF No. 20-6 at p. 11 ("Per NY Education Law § 3214(3)(c)(1) Mancuso must adopt the hearing officer's findings of fact before ordering a suspension. This was not done, as Kane did not actually make any factual findings.").

9    Pl. Memo of Law, ECF No. 20-6, at p. 9 (Plaintiff essentially contends that Mancuso's alleged false statement to the Board made a sham of the hearing process and eviscerated the procedural protections that she was ostensibly provided.)

10   *See*, Pl. Memo of Law, ECF No. 20-6, at p. 10 ("[T]he Board's actions were tantamount to a Judge presiding over a criminal bench trial considering an off-record comment by an investigator that the defendant had confessed – when no such confession was introduced at the trial .... The Board's actions in this case fatally undermined the process afforded [E.C.] in a similar way.").

11   Pl. Memo of Law, ECF No. 20-6 at p. 12.

12   Pl. Memo of Law, ECF No. 20-6 at p. 13 ("The Board thus acted unlawfully when it considered evidence which did not appear in the record before it.").

13   The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

14   *See also, id.* at n. 15 ("Whether non-judicial officers are entitled to quasi-judicial absolute immunity depends upon the "functional comparability" of their judgments to those of a judge. *See Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Functional comparability is determined by taking into consideration the following six factors: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (citing *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).").

15   The Complaint does not allege or imply that any post-deprivation remedy would have been inadequate.

16   As noted earlier, Plaintiff now concedes that the official capacity claim against Mancuso should be dismissed. ECF No. 20-6 at p. 16. Plaintiff did not oppose or mention Kane's argument for dismissal of the claim against him in his official capacity, and the Court therefore also considers that claim to be abandoned.

17   Plaintiff's memo of law in opposition to Defendants' motions (ECF No. 20-6) does not acknowledge this legal principle.

18   It would be a closer call as to Mancuso, since the Complaint alleges that he intentionally lied to the Board in order to improperly influence the Board's consideration of E.C.'s appeal. Although, even that allegation might not support a plausible substantive due process claim against Mancuso, since it is a bald assertion, made only "upon information and belief," as to what Mancuso said "in sum and substance," that arguably not have to be accepted as true, though the Court need not decide that question.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 495240
Only the Westlaw citation is currently available.
United States District Court, D. Vermont.

Dana DEMERCHANT and Gary DeMerchant, Plaintiffs,
v.
SPRINGFIELD SCHOOL DISTRICT
and Dan Jerman, Defendants.

No. 1:05 CV 316.
|
Feb. 9, 2007.

**Attorneys and Law Firms**

Dana Demerchant, Springfield, VT, pro se.

Gary Demerchant, Springfield, VT, pro se.

Marc D. Eagle, Vermont Department of Education, Montpelier, VT, for Defendants.

*OPINION AND ORDER*

MURTHA, J.

(Paper 34)

**\*1**  Plaintiffs Dana and Gary DeMerchant, each proceeding *pro se,* are the parents of a child who has sought special education services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"). The DeMerchants claim that their child was wrongfully denied the services to which he was entitled, and that their rights as parents were violated. With respect to the latter claim, the DeMerchants assert that they tried to raise their concerns at a due process hearing, but that hearing officer Dan Jerman barred them from presenting the issues they wanted reviewed.

Currently pending before the Court is Jerman's motion to dismiss on grounds of quasi-judicial immunity. The DeMerchants have not filed a response to the motion. For the reasons set forth below, Jerman's motion to dismiss (Paper 34) is GRANTED.

*Factual Background* [1]

For the purpose of deciding Jerman's motion to dismiss, the allegations in the plaintiffs' complaint will be accepted as true. According to the complaint, the DeMerchants' son, K.D., has attended school in the Springfield School District since 2002. He arrived in Springfield with an Individualized Education Plan ("IEP") that "hinted at an Autism Spectrum Disorder...." (Paper 5 at 1). After the DeMerchants repeatedly requested testing for their son, the School District authorized an observation in February, 2004. As a result of the observation, the DeMerchants were told that K.D.'s education plan needed to be altered. The School District did not implement the recommended changes, and K.D.'s condition quickly declined. As the DeMerchants explain:

> None of the school districts [sic] doctors [sic] recommendations from the observation were put into place. One month later our son collapsed. He was vomiting, had total loss of bowel control to the point of being put into a diaper and he refused to eat. He refused to eat for about 7 weeks, he went from 130 lbs to 106 lbs and in the end he was admitted into the hospital.

*Id.*

During his hospitalization, K.D. was diagnosed with "an Autism Spectrum Disorder." *Id.* Upon his release, it was recommended that he receive a one-on-one aide. This recommendation was never adopted. Moreover, the School District "felt the need to try to prove [K.D.] truant," and K.D. was "forced back into school without any of the supports his doctors say he needs. It was at this point that he started to collapse again and had to be medicated." Id.

In November, 2004, the School District allegedly removed K.D.'s IEP based upon a doctor's statement that K.D.'s diagnosis had been withdrawn. After the School District declined to pay for an independent evaluation of K.D., the DeMerchants filed an Administrative Complaint with the Vermont District of Education ("DOE"). The DOE assembled an investigative team, which found that the School District had failed to comply with the relevant state and federal regulations. Specifically, the team concluded that the School District had been required either to provide an independent evaluation at public expense, or to initiate a due process

hearing to show that its evaluation was appropriate. As a remedy for this violation, the DOE ordered the School District to "either ensure that it will provide for an [independent evaluation] for KD at public expense" or initiate a due process hearing by June 17, 2005. (Paper 34–2 at 7.) The School District subsequently filed a timely request for a due process hearing. (Paper 34–3 at 1.) As indicated in the DOE's order, the question presented at the hearing was whether the School District's evaluation of K.D. was appropriate.

**\*2** The DeMerchants now claim that the due process hearing was not properly conducted. In his role as hearing officer, Jerman held a telephone conference on August 26, 2005. According to the DeMerchants, Jerman limited the telephone conference to the question of whether testing had been performed on K.D., and did not allow them to speak. When they attempted to challenge the results of the testing, and to present evidence of independent test results, Jerman allegedly informed them that those issues would need to be raised in a second due process hearing. (Paper 5 at 2.)

Jerman issued a written decision on September 2, 2005, finding that "there is no question that the District's three year evaluation of the student in 2004 met all the requirements of the regulations regarding planning, notice, scope, sufficiency and documentation." (Paper 34–3 at 3–4.) Jerman also concluded that "the parents are seeking an evaluation that will agree with their assessment of the student's eligibility for special education." *Id.* at 3. Accordingly, Jerman allegedly advised the DeMerchants of their right to pay for an evaluation themselves, and of their right to challenge K.D.'s eligibility determination in a separate due process proceeding. *Id.* at 3.

The DeMerchants allege that they were granted a second due process hearing, but were told that they would not be allowed to present any issues that could have been raised at the first due process hearing. Because the DeMerchants wish to argue "the total case," they have declined the second due process hearing and appealed the result of the first due process hearing to this Court. (Paper 5 at 2.) For relief, the DeMerchants seek the removal of Jerman as a hearing officer, monitoring of Jerman's past and present cases, independent testing for K.D. at a specific hospital in Boston, and monetary damages. (Paper 20.) Jerman's motion to dismiss reports that he ceased serving as a hearing officer for the DOE as of June, 2005. (Paper 34–1 at 4.)

*Discussion*

**I.** *Legal Framework*

On a motion to dismiss, the Court must take the allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiffs, and draw all inferences in plaintiffs' favor. *See Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The complaint must not be dismissed unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *EEOC v. Staten Island Sav. Bank,* 207 F.3d 144, 148 (2d Cir.2000) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The "issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *See Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (citations and internal quotation marks omitted). *Pro se* complaints are to be construed more liberally than complaints drafted by trained attorneys. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**II.** *Jerman's Motion to Dismiss*

**\*3** In their claims against hearing officer Jerman, the DeMerchants focus on Jerman's rulings and statements during the due process hearing. Specifically, they contend that Jerman failed to allow them to speak and failed to consider their evidence. The question now before the Court is whether Jerman, as a hearing officer in an administrative proceeding, is entitled to immunity.

The doctrine of judicial immunity was originally created to shield judges from liability for acts performed in their judicial capacities. *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). The rule of absolute judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fears that unsatisfied litigants may hound him with litigation charging malice or corruption." *Vasile v. Dean Witter Reynolds Inc.,* 20 F.Supp.2d 465, 489 (E.D.N.Y.1998) (internal quotations and citation omitted). "The cloak of immunity is not pierced by allegations of bad faith or malice." *Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997). The doctrine of judicial immunity is overcome only when (1) the action is not taken in the judge's judicial capacity; or (2) the action, although judicial in nature, is performed in the complete absence of any jurisdiction. *Mireles,* 502 U.S. at 11–12.

The doctrine of quasi-judicial immunity extends immunity to administrative officials performing discretionary acts of a judicial nature. *See Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Butz v. Economou,* 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir.1988). Indeed, many courts have held that state hearing officers who exercise independent quasi-judicial powers are entitled to absolute judicial immunity. *See, e.g., O'Neal v. Mississippi Bd. of Nursing,* 113 F.3d 62, 66 (5th Cir.1997) (absolute immunity protected members of state licensing board who conducted adjudicatory nursing license revocation hearings); *Collyer v. Darling,* 98 F.3d 211, 222 (6th Cir.1996) (state personnel review board members were absolutely immune from monetary relief with respect to their adjudicatory functions), *cert. denied,* 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997); *Gyadu v. Workers' Comp. Comm'n,* 930 F.Supp. 738 (D.Conn.1996) (state workers' compensation commissioner entitled to absolute immunity), *aff'd,* 129 F.3d 113 (2d Cir.1997), *cert. denied,* 525 U.S. 814, 119 S.Ct. 49, 142 L.Ed.2d 38 (1998).

In this case, Jerman is being sued for actions taken in his role as a hearing officer. His alleged wrongdoing includes barring certain arguments and evidence, and ultimately reaching an unjustified conclusion. There is no allegation that Jerman was acting outside of his role as an adjudicator, or that he was acting without jurisdiction.

Jerman's alleged actions were undoubtedly judicial in nature. He presided over an administrative process, dictated the scope of that process, acted as the trier of fact and issued a decision based upon his legal conclusions. As the Supreme Court has noted, "[t]he conflicts which ... hearing examiners seek to resolve are every bit as fractious as those which come to court.... There can be little doubt that the role of the modern [hearing officer] ... is 'functionally comparable' to that of a judge." *Butz,* 438 U.S. at 513.

**\*4** Because Jerman's role was truly quasi-judicial, and since the DeMerchants' claims against him pertain to actions taken solely in his role as a hearing officer, he is entitled to immunity. *See Indep. Sch. Dist. No. 283 v. S.D.,* 948 F.Supp. 860, 877 n. 28 (D.Minn.1995) (concluding that hearing officer in special education case was "wholly insulated from a claim which arises from her conduct as an adjudicator, by the principles of judicial immunity") (citations omitted). Therefore, his motion to dismiss is GRANTED.

### Conclusion

For the reasons set forth above, defendant Dan Jerman's unopposed motion to dismiss (Paper 34) is GRANTED, and the claims against him are DISMISSED.[1]

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 8th day of February, 2007.

### All Citations

Not Reported in F.Supp.2d, 2007 WL 495240

---

### Footnotes

1    These facts were set forth in a prior decision (Paper 30), and are largely repeated here. The facts have been taken primarily from the allegations in the DeMerchants' complaint. Additional facts come from the record of administrative proceedings, which the Court may consider on a motion to dismiss. *See Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004) (court may look to public records when deciding a motion to dismiss); *Wang v. Pataki,* 396 F.Supp.2d 446, 453 n. 1 (S.D.N.Y.2005) (court may consider documents submitted in administrative proceedings, as well as public documents, when deciding a motion to dismiss).

**DeMerchant v. Springfield School Dist., Not Reported in F.Supp.2d (2007)**

1    The Court has previously dismissed the plaintiffs' claims against the Department of Education (Paper 30), as well as any claims brought on behalf of K.D. (Paper 35). Therefore, the remaining claims in this case pertain to the violations of the parents' rights under the IDEA, and the sole remaining defendant is the School District.

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

2024 WL 1701980
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David J. CAMPBELL, Plaintiff,

v.

CITY OF BINGHAMTON, NY, City of New York;
Jared M. Kraham, the Mayor of Binghamton, New York;
Binghamton Police Dep't, a Department of Binghamton,
New York; Chief Joseph Zikuski, Chief of Binghamton
Police Dep't; Detective Bryan Sostowski, a Detective
of Binghamton Police Dep't; Broome County, a County
of New York; Broome County Clerk's Office, a Dep't
of Broome County; Judith E. Osburn, Chief Clerk of
Broome County Supreme Courts and County Courts;
Honorable Judge Joseph A. Cawley, a 6th Dist. Judge
of Broome County; and Unknown(s), Defendants.

3:24-CV-0067 (AMN/ML)
|
Signed April 19, 2024

**Attorneys and Law Firms**

DAVID JOHN CAMPBELL, Plaintiff, Pro Se, 5 Bradley
Street, Binghamton, New York 13904.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a complaint in the above captioned
action together with an amended application to proceed
*in forma pauperis* and letter motion, filed by David John
Campbell ("Plaintiff") to the Court for review. (Dkt. Nos.
1, 5, 6.) For the reasons discussed below, I (1) grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5), (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed (a) in part with leave to amend, and (b) in part
without leave to amend, and (3) recommend that Plaintiff's
Letter Request/Motion (Dkt. No. 6) be denied as moot.

**I. INTRODUCTION**

Construed as liberally [1] as possible, Plaintiff's Complaint
alleges that his rights were violated by Defendants
City of Binghamton, Jared M. Kraham, Binghamton

Police Department, Chief Joseph Zikuski, Detective Bryan
Sostowski, Broome County, Broome County Clerk's Office,
Judith E. Osburn, Honorable Judge Joseph A. Cawley, and
Unknown(s) (collectively "Defendants"). (*See generally* Dkt.
No. 1.)

As best as the undersigned can decipher, the Complaint
alleges that on January 13, 2023, Plaintiff attempted to
report a crime against his private property and vehicle in
Binghamton, New York. (Dkt. No. 1 at 4.) The Complaint
alleges that when Binghamton police officer Mushalla (not a
party to this action) responded to Plaintiff's report, he seized
items from Plaintiff's home. (*Id.*) The Complaint alleges that
on January 17, 2023, Defendant Sostowski sought judicial
intervention and obtained two TERPOs and two ERPOs
without proper notice or due process. [2] (*Id.* at 4-5.) The
Complaint alleges that all orders have since expired and
Defendants have not returned Plaintiff's seized property. (*Id.*
at 5.)

Based on these factual allegations, Plaintiff asserts the
following two causes of action: (1) a claim that Defendant
Cawley conspired with Defendant Sostowski to deprive
Plaintiff of his due process rights; (2) a claim that Defendant
Sostowski extorted Plaintiff by obtaining a second TERPO
and seizing Plaintiff's wife's rifle and ammunition without
just cause. (Dkt. No. 1 at 5-7.) As relief, Plaintiff seeks, *inter
alia*, (1) a declaration that Defendants violated Plaintiff's and
his wife's constitutional rights, (2) removal of Defendants
from their positions with an apology to the community,
Plaintiff, and his wife for their actions, (3) compensatory
damages in the amount of $20,000 per item seized from
Plaintiff's residence per day beginning on January 13, 2024,
and continuing until the present day, (4) punitive damages in
the amount of $2,000,000, and (5) an order that Defendants
"be added to *BRADY LIST*." (Dkt. No. 1 at 7-9.)

**II. PLAINTIFF'S AMENDED APPLICATION TO
PROCEED *IN FORMA PAUPERIS***

**\*2** When a civil action is commenced in a federal district
court, the statutory filing fee, currently set at $405, must
ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized,
however, to permit a litigant to proceed *in forma pauperis*
status if a party "is unable to pay" the standard fee for
commencing an action. 28 U.S.C. § 1915(a)(1). [3] After
reviewing Plaintiff's amended *in forma pauperis* application
(Dkt. No. 5), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted.[4]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*3** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed.

### A. Claims Against Defendant Judge Cawley

I recommend that Plaintiff's claims against Defendant Judge Cawley be dismissed based on the doctrine of judicial immunity.

Under this doctrine, judges are absolutely immune from suit for claims seeking damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's

jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims that appear to arise from the efforts of Defendant Judge Cawley, in his capacity as a Broome County Court Judge, to assess whether Plaintiff was a danger to himself or others. Defendant Judge Cawley is therefore immune from suit under the doctrine of judicial immunity. As a result, I recommend that Plaintiff's claims against Defendant Cawley in his individual capacity be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendant Cawley in his official capacity be dismissed pursuant to the Eleventh Amendment. *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

### B. Claims Against Defendant Broome County Clerk's Office

**\*4**  "The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Russell v. Dunston*, 896 F.2d 664, 667 (2d Cir. 1990) (citations omitted); *see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

Defendant Broome County Clerk's Office is immune from suit under the Eleventh Amendment because it is an arm of the State of New York. *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (finding that the New York State Unified Court System, of which a county court is a part,

is an "arm of the State," and therefore entitled to Eleventh Amendment immunity); *Manko v. Steinhardt*, 11-CV-5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (dismissing claim against the Kings County Supreme Court of the State of New York Clerk's Office because it was barred by Eleventh Amendment immunity as an arm of the State of New York).

As a result, I recommend that Plaintiff's claims against Defendant Broome County Clerk's Office be dismissed as it is immune pursuant to the Eleventh Amendment.

### C. Claims Against Defendant Binghamton Police Department

Defendant Binghamton Police Department—which is merely a department of municipal Defendant City of Binghamton, NY—is not amenable to suit. *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to Section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). As a result, I recommend that Plaintiff's claims against Defendant Binghamton Police Department be dismissed because it is not an entity amenable to suit.

### D. Claims Against Defendant Judith E. Osburn

Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004). Plaintiff's Complaint identifies Defendant Osburn as "Chief Clerk of Broome County Supreme Courts and County Courts." (Dkt. No. 1 at 4.) Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Garcia v. Hebert*, 08-CV-0095, 2013 WL

1294412, at \*12 (D. Conn. Mar. 28, 2013) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)), *aff'd*, 594 F. App'x 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015).

**\*5** As a result, I recommend that Plaintiff's claims against Defendant Osburn in her individual capacity be dismissed, because she is immune from suit. [5] *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at \*9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at \*4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at \*2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia*, *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at \*2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at \*2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

Moreover, I recommend that Plaintiff's claims against Defendant Osburn in her official capacity as Chief Clerk of Broome County Supreme Court and County Courts be dismissed because the Broome County Supreme Court and County Courts are an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at \*4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### E. Claims Against Defendants Kraham, Zikuski, and Unknown(s)

The Complaint failed to allege the personal involvement of Defendants Kraham, Zikuski, and Unknown(s) in any alleged

constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although Plaintiff names Defendants Kraham, Zikuski, and Unknown(s) as defendants, the body of the Complaint lacks any allegations of wrongdoing by them. (*See generally* Dkt. No. 1.) As a result, I recommend that Plaintiff's claims against Defendants Kraham, Zikuski, and Unknown(s) be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

### F. Claims Against Defendants City of Binghamton and Broome County

**\*6** The Complaint fails to allege facts plausibly suggesting that municipal Defendants City of Binghamton and Broome County violated Plaintiff's constitutional rights through the execution of their policies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (outlining the limited circumstances under which a municipality may be liable under Section 1983 and holding that only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding that official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law."). A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

Here, there is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of discrete incidents, during which an officer or officers employed by

Defendants City of Binghamton and Broome County did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendants City of Binghamton and Broome County.

As a result, I recommend that Plaintiff's claims against Defendants City of Binghamton and Broome County be dismissed for failure to state a claim upon which relief may be granted. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### G. Claims Against Defendant Sostowski

First, the undersigned recommends that, to the extent the Complaint is construed as asserting an "extortion" claim against Defendant Sostowski, it be dismissed. (Dkt. No. 1 at 6.) The Complaint's bare heading stating "**Extortion**" under the second cause of action, is simply a legal conclusion that fails to suggest a plausible legal claim. (Dkt. No. 1 at 6.) Moreover, "the claim[ ] for ... extortion ... [is] not [a] cognizable civil claim[ ]." *Murphy v. Certain*, 217 A.D.3d 455, 456 (N.Y. App. Div. 1st Dep't 2023) (citing *Arts4All, Ltd. v. Hancock*, 5 A.D.3d 106, 111 (N.Y. App. Div. 1st Dep't 2004); *Minnelli v. Soumayah*, 41 A.D.3d 388, 388-89 (N.Y. App. Div. 1st Dep't 2007), *lv dismissed* 9 N.Y.3d 1028 (N.Y. 2008)); *see Perez v. de la Cruz*, 09-CV-0264, 2013 WL 2641432, at *13-14 (S.D.N.Y. June 12, 2013) (holding that "the law simply does not recognize a civil claim premised on tortious extortion.").

Second, to the extent the Complaint is construed as asserting a procedural due process claim, I recommend it also be dismissed.

To sustain a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege "that he: (1) had a protected liberty or property interest and (2) was deprived of that interest without due process." *Johnson v. City of New York*, 16-CV-2879, 2018 WL 1175139, at *3 (E.D.N.Y. Mar. 5, 2018) (citation and internal quotation marks omitted); *Roman-Malone v. City of New York*, 11-CV-8560,

2013 WL 3835117, at *3 (S.D.N.Y. July 25, 2013) ("To state a claim for a violation of procedural due process, Plaintiff must allege that [ ]he was deprived [of] a protected interest in liberty or property, without adequate notice or opportunity to be heard."). "Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under [Section] 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, 02-CV-2581, 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004) (collecting cases); *see also Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order); *Johnson*, 2018 WL 1175139, at *3.

**\*7** Here, the Complaint does not allege that the deprivation of Plaintiff's firearms was due to an established state procedure (*see generally* Dkt. No. 1), nor are there any facts plausibly "suggesting that there is any infirmity in the established procedures used by [the New York State Courts] in seizing property from [Plaintiff] at the time [the TERPO and ERPOs were issued]." *Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 329 (S.D.N.Y. 2015). Therefore, "when a plaintiff brings a procedural due process claim '[b]ased on random unauthorized acts by state employees,' the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy." *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). "Accordingly, the only remaining question is whether New York has provided an adequate post-deprivation remedy." *Watts*, 100 F. Supp. 3d at 329.

The undersigned finds that New York has adequate post-deprivation remedies that Plaintiff could have used to retrieve his personal belongings—or to receive monetary compensation in the event that his belongings were lost. *Winters v. New York*, 20-CV-8128, 2020 WL 6586364, at *4 (S.D.N.Y. Nov. 9, 2020) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988); *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)). Plaintiff's "failure to take advantage of the state procedures does not convert his cause of action into a constitutional due process claim." *Watts v. New York City Police Dep't*, 100 F. Supp. 3d 314, 329 (S.D.N.Y. 2015).

As a result, I recommend that Plaintiff's claims against Defendant Sostowski be dismissed for failure to state a claim upon which relief may be granted.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

Here, an amended pleading cannot cure the defects outlined above with respect to Plaintiff's claims against Defendants (1) Crawley, Osburn, and Broome County Clerk's Office, because they are immune from suit, and (2) Binghamton Police Department because it is not an entity amenable to suit. As a result, I recommend that the claims against those defendants be dismissed without prejudice but without leave to amend.

**\*8** Although I have serious doubts about whether Plaintiff can replead to assert actionable claims against Defendants (1) Kraham, (2) Zikuski, (3) Unknown(s), (4) City of Binghamton, and (5) Broome County, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that he be permitted leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI. PLAINTIFF'S LETTER REQUEST/MOTION

On March 26, 2024, Plaintiff filed a Letter Request/ Motion. (Dkt. No. 6.) To the extent that the Court adopts the recommendations contained herein which recommend dismissal of the Complaint, I recommend that Plaintiff's Letter Request/Motion be dismissed as moot.

In the alternative, as best as the undersigned can glean from Plaintiff's Letter Request/Motion, Plaintiff is merely requesting that the Court rule on his motion for IFP. (Dkt. No. 6.) This Order and Report-Recommendation rules on Plaintiff's amended IFP application and thus, Plaintiff's Letter/Motion is moot.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Kraham, (2) Zikuski, (3) Unknown(s), (4) City of Binghamton, and (5) Broome County, because it is fails to

state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Crawley, Osburn, and Broome County Clerk's Office, because they are immune from suit, and (2) Binghamton Police Department because it is not an entity amenable to suit, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

 **\*9 RECOMMENDED** that the Court **DENY** Plaintiff's Letter Request/Motion (Dkt. No. 6) as moot; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2024 WL 1701980

---

### Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    New York law provides for the issuance of a temporary emergency risk protection order ("TERPO") "upon a finding that there is probable cause to believe the respondent is likely to engage in conduct that would result in serious harm to himself, herself or others." N.Y. C.P.L.R. § 6342(1). In addition, New York law provides for the issuance of a final emergency risk protection order ("ERPO") upon a finding that "clear and convincing evidence, that the respondent is likely to engage in conduct that would result in serious harm to himself, herself or others." N.Y. C.P.L.R. § 6343(2).

3    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

5    In the alternative, I recommend that Plaintiff's claims against Defendant Osburn be dismissed because the Complaint fails to allege the personal involvement of her in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, although Plaintiff names Defendant Osburn as a party to the action, the body of the Complaint lacks any allegations of wrongdoing by her. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against

Defendant Osburn be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

6    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

7    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

8    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3063674
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David John CAMPBELL, Plaintiff,
v.
NEW YORK STATE POLICE, et al., Defendants.
David J. Campbell, Plaintiff,
v.
City of Binghamton, NY, et al., Defendants.

3:23-cv-01337 (AMN/ML), 3:24-cv-00067 (AMN/ML)
|
Signed June 20, 2024

**Attorneys and Law Firms**

DAVID J. CAMPBELL, Binghamton, NY 13904, Plaintiff
pro se

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On October 30, 2023, Plaintiff *pro se* David John
Campbell ("Plaintiff"), filed a civil rights complaint pursuant
to 42 U.S.C. § 1983 ("Section 1983") against Defendants
New York State Police ("NYSP"), Steven A. Negrelli,
Broome County, Broome County Sheriff's Office ("BCSO"),
David Harder, Mark Hamilton, Brian Curtis, Broome County
District Attorney's Office ("BCDA"), Lucas Finley, City of
Binghamton ("Binghamton"), Jared M. Kraham, Binghamton
Police Department ("BPD"), Chief Jospeh Zikuski, Nicholas
Mushalla, Bryan Sostowski, UHS Binghamton General
Hospital ("UHS"), Jessica R. Raymond, Unknown 1,
Unknown 2, and Unknown 3. Case No.3:23-cv-01337-AMN-
ML (N.D.N.Y.) (the "2023 Action"), Dkt. No. 1 (the "2023
Complaint"). [1] In the 2023 Complaint, Plaintiff asserts nine
claims, which generally allege the mistreatment of Plaintiff
and his property in violation of his First, Fourth, Fifth,
Sixth, Seventh, and Fourteenth Amendment rights, and seeks
declaratory, injunctive, and monetary relief. *See id.* at 12-15.
Plaintiff also sought leave to proceed *in forma pauperis*
("IFP"), 2023 Action, Dkt. No. 2, which motion was denied,
2023 Action, Dkt. No. 4, and on March 25, 2024, Plaintiff
filed a second IFP motion, 2023 Action, Dkt. No. 5.

On January 16, 2024, Plaintiff filed a second civil rights suit
pursuant to Section 1983 against Defendants Binghamton,
Jared M. Kraham, BPD, Chief Joseph Zikuski, Detective
Bryan Sostowski, Broome County, Broome County Clerk's
Office, Judith E. Osburn, Honorable Judge Joseph A.
Cawley, and Unknown(s). Case No. 3:24-cv-00067-AMN-
ML (N.D.N.Y.) (the "2024 Action"), Dkt. No. 1 (the "2024
Complaint"). In the 2024 Complaint, Plaintiff asserts two
claims related to the allegations in the 2023 Complaint for
violations of Plaintiff's own and his wife's due process rights,
and seeks declaratory, injunctive, and monetary relief. *See id.*
at 5-7. Plaintiff also sought leave to proceed IFP, 2024 Action,
Dkt. No. 2, which motion was denied, 2024 Action, Dkt. No.
4, and on March 22, 2024, Plaintiff filed a second IFP motion,
2024 Action, Dkt. No. 5. [2]

Both actions were referred to United States Magistrate
Judge Miroslav Lovric, who, on April 19, 2024, issued
an Order and Report-Recommendation in the 2023 Action
(1) granting Plaintiff's IFP motion; (2) recommending
that Plaintiff's claims against Defendants Negrelli in his
individual capacity, Broome County, Harder, Hamilton,
Curtis, Finley in his individual capacity, Binghamton,
Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond,
Unknown 1, Unknown 2, and Unknown 3 be dismissed with
leave to replead; and (3) recommending that Plaintiff's claims
against Defendants NYSP, BCDA, Negrelli in his official
capacity, Finley in his official capacity, BPD, and BCS be
dismissed without leave to replead. 2023 Action, Dkt. No. 7 at
16-18 (the "2023 Action Report-Recommendation"). Also on
April 19, 2024, Magistrate Judge Lovric issued an Order and
Report-Recommendation in the 2024 Action (1) granting the
IFP Motion; (2) recommending that Plaintiff's claims against
Defendants Binghamton, Broome County, Kraham, Zikuski,
and Unknown(s) be dismissed with leave to replead; and
(3) recommending that Plaintiff's claims against Defendants
Crawley, Osburn, Broome County Clerk's Office, and BPD be
dismissed without leave to replead. 2024 Action, Dkt. No. 7 at
16-18 (the "2024 Action Report-Recommendation"). Finally,
in light of the above recommendations, Magistrate Judge
Lovric recommended denying Plaintiff's Letter Requests as
moot. 2023 Action, Dkt. No. 7 at 17-18; 2024 Action, Dkt.
No. 7 at 17-18.

**\*2** Magistrate Judge Lovric advised Plaintiff that under
28 U.S.C. § 636(b)(1), he had fourteen days to file written
objections to the Report-Recommendations and failure to
object within fourteen days would preclude appellate review.
2023 Action, Dkt. No. 7 at 18; 2024 Action, Dkt. No. 7 at

18. On April 26, 2024, Plaintiff timely filed Objections to the 2024 Action Report-Recommendation, 2024 Action, Dkt. No. 8 (the "2024 Action Objections"), and on April 29, 2024, Plaintiff timely filed Objections to the 2023 Action Report-Recommendation, 2023 Action, Dkt. No. 8 (the "2023 Action Objections").

For the reasons set forth below, the Court adopts the Report-Recommendations in their entireties.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue,* 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See id.* at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen,* 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing [ ] a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.,* No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.,* No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)) (additional citations omitted).

The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole,* No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros,* No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

### A. The 2023 Action Report-Recommendation and Objections

**\*3** In his Objections to the 2023 Action Report-Recommendation, Plaintiff contends, among other things, that he has standing to bring his action, it is of major public concern, and it addresses prohibited official acts which would nullify his immunity defenses. 2023 Action, Dkt. No. 8 at 1-2. Notably, Plaintiff does not cite to or quote from the 2023 Action Report-Recommendation, does not cite to any additional allegations from the 2023 Complaint that support his claims, does not cite any allegations Magistrate Lovric allegedly overlooked or misinterpreted, and cites only one case. *See id.* (citing *Ex Parte Young,* 209 U.S. 123 (1908)). Read in the light most favorable to Plaintiff, the Court finds that these objections are not specific, [3] and accordingly the Court reviews the 2023 Action Report-Recommendation for clear error. *See Mario,* 313 F.3d at 766; *O'Diah,* 2011 WL 933846, at *1.

The 2023 Action Report-Recommendation details the factual allegations contained in the 2023 Complaint, *see* 2023 Action, Dkt. No. 7 at 2-6, before undertaking a reasoned analysis and concluding that the 2023 Complaint should be dismissed for one overarching reason, *see id.* at 8-10, or alternatively, for five claim- and Defendant-specific reasons, *see id.* at 10-14. Magistrate Judge Lovric first concluded that the 2023 Complaint should be dismissed for frivolousness. *Id.* at 9-10. Second, Magistrate Judge Lovric also found that Defendants NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity are immune from the claims asserted under the Eleventh Amendment and 28 U.S.C. § 1915(e)(2)(B), and should be dismissed from the action.

*Id.* at 10-11. Third, Magistrate Judge Lovric found that the 2023 Complaint lacks any allegations of wrongdoing by Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski, and thus the claims against them should be dismissed for failure to state a claim. *Id.* at 11-12. Fourth, Magistrate Judge Lovric found that Defendants BPD, BCS, and UHS are not proper Section 1983 defendants. *Id.* at 12-13. Fifth, Magistrate Judge Lovric found that the 2023 Complaint does not allege a municipal policy or custom, failure to train, or deliberate indifference that would support liability with respect to Defendants Binghamton or Broome County. *Id.* at 13-14. And sixth, to the extent Plaintiff seeks to have certain property returned, Magistrate Judge Lovric found that Plaintiff has not shown that his remedy under state law is inadequate or unavailable. *Id.* at 14.

Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2023 Action Report-Recommendation determination as to each claim in the 2023 Complaint. Further, upon a *de novo* review of the 2023 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2023 Action Report-Recommendation.

### B. The 2024 Action Report-Recommendation and Objections

In his Objections to the 2024 Action Report-Recommendation, Plaintiff contends, among other things, that Defendants are not immune from suit and that Magistrate Judge Lovric did not consider all of his claims. *See* 2024 Action, Dkt. No. 8 at 1-4. However, these objections are either not specific or merely assert disagreements without providing a basis to find otherwise. Accordingly, the Court reviews the 2024 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

In the 2024 Action Report-Recommendation, Magistrate Judge Lovric carefully considered the claims against the nine named Defendants and one unknown Defendant in light of the deference due to *pro se* pleadings, and found each claim lacking. *See* 2024 Action, Dkt. No. 7 at 6-14. First, Magistrate Judge Lovric considered the 2024 Complaint claims against Broome County Court Judge Cawley, noting the limitations on judicial immunity "when a judge takes action outside his or her judicial capacity" or " 'in the complete absence of all jurisdiction[,]' " *id.* at 6-7 (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)), and recommended that claims against Defendant Judge Cawley in his individual capacity be dismissed due to judicial immunity and in his official

capacity due to the Eleventh Amendment, *id.* (collecting cases). Second, Magistrate Judge Lovric considered the claims against the Broome County Clerk's Office, finding that such claims were barred "under the Eleventh Amendment because it is an arm of the State of New York." *Id.* at 7-8 (citing, *inter alia, Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). Third, Magistrate Judge Lovric properly determined that BPD, as a municipal department of Defendant Binghamton, is not a proper Section 1983 Defendant. *Id.* at 8 (collecting cases); *see Moulton v. Cnty. of Tioga, NY*, No. 3:22-cv-00340 (AMN/ML), 2023 WL 4627646, at *15 (N.D.N.Y. July 19, 2023). Fourth, Magistrate Judge Lovric considered Plaintiff's claims against Osburn, the Chief Clerk of Broome County Supreme Courts and County Clerks, and determined that she is immune from suit in her individual capacity as a quasi-judicial actor, the 2024 Complaint failed to allege her personal involvement in any of the alleged constitutional deprivations, and that she is immune from suit in her official capacity under the Eleventh Amendment. 2024 Action, Dkt. No. 7 at 9-10. Fifth, Magistrate Judge Lovric found that the body of the 2024 Complaint completely lacked allegations of wrongdoing by Defendants Kraham, Zikuski, and Unknown(s), and accordingly concluded that the claims against them should be dismissed for failure to state a claim. *Id.* at 10-11. Sixth, Magistrate Judge Lovric considered the claims against Binghamton and Broome County and concluded that the 2024 Complaint failed to state a claim because the acts alleged did not amount to a policy or custom sufficient to support municipal liability, nor did the allegations reflect a failure to train or deliberate indifference to the rights of Plaintiff or others considering the acts alleged. *Id.* at 11-12. Lastly, Magistrate Judge Lovric considered the claims against Defendant Sostowski, interpreting them as either a civil extortion claim, or more broadly as a procedural due process claim, and determined that the allegations were conclusory, extortion is not a cognizable civil claim, the Complaints do not allege or suggest a due process violation, and New York has adequate post-deprivation remedies that were available to Plaintiff. *Id.* at 12-14.

**\*4** Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2024 Action Report-Recommendation determination as to each claim in the 2024 Complaint. Further, upon a *de novo* review of the 2024 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2024 Action Report-Recommendation.

### C. Leave to Amend

Finally, Magistrate Judge Lovric recommended that certain claims should be dismissed without leave to amend, while others, in an abundance of caution, should be dismissed with leave to amend. Magistrate Judge Lovric articulated the proper standard cautioning courts against dismissing claims filed by a *pro se* litigant without affording the opportunity to amend, and as a result only recommended dismissal without leave to amend claims for which better pleading could not cure the defects identified. *See* Dkt. No. 7 at 14-16; 2024 Action, Dkt. No. 7 at 14-16. Plaintiff's Objections do not specifically take issue with the amendment analysis contained in the Report-Recommendation, and the Court finds no clear error in the determination to dismiss certain futile claims without leave to amend, while permitting Plaintiff an additional opportunity to state his other claims. [4]

Accordingly, the Court adopts both Report-Recommendations in their entireties.

**IV. CONCLUSION**
For these reasons, the Court hereby

**ORDERS** that the 2023 Action Report-Recommendation, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2023 Complaint, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Negrelli in his individual capacity, Broome County, Harder, Hamilton, Curtis, Finley in his individual capacity, Binghamton, Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond, Unknown 1, Unknown 2, and Unknown 3**, and the remainder **DISMISSED without leave to amend**; and the Court further

**ORDERS** that the 2024 Action Report-Recommendation, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2024 Complaint, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Binghamton, Broome County, Kraham, Zikuski, and Unknown(s)**, and the remainder **DISMISSED without leave to amend**; and the Court further

**\*5 ORDERS** that Plaintiff's Letter Requests, 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6, are **DENIED as moot**; and the Court further

**ORDERS** that Plaintiff shall file an amended complaint in either or both of his actions within **SIXTY (60) DAYS** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in the respective case in total; and the Court further

**ORDERS** that if Plaintiff timely files an amended complaint in either or both of his actions, such complaint shall be referred to Magistrate Judge Lovric for review; and if Plaintiff fails to timely file an amended complaint, the Clerk is directed to close the applicable case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3063674

---

**Footnotes**

1        Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

2        Additionally, on March 26, 2024, Plaintiff filed identical letters in both Actions requesting that the Court act on his pending Complaints and IFP motions. 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6 (collectively, "Plaintiff's Letter Requests").

3    To the extent Plaintiff attempts to incorporate his earlier-filed 2024 Action Objections into his 2023 Action Objections, *see* Dkt. No. 8 at 2, the Court considers those arguments below, *infra* § III.B.

4    The Court reiterates Magistrate Judge Lovric's admonition to Plaintiff that any amended complaint "will replace the existing complaint, and must be a wholly integrated and complete pleading," Dkt. No. 7 at 16, and must "contain some specific allegations of fact indicating a deprivation of rights," *id.* (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987)), "set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts," and "allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations[,]" *id.* (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)). Finally, should Plaintiff wish to pursue this case as a single action, he may file an amended complaint compiling all of his related allegations in one of his cases, and not the other.

---

**End of Document**        © 2024 Thomson Reuters. No claim to original U.S. Government Works.